# IN THE UNITED STATES BANKRUPTY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>iSun, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11144 (TMH)<br><br>(Joint Administration Requested)<br>**Hearing: June 5, 2024 at 2:00 p.m. (ET)**<br>**Objection Deadline: At the hearing**<br>**Related Docket Nos. 7 & 14** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF MERCHANTS
NATIONAL BONDING COMPANY, INC. AND GREAT MIDWEST INSURANCE
COMPANY TO DEBTORS' MOTION TO OBTAIN POST-PETITION FINANCING
AND AUTHORIZING THE USE OF CASH COLLATERAL [DKT. NO. 14] AND
DEBTORS' CASH MANAGEMENT MOTION [DKT. NO. 7]**

Merchants National Bonding Company, Inc. ("Merchants") and Great Midwest Insurance

Company ("GMIC") (collectively, the "Sureties"), by and through their undersigned counsel,

hereby file this Limited Objection and Reservation of Rights to the Debtors' Motions to Obtain

Post-Petition Financing and Authorizing the Use of Cash Collateral (the "DIP Financing Motion")

[Dkt. No. 14] and seeking authorization for the Continued Use of Cash Management System and

Use of Pre-Petition Bank Accounts [Dkt. No. 7] (the "Cash Management Motion" and together

with the DIP Financing Motion, the "Motions"), and respectfully state as follows:

## INTRODUCTION

1.        As an initial matter, the Sureties do not generally oppose the relief sought by the

Debtors in the Motions.  However, the Sureties are concerned that the Motions, particularly the

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172); (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411); (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors").

DIP Financing Motion, are overreaching and sweep within the ambit of the broad superpriority liens granted to the DIP Lender funds that are not property of the Debtors' estate – and, thus, cannot be the subject of liens (superpriority or otherwise) – under well-settled law.

2.      As set forth below, the Sureties have collectively extended nearly $40 million of surety credit to certain of the Debtors.  As of the date of the petitions, the Sureties have received multiple claims, have incurred over $2.5 million in losses, and are exposed to millions in additional losses.

3.      The Sureties are – by far – the Debtors' largest and most significant creditors.  Yet, the petitions, first day motions, and accompanying declarations do not make any mention of the Sureties or any of the Debtors' obligations to the Sureties.  While the Sureties are generally supportive of the Debtors' efforts in these cases, as part of that process, the Debtors and DIP Lender must acknowledge that the Sureties are significant stakeholders whose rights should not be – and cannot be – impaired by this process.

4.      In light of the broad relief sought by the Motions, and the rights the Debtors are purporting to give the DIP Lender in "Cash Collateral" – which appears to include funds that are not property of the estate and in which the Sureties have a superior interest – the Sureties are compelled to submit this Limited Objection and Reservation of Rights to ensure that their rights are not impacted by the relief sought in the Motions.

**BACKGROUND**

5.      On June 3, 2024, the Debtors filed voluntary petitions for relief under chapter 11, title 11 of the United States Code.

6.    As set forth in the declarations accompanying the first day motions, the Debtors state that they are one of the largest solar energy services and infrastructure deployment companies in the country.

7.    As a requirement with respect to many of their construction projects, certain of the Debtors requested that the Sureties extend surety credit to them in the form of surety bonds which guarantee certain of their project obligations.

8.    Merchants, as surety, issued the following surety bonds pre-Petition on behalf of the Debtors:

| Bond No. | Principal | Obligee | Project | Penal Sum |
|---|---|---|---|---|
| NME 1132 | iSun Industrial LLC | BD Solar Norridgewock, LLC | BD Solar Norridgewock, LLC Design – Solar Photovoltaic (PV) System Engineering, Procurement, and Installation | $2,852,165 |
| NVT 1018 | iSun Industrial LLC | Halladay Solar, LLC | MHG Middlebury Halladay – Solar Photovoltaic (PV) System Engineering, Procurement, and Installation | $3,436,864 |
| 100000127 | Peck Electric Co. | Neagley & Chase Construction Co. | Electrical – ICE Law Enforcement Facility – Project Number: 1587 | $1,391,028 |
| NME 1133 | iSun Industrial LLC | BD Solar Larson, LLC | BD Solar Larson LLC Design – Solar Photovoltaic (PV) System Engineering, | $6,379,144 |

| | | | Procurement, and Installation | |
|---|---|---|---|---|
| | | | | **TOTAL** - $14,059,201 |

9.     GMIC, as surety, issued the following surety bonds pre-Petition on behalf of the

Debtors:

| Bond No. | Principal | Obligee | Project | Penal Sum |
|---|---|---|---|---|
| GM224679 | iSun Industrial LLC | BD Solar North Anson, LLC | BD Solar North Anson (Nautilus Solar); Contract #22SV0678 | $3,159,736.00 |
| GM224681 | iSun Industrial LLC | BD Solar Rangeley, LLC | BD Solar Rangeley (Nautilus Solar); Contract #22SV0679 | $3,731,808.00 |
| GM224678 | iSun Industrial LLC | Stone Mill Solar, LLC | MHG Stone Mill (Standard Solar) | $3,334,730.36 |
| GM230490 | iSun Industrial LLC | Encore Redevelopment, LLC | 71 Roderick Road, Winslow ME | $3,092,797.00 |
| GM221390 | iSun Industrial LLC | SV Construction, LLC | Easton (Sunvest Solar) | $3,211,200.00 |
| GM221779 | iSun Industrial LLC | SV Construction, LLC | Limestone 1 (Sunvest Solar) | $3,521,520.00 |
| GM221780 | iSun Industrial LLC | SV Construction, LLC | Limestone 2 (Sunvest Solar) | $2,576,100.00 |
| GM221382 | iSun Industrial LLC | Trolley Tracks Solar, LLC | MHG Trolley Tracks (Standard Solar) | $3,060,735.52 |
| GM221803 | Peck Electric Company, Inc. | Loudon Pleasant Street Solar | Loudon Pleasant Street (Maintenance Bond) | $141,720.00 |
| | | | | **TOTAL** - $25,830,346.88 |

10.     As consideration for the issuance of the above-referenced bonds, iSun, Inc., iSun, Industrial LLC and non-debtor Jeffrey J. Peck executed indemnity agreements (the "Indemnity Agreements") in favor of Merchants and GMIC.  (**Exhibit A**, Merchants Indemnity Agreement) (**Exhibit B**, GMIC Indemnity Agreement).

11.     Each of the Indemnity Agreements provides, among other things, that the funds received and/or to be received by the Debtors in connection with the bonded projects are trust funds to be held in trust for the benefit of, *inter alia*, the surety and all laborers and materialmen working and/or providing material/equipment to the projects.  *Id.*

12.     In addition, in connection with certain of the bonded contracts, certain of the Debtors entered into funds control agreements which assign the contract funds – divesting those Debtors to rights in the contract funds – to ensure that the funds are used solely for payment of obligations owed by the Debtors under the respective contracts and pursuant to the trusts created under the Indemnity Agreements.

13.     Pre-Petition, the Sureties received several claims on their bonds and the Sureties continue to receive claims post-Petition.

## LIMITED OBJECTION BY THE SURETIES

### A.  Contract Funds Objection

14.     The Debtors purport to grant a superpriority lien to the DIP Lender in "Cash Collateral", which appears to include funds that are not part of the Debtors' estate and/or funds in which the Sureties have a superior interest.

### The Sureties' Subrogation Rights

15.     In accordance with well-settled law, contract funds held by an owner (i.e., the Debtors' contract counterparty) on defaulted bonded projects, or on projects in connection with

which the Debtors have failed to pay their subcontractors, suppliers, and laborers, are not "owed"

to the debtor/contractor unless and until the defaults and/or failures are cured in full and therefore

those funds are not part of the bankruptcy estate. *See, e.g.*, *In re QC Piping Installations, Inc.*, 225

B.R. 553, 564-65 (Bankr. E.D.N.Y. 1998) (holding that amounts due under a construction contract

are not property of the estate where there has been a pre-petition default); *In re Pac. Marine*

*Dredging & Const.*, 79 B.R. 924, 929 (Bankr. D. Or. 1987) (same).  As explained by the Northern

District of Florida:

> Prior to default, [the contractor] had the right to assign progress payments to the
> bank. Upon default, however, [the contractor] forfeited its rights under the
> construction contract and the surety, bound under the contract of suretyship,
> became obligated to complete performance. As assignee of the proceeds of the
> contract, [the bank] could acquire no right by assignment superior to the right the
> contractor himself might assert against the owner. When [the surety] undertook to
> complete the job, it performed "a benefit for the [owner], and has a right to the
> retained funds and remaining progress money to defray its costs. The surety who
> undertakes to complete the project is entitled to the funds in the hands of the
> government not as a creditor and subject to setoff, but as a subrogee having the
> same rights to the funds as the government.

*In re Ward Land Clearing & Drainage, Inc.*, 73 B.R. 313, 316 (Bankr. N.D. Fla. 1987).

16.    Critically, the Sureties' right to the contract funds has priority over any secured

creditor in bankruptcy.  *See id.*; *see also Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962); *In*

*re Modular Structures, Inc.*, 27 F.3d 72 (3d Cir. 1994).

17.    In *Pearlman*, a priority dispute arose between the trustee of the bankrupt estate and

the surety with respect to contract funds retained by the United States, as the owner of the subject

construction project.  The surety successfully argued that the monies at issue had not become part

of the bankrupt's estate.  *Pearlman*, 371 U.S. at 135.  The Supreme Court held that the funds

remained the property of the owner and, by way of subrogation, became the surety's property to

6

the extent necessary to reimburse it for payment of the laborers and materialmen and other costs of contract performance.  *Id.* at 144.

18.     Similarly, in *Modular Structures*, the Third Circuit, relying upon the *Pearlman* decision, ruled that the contract funds held by the owner were not "owed" to the debtor/contractor and, therefore, never became property of the bankruptcy estate to which a bank's lien could apply, since the contractor/debtor breached its contractual obligations to the owner.

**The Sureties' Trust Fund Rights**

19.     The contract funds are also trust funds under the Indemnity Agreements to be held in trust for, among others, the benefit of the surety and laborers and materialmen that provide labor or material to the projects.  The funds may also constitute statutory trust funds depending on the state in which the specific project is located.  As trust funds, the funds are not part of the Debtors' estate and the Debtors cannot grant a lien to a DIP lender unless and until the purpose of the trust has been satisfied.  *See e.g.*, *In re Alcon Demolition, Inc.*, 204 B.R. 440 (Bankr. D.N.J. 1997); *In re McCormick*, 283 B.R. 680 (Bankr. W.D. Pa. 2002); *In re Fox*, 357 B.R. 770 (Bank. E.D. Ark. 2006); *Dev. Sur. & Indem. Co. v. Bi-Tech Constr.*, 979 F. Supp. 2d 1307 (S.D. Fla. 2013).

20.     The Sureties object to approval of the Motions to the extent that the DIP Lender and/or Debtors seek to: (a) prime, impair, contravene or interfere with the Sureties' subrogation or trust fund rights to the contract funds, or (b) authorize the use of any contract funds currently held by owners or obligees, to which the Sureties are or may be subrogated, or (c) authorize the use of any contract funds currently held in funds control accounts from being used for anything other than those expenses expressly permitted under the relevant funds control agreement.

21.     The Sureties further object to the Cash Management Motion to the extent the Debtors argue that they have a present possessory interest in funds that are not part of the Debtors'

estate and/or have been assigned to the Sureties or others and are held in funds control accounts that are under the Sureties' control.

### B. Other Objections

22.     In addition to the Sureties' contract funds' objection, until a Creditors' Committee has been constituted and has had the opportunity to retain counsel, it is premature, even on an interim basis, for the Debtors to be agreeing to waive important rights, such as: (i) granting the DIP Lender liens on avoidance actions and the proceeds thereof (particularly in light of the statements in paragraph 23 and 25 of the Declaration of Jeffrey Peck in support of First Day Motions [Dkt. No. 4], which will likely need to be investigated by the Committee); (ii) rights under Bankruptcy Code sections 506(c) and 552(b); and (iii) the right to seek to compel the DIP Lender to marshal assets.

### RESERVATION OF RIGHTS

23.     The Sureties have filed this Limited Objection and Reservation of Rights on short notice, limited information, and with limited time to evaluate the issues.  The Sureties expressly reserve all rights, including, but not limited to, the right to interpose such further and other objections as may appropriate as the Sureties obtain additional information.

Dated: June 5, 2024
Wilmington, Delaware

*/s/ Richard W. Riley*
Thomas J. Francella, Jr., (DE No. 3835)
Richard W. Riley (DE No. 4052)
WHITEFORD, TAYLOR & PRESTON LLC
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 353-4144
Email: tfrancella@whitefordlaw.com
        rriley@whitefordlaw.com

-and-

Scott A. Zuber, Esq. (admitted *pro hac vice*)
Brian Kantar, Esq. (admitted *pro hac vice*)
Jase A. Brown, Esq. (admitted *pro hac vice*)
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 325-1500
Email: szuber@csglaw.com
        bkantar@csglaw.com
        jbrown@csglaw.com

*Counsel to Great Midwest Insurance Company and*
*Merchants National Bonding Company, Inc.*