**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al*.,[1] | Case No. 24-11144 (TMH) |
| Debtors. | Re: D.I. 65 |
| | Jointly Administered |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION FOR ENTRY OF ORDERS (A) (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE AGREEMENT, (V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF; AND (B) (I) APPROVING THE PURCHASE AGREEMENT; (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (IV) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned attorney, hereby responds to the relief sought in iSun, Inc.'s (the "Debtors") *Motion for entry of Orders (A) (I) Approving Bid Procedures In Connection With The Sale Of Substantially All Of The Debtors' Assets, (II) Scheduling An Auction And A Sale*

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

1

*Hearing, (III) Approving The Form And Manner Of Notice Thereof, (IV) Authorizing The Debtors To Enter Into The Stalking Horse Agreement, (V) Approving Procedures For The Assumption And Assignment Of Contracts And Leases, And (VI) Granting Related Relief; And (B) (I) Approving The Purchase Agreement; (II) Approving The Sale Of Substantially All Of The Debtors' Assets Free And Clear; (III) Approving The Assumption And Assignment Of Contracts And Leases; And (Iv) Granting Related Relief* (the "Bidding Procedures Motion" or "Motion").[2] In further support of this Limited Objection, the United States Trustee states as follows:

### Jurisdiction

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

2. Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

3. Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the United States Trustee has standing to be heard on the Bidding Procedures Motion and the issues raised in this Objection.

---

[2] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Motion.

2

**Background**

4. On June 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors are "one of the largest solar energy services and infrastructure deployment companies in the country." *Declaration of Jeffrey Peck of iSun, Inc. in Support of Debtors' Chapter 11 Petitions and First Day Motions* (D.I. 4) ("Peck First Day Declaration") at ¶ 8. The Debtors services include solar, storage and electric vehicle infrastructure, design, development and professional services, engineering, procurement, installation, O&M and storage. *Id.* at ¶ 14. The Debtors conduct all of their business operations exclusively through their direct and indirect wholly-owned subsidiaries, iSun Residential, Inc., SolarCommunities, Inc., iSun Industrial, LLC, Peck Electric Co., Liberty Electric, Inc., iSun Utility, LLC, iSun Energy, LLC and iSun Corporate, LLC. *Id.* at ¶ 19.

6. The Debtors remain in possession of their assets and continue to manage their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. The Debtors seek to sell certain assets free and clear of all liens, claims, and encumbrances to Clean Royalties, LLC as a Stalking Horse purchaser ("Clean Royalties" or "Stalking Horse") for an initial bid consisting of $10,000,000 of consideration, of which $4 million is a credit Bid of Clean Royalties Secured Claim under the DIP Orders, and $6 million is additional cash consideration ("Cash Consideration"), plus additional assumed liabilities and cure costs. *See* Bidding Procedures Motion at ¶ 15. The proposed sale seeks Bid Protections, consisting of a 5% of the Purchase Price of an Alternate Proposal as a Breakup Fee ("Breakup

3

Fee") and an Expense Reimbursement of $250,000.00.  *Id.*  The Motion also seeks the Bid Protections be afforded super-priority status.  *See* Proposed Form of Order D.I. 65-1 at ¶ 7.

8. The Debtors have prepetition secured debt in excess of $8,000,000 owed to Decathlon Specialty Finance, LLC ("Decathlon" or "Prepetition Lender").  Peck First Day Declaration at ¶ 20.  Decathlon "has agreed with Clean Royalties that if Clean Royalties is not the Successful bidder and an alternative transaction on a sale of the Debtors' assets occurs, then, out of the closing proceeds payable to the Prepetition Lender on account of its secured claim, Clean Royalties will share in a portion of those recoveries in excess of $6,000,00."  Bidding Procedures Motion at ¶ 15.  No further information is available in the Motion regarding the agreement between Decathlon and Clean Royalties.

9. The U.S. Trustee provided informal comments and understands certain changes may be made to address those.  As of the date of this Limited Objection certain items as detailed below have not been substantively addressed.

## Objection

### *The Bid Protections are Excessive and Ill Defined Under the Circumstances of this Case*

10. Evaluation of break-up fees or expenses requires that the fees be actually necessary to preserve value of the estate.  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999).  "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]"  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018).  In *O'Brien*, the Third Circuit "rejected application of a business judgment rule, under which a requested termination fee would be approved if the debtor had a

4

good faith belief that the fee would benefit the estate." *In re Energy Future Holdings Corp.*, 904 F.3d at 313.

11. Here, the Debtors seek authorization of an unknown figure Bid Protections, as the Breakup Fee is contingent on the purchase price presented by an alternative transaction and expense reimbursement is sought for $250,000. *See* Bidding Procedures Motion at ¶ 15. Breakup fees are customarily a percentage of the proposed Stalking Horse's consideration for the assets, but the Debtors and Clean Royalties seek instead to enhance Clean Royalties position by providing a fee tied to what a competing bidder ultimately bids for the assets. Since, Decathlon and Clean Royalties are sharing proceeds of a sale greater than $6 million of the proposed purchase price, the other aspects of the transaction further call into question whether bid protections are necessary as the purchase price does not on even provide a full recovery to Decathlon who then will split additional amounts with Clean Royalties.

12. To the extent that the proposed Bid Protections may be allowable, the combination of the Breakup Fee and Expense Reimbursement should not exceed 5% of the cash consideration being provided by Clean Royalties as Stalking Horse. The proposed Bid Protections here already account for an over 4% expense reimbursement ($250,000 compared to cash consideration of $6,000,000). In addition, the Motion and related documents are silent on review or oversight of the Expense Reimbursement amount, and any order approving the Bid Protections should provide a mechanism for review and oversight should the Expense Reimbursement become payable.

13. Section 503(b) does not provide for superpriority status. Superpriority status is provided for only in Sections 364(c)(1) and 507(b). Those sections are addressed

exclusively to (a) parties providing post-petition financing, and (b) secured creditors who have received insufficient "adequate protection" for the post-petition diminution in the value of their collateral. Neither is at play here. "[C]ourts do not have the authority to create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code." *See Energy Future Holdings Corp.*, 904 F.3d at 313 (quoting *O'Brien*, 181 F.3d at 532) (quotation marks omitted). Giving a break-up fee superpriority status has no basis in the Bankruptcy Code and should be denied.

14. Rather than serving as a catalyst or inducement to competitive bidding, the Bidding Procedures may actually chill bidding by giving an excessive advantage to the Stalking Horse given the circumstances of these cases. As a result, the Court should deny the Motion, absent modifications to the requested Bid Protections and to the Bidding Procedures regarding the treatment of Clean Royalties Bid Protections.

## Conclusion

15. For reasons set forth in above, the United States Trustee respectfully request that this Court sustain this Limited Objection.[3]

---

[3] The United States Trustee has provided informal comments regarding the relief sought in the Bidding Procedures Motion, which have been conveyed to counsel for the Debtors. Some of these issues are likely to be resolved informally, but to the extent they cannot be, the United States Trustee reserves all rights to raise them at the Bidding Procedures hearing.

16. The United States Trustee leaves the Debtors to their burden of proof, and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** for the foregoing reasons, the United States Trustee respectfully requests that this Court sustain this Limited Objection.

Dated: June 26, 2024
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Region 3 and 9**

By: */s/ Timothy J. Fox*       .
    Timothy J. Fox, Jr. (DE Bar No. 6737)
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)
    Timothy.Fox@usdoj.gov