**IN THE UNITED STATES BANKRUPTY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al.*,[1] | Case No. 24-11144 (TMH) |
| Debtors. | (Joint Administration Requested) |
| | Related Docket No. 99 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF MERCHANTS NATIONAL BONDING COMPANY, INC. AND GREAT MIDWEST INSURANCE COMPANY TO DEBTORS' MOTION TO APPROVE PROCEDURES FOR THE SETTLEMENT OF CERTAIN ACCOUNTS RECEIVABLE [DKT. NO. 99]**

Merchants National Bonding Company, Inc. ("Merchants") and Great Midwest Insurance Company ("GMIC") (collectively, the "Sureties"), by and through their undersigned counsel, hereby file this Limited Objection and Reservation of Rights to the Debtors' Motion to Approve Procedures for the Settlement of Certain Accounts Receivable [Dkt. No. 99] (the "Motion")[2], and respectfully state as follows:

**INTRODUCTION**

1.  The Sureties do not generally oppose the relief sought by the Debtors in the Motion. However, the Sureties have an interest in certain accounts receivable that is superior to both the Debtors and any secured creditors and therefore the Sureties must be deemed "A/R Settlement Notice Parties," as that term is defined in the Motion, with respect to settlement of any bonded

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172); (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411); (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316) (collectively referred to as the "Debtors").

[2] The Debtors agreed to extend the Sureties' time to file this Limited Objection to and through July 19, 2024.

contract proceeds. Additionally, the term "accounts receivable" must not include funds that are not property of the Debtors' estate, as described below.

2. As set forth below, the Sureties have collectively extended nearly $40 million of surety credit to certain of the Debtors. As of the date of the petitions, the Sureties have received multiple claims, have incurred over $2.5 million in losses, and are exposed to millions in additional losses. The Sureties are—by far—the Debtors' largest and most significant creditors.

3. In light of the broad relief sought by the Motion, the Sureties are compelled to submit this Limited Objection and Reservation of Rights to ensure that their rights are not impacted.

## BACKGROUND

4. On June 3, 2024, the Debtors filed voluntary petitions for relief under chapter 11, title 11 of the United States Code.

5. As set forth in the declarations accompanying the first day motions, the Debtors state that they are one of the largest solar energy services and infrastructure deployment companies in the country.

6. As a requirement on many of their construction projects, certain of the Debtors requested that the Sureties extend surety credit to them in the form of surety bonds which guarantee certain of their project obligations.

7. Merchants, as surety, issued the following surety bonds pre-Petition on behalf of the Debtors:

| **Bond No.** | **Principal** | **Obligee** | **Project** | **Penal Sum** |
|---|---|---|---|---|
| NME 1132 | iSun Industrial LLC | BD Solar Norridgewock, LLC | BD Solar Norridgewock, LLC Design – Solar | $2,852,165.00 |

2

| Bond No. | Principal | Obligee | Project | Penal Sum |
|---|---|---|---|---|
| | | | Photovoltaic (PV) System Engineering, Procurement, and Installation | |
| NVT 1018 | iSun Industrial LLC | Halladay Solar, LLC | MHG Middlebury Halladay – Solar Photovoltaic (PV) System Engineering, Procurement, and Installation | $3,436,864.00 |
| 100000127 | Peck Electric Co. | Neagley & Chase Construction Co. | Electrical – ICE Law Enforcement Facility – Project Number: 1587 | $1,391,028.00 |
| NME 1133 | iSun Industrial LLC | BD Solar Larson, LLC | BD Solar Larson LLC Design – Solar Photovoltaic (PV) System Engineering, Procurement, and Installation | $6,379,144.00 |
| | | | | **TOTAL - $14,059,201** |

8. GMIC, as surety, issued the following surety bonds pre-Petition on behalf of the Debtors:

| Bond No. | Principal | Obligee | Project | Penal Sum |
|---|---|---|---|---|
| GM224679 | iSun Industrial LLC | BD Solar North Anson, LLC | BD Solar North Anson (Nautilus Solar); Contract #22SV0678 | $3,159,736.00 |
| GM224681 | iSun Industrial LLC | BD Solar Rangeley, LLC | BD Solar Rangeley (Nautilus Solar); Contract #22SV0679 | $3,731,808.00 |

3

| | | | | |
|---|---|---|---|---|
| GM224678 | iSun Industrial LLC | Stone Mill Solar, LLC | MHG Stone Mill (Standard Solar) | $3,334,730.36 |
| GM230490 | iSun Industrial LLC | Encore Redevelopment, LLC | 71 Roderick Road, Winslow ME | $3,092,797.00 |
| GM221390 | iSun Industrial LLC | SV Construction, LLC | Easton (Sunvest Solar) | $3,211,200.00 |
| GM221779 | iSun Industrial LLC | SV Construction, LLC | Limestone 1 (Sunvest Solar) | $3,521,520.00 |
| GM221780 | iSun Industrial LLC | SV Construction, LLC | Limestone 2 (Sunvest Solar) | $2,576,100.00 |
| GM221382 | iSun Industrial LLC | Trolley Tracks Solar, LLC | MHG Trolley Tracks (Standard Solar) | $3,060,735.52 |
| GM221803 | Peck Electric Company, Inc. | Loudon Pleasant Street Solar | Loudon Pleasant Street (Maintenance Bond) | $141,720.00 |
| | | | **TOTAL** - $25,830,346.88 | |

9. As consideration for the issuance of the above-referenced bonds, iSun, Inc., iSun, Industrial LLC and non-debtor Jeffrey J. Peck executed indemnity agreements (the "Indemnity Agreements") in favor of Merchants and GMIC. (**Exhibit A**, Merchants Indemnity Agreement) (**Exhibit B**, GMIC Indemnity Agreement).

10. Each of the Indemnity Agreements provides, among other things, that the funds received and/or to be received by the Debtors in connection with the bonded projects are trust funds to be held in trust for the benefit of, *inter alia*, the surety and all laborers and materialmen working on and/or providing material/equipment to the projects. *Id.*

11. In addition, in connection with certain of the bonded contracts, certain of the Debtors entered into funds control agreements which assign the contract funds—divesting those Debtors to rights in the contract funds—to ensure that the funds are used solely for payment of

obligations owed by the Debtors under the respective contracts and pursuant to the trusts created under the Indemnity Agreements.

12. Pre-Petition, the Sureties received several claims on their bonds and the Sureties continue to receive claims post-Petition.

13. On July 24, 2024, the Debtors filed the Motion to Approve Procedures for the Settlement of Certain Accounts Receivable. [Dkt. No. 99].

14. In the Motion, the Debtors request that the Court grant them permission to resolve pending accounts receivable with balances at or below $250,000 without court approval (the "De Minimis A/R").

15. The Debtors argue that it would be an "inefficient use of resources to seek approval each time one [of the accounts receivable] is settled, compromised or resolved." [Dkt. No. 99, ¶ 7].

16. In lieu of seeking Court approval each time they seek to resolve an account receivable, the Debtors instead propose a process whereby the Debtors are permitted to resolve accounts receivable, so long as the amount received is no more than 10% less than the book value of the De Minimis A/R.

17. Additionally, before settling any of the accounts receivable, the Debtors must consult with the "Consultation Parties" (defined in the Motion as the Committee, Prepetition Secured Lender and Clean Royalties, LLC), and the Debtors must likewise provide notice to interested creditors—referred to in the Motion as "A/R Settlement Notice Parties". After receiving notice, the A/R Settlement Notice Party has seven (7) calendar days to object to the settlement.

## LIMITED OBJECTION BY THE SURETIES

### The Sureties' Contract Funds Rights

18. In accordance with well-settled law, contract funds held by an owner (i.e., the Debtors' contract counterparty) on defaulted bonded projects, or on projects in connection with which the Debtors have failed to pay their subcontractors, suppliers, and laborers, are not "owed" to the debtor/contractor unless and until the defaults and/or failures are cured in full and therefore those funds are not part of the bankruptcy estate. *See, e.g.*, *In re QC Piping Installations, Inc.*, 225 B.R. 553, 564-65 (Bankr. E.D.N.Y. 1998) (holding that amounts due under a construction contract are not property of the estate where there has been a pre-petition default); *In re Pac. Marine Dredging & Const.*, 79 B.R. 924, 929 (Bankr. D. Or. 1987) (same). As explained by the Northern District of Florida:

> Prior to default, [the contractor] had the right to assign progress payments to the bank. Upon default, however, [the contractor] forfeited its rights under the construction contract and the surety, bound under the contract of suretyship, became obligated to complete performance. As assignee of the proceeds of the contract, [the bank] could acquire no right by assignment superior to the right the contractor himself might assert against the owner. When [the surety] undertook to complete the job, it performed "a benefit for the [owner], and has a right to the retained funds and remaining progress money to defray its costs. The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to setoff, but as a subrogee having the same rights to the funds as the government.

*In re Ward Land Clearing & Drainage, Inc.*, 73 B.R. 313, 316 (Bankr. N.D. Fla. 1987).

19. Critically, the Sureties' right to the contract funds/accounts receivable has priority over any secured creditor in bankruptcy. *See id.*; *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962); *In re Modular Structures, Inc.*, 27 F.3d 72 (3d Cir. 1994); *see also U.S. Fid. & Guar. Co. v. APAC-Kansas, Inc.*, 151 F. Supp. 2d 1297, 1300-01 (D. Kan. 2001) (holding that surety's right to the contract balance is superior to interest of secured party in accounts receivable); *Nat'l*

6

*Shawmut Bank of Boston v. New Amsterdam Cas. Co.*, 411 F.2d 843, 848 (1st Cir. 1969), *on reh'g*, (1st Cir. May 5, 1969) (holding that an unsecured surety has priority to accounts receivable over a secured bank); *In re Maxon Eng'g Servs., Inc.*, 332 B.R. 495, 498 (Bankr. D.P.R. 2005) ("The surety's interest is typically found to be prior and superior to that of the parties claiming an interest in the contractor's receivables because the surety is subrogated to the contractor/creditor's right to the contract funds."); *In re Pac. Marine Dredging & Const.*, 79 B.R. 924, 929 (Bankr. D. Or. 1987) (holding that surety had superior interest in contract balances versus a bank which had a perfected security interest in the debtor's accounts receivable).

**The Sureties' Trust Fund Rights**

20. The contract funds are also trust funds under the Indemnity Agreements to be held in trust for, among others, the benefit of the surety and laborers and materialmen that provide labor on or material to the projects. The funds may also constitute statutory trust funds depending on the state in which the specific project is located. As trust funds, the funds are not part of the Debtors' estate and they are not "accounts receivable" belonging to the Debtors.

21. The Sureties object to approval of the Motion to the extent it: (1) permits the Debtors to settle accounts receivable for funds that are not property of the estate, or (2) permits the Debtors to settle accounts receivable for funds owing on a project bonded by the Sureties, without providing the Sureties notice and an opportunity to object to the settlement.

22. The Sureties are hopeful this Limited Objection and Reservation of Rights will be consensually resolved prior to the July 30, 2024, Hearing by way of inclusion of agreeable language in the subject order. Nevertheless, this Limited Objection and Reservation of Rights is submitted out of an abundance of caution.

## RESERVATION OF RIGHTS

23. The Sureties reserve all rights, including, but not limited to, the right to interpose such further and other objections as may appropriate.


Dated: July 19, 2024
Wilmington, Delaware

      /s/ Richard Riley
Richard W. Riley (DE No. 4052)
WHITEFORD, TAYLOR & PRESTON LLC
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 353-4144
Email: tfrancella@whitefordlaw.com
       rriley@whitefordlaw.com

-and-

Scott A. Zuber, Esq. (admitted *pro hac vice*)
Brian Kantar, Esq. (admitted *pro hac vice*)
Jase A. Brown, Esq. (admitted *pro hac vice*)
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 325-1500
Email: szuber@csglaw.com
       bkantar@csglaw.com
       jbrown@csglaw.com

*Counsel to Great Midwest Insurance Company and Merchants National Bonding Company, Inc.*