# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> iSun, Inc., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-11144 (TMH) <br><br> (Jointly Administered) <br><br> Re: Docket Nos. 65, 186 |

## OBJECTION OF NAUTILUS SOLAR TO SALE, PROPOSED CONTRACT ASSUMPTION AND ASSIGNMENT, PROPOSED CURE, AND ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

BD Solar Norridgewock LLC, BD Solar North Anson LLC, BD Solar Rangeley LLC (collectively, the "Owners") and Nautilus US Power HoldCo LLC ("Nautilus" and together with the Owners, "Nautilus Solar"), by and through their undersigned counsel, hereby file this objection (the "Objection") to (i) the *Debtors' Motion For Entry of Orders (A) (I) Approving Bid Procedures in Connection with the Sale of Substantially All of The Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; And (B) (I) Approving the Purchase Agreement; (II)) Approving the Sale Of Substantially All of the Debtors' Assets Free and Clear; (III) Approving the Assumption and Assignment of Contracts and Leases; and (IV)*

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

*Granting Related Relief* [Docket No. 65] (the "Sale Motion") and (ii) the *Amended Notice of Potential Contract Assumption and Assignment* [Docket No. 186] (the "Assumption Notice") filed by the above-captioned debtors and debtors in possession (collectively, "Debtors"). In support of the Objection, Nautilus Solar states as follows:[2]

**PRELIMINARY STATEMENT**

1. Contracts terminated pre-petition cannot be assumed. Prior to the Petition Date, Nautilus Solar terminated the Terminated EPC Agreements (as defined below) to which one or more of the Debtors were counterparties due to, among other things, the Debtors' failure to achieve "mechanical completion" within six months of the contractual deadline, which, pursuant to the Terminated EPC Agreements, granted Nautilus Solar immediate termination rights. The Terminated EPC Agreements involved the construction of certain Solar Projects (as defined below), which are under pressing, near-term completion deadlines and as to which Nautilus Solar has exercised its contractual rights to engage replacement contractors to complete the work that was defaulted upon by the Debtors. Notwithstanding the pre-petition termination of the Terminated EPC Agreements, the fact that the Solar Projects are moving forward without the Debtors, and requests by Nautilus Solar, the Debtors and Stalking Horse Purchaser to date have not removed the Terminated EPC Agreements from the schedule of contracts to be assumed and assigned, necessitating this Objection.[3]

2. The Court need not look beyond the unambiguous terms of the Terminated EPC Agreements, the Termination Notices (defined below), and the plain language of section 365(c)(1)

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Sale Motion and Assumption Notice.

[3] Counsel to the Debtors directed Nautilus Solar to counsel for the Stalking Horse Purchaser with respect to the listing of contracts to be assumed and assigned. Counsel to Nautilus Solar and the Stalking Horse Purchaser have been in contact in an effort to determine whether they can reach agreement as to treatment of these contracts. Nautilus Solar expects those discussions to continue.

2

of the Bankruptcy Code to determine that those Agreements cannot be assumed by the Debtors, let alone assigned to the Stalking Horse Bidder or any other Successful Bidder. Moreover, the Debtors have neither cured the Debtors' outstanding defaults (which are incurable) nor provided adequate assurance of future performance (which is similarly impossible given the status of the Projects). For these reasons, Nautilus Solar respectfully submits that the Sale Motion should be denied to the extent it seeks approval of the assumption and assignment of the Terminated EPC Agreements, related documents, and the sale of any property associated thereunder.

## BACKGROUND

3. On December 27, 2022, Debtor iSun Industrial LLC ("iSun Industrial" or the "Contractor") and each of the Owners entered into separate Engineering, Procurement and Construction Agreements (each as amended, modified or supplemented, including all duly executed Change Orders, a "Terminated EPC Agreement," and collectively the "Terminated EPC Agreements")[4] whereby the Contractor agreed to provide engineering, procurement and constructions services in connection with the design, installation and commissioning of three solar photovoltaic electric generation facilities located in Maine (each a "Solar Project," and collectively, the "Solar Projects"). *See Declaration of Christopher Lee in Support of Objection of Nautilus Solar to the Proposed Assumption and Assignment of the Terminated EPC Agreements* (the "Lee Decl.") at ¶ 4; Exs. A-C.

4. The Terminated EPC Agreements emphasize the importance of the Contractor's timely competition of the Work and specifically provide that time was particularly of the essence for the agreements. *Id*. at ¶ 5; Exs. A-C §§ 6.3, 6.5.

---

[4] Capitalized terms in reference to defined terms in the Terminated EPC Agreements not otherwise defined herein shall have the meanings ascribed in the Terminated EPC Agreements.

5.      Specifically, each Terminated EPC Agreement contains a Schedule of Work that required the Contractor to achieve Mechanical Completion by October 26, 2023 (the "Mechanical Completion Deadline").  *Id.*; *see* Exs. A-C § 1.1.  The Mechanical Completion Deadline was not extended by any Change Order or under any other mechanism permitted by the Terminated EPC Agreements and, tellingly, the Contractor did not submit a request to extend the Mechanical Completion Deadline for any of the Solar Projects.  Lee Decl. at ¶ 6; *see* Exs. A-C §§ 8.1, 8.2, 8.4.  Under the Terminated EPC Agreements, the Contractor's failure to achieve Mechanical Completion within six (6) months of the Mechanical Completion Deadline results in a Contractor Event of Default, which gives the Owners the right to immediately terminate their respective Terminated EPC Agreement upon notice to the Contractor.  Lee Decl. at ¶ 7; *see* Exs. A-C § 11.2.2.  Upon termination of a Terminated EPC Agreement due to a Contractor Event of Default, the Owners are permitted to engage replacement contractors to finish the remaining Work under the Terminated EPC Agreement, and the Contractor is liable for any costs incurred by the Owners in excess of the contract balance remaining under the Terminated EPC Agreement.  *See* Lee Decl. at ¶ 8, *see* Exs. A-C, § 11.2.3.  In addition to termination rights, the Owners are also entitled to Mechanical Completion Delay Liquidated Damage of $500 per MW per day for each day by which Mechanical Completion is later than the Mechanical Completion Deadline.  *See* Lee Decl. at ¶ 9, *see* Exs. A-C, § 6.3.

6.      On May 24, 2024, each of the Owners delivered a Notice of Contractor Event of Default and Termination (collectively, the "Termination Notices") notifying the Contractor that the Terminated EPC Agreements were terminated immediately due to a Contractor Event of Default, specifically the Contractor's failure to achieve Mechanical Completion for each of the Solar Projects within six (6) calendar months of the Mechanical Completion Deadline.  *See* Lee

4

Decl., Exs. A-C, § 11.2.1(f); Exs. D-F. As of the date of the Termination Notices, the Contractor had already missed the Mechanical Completion Deadline by over nearly seven (7) months, thereby entitling Nautilus Solar to terminate the Terminated EPC Agreements without an additional notice or cure period. *See* Lee Decl. at ¶¶ 10, 11.

7. On June 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

8. On June 7, 2024, the Debtors filed the Sale Motion seeking to establish bidding procedures for the sale of substantially all of the Debtors' assets to the Stalking Horse Bidder or the Successful Bidder at an auction. Clean Royalties, LLC was designated as the Stalking Horse Bidder. Attached to the Sale Motion as Exhibit B is a copy of the asset purchase agreement between the Debtors and Clean Royalties, LLC, which includes Schedule 1.1(a) thereto listing the assets to be acquired by the Stalking Horse Bidder, including the following "Contracted Backlog":

| Division | CODE | Project Name |
|---|---|---|
| iSun | 22SV0677 | BD Solar Norridgewock LLC Design plus full EPC |
| iSun | 22SV0679 | BD Solar Rangeley LLC Design |
| iSun | 22SV0678 | BD Solar North Anson LLC Design plus EPC |

9. In or around June 2024, as expressly permitted under the Terminated EPC Agreements, the Owners hired replacement contractors to finish the Work at the Solar Projects. Lee Decl. at ¶ 12, *see* Exs. A-C § 11.2.3. Upon information and belief, the replacement contractors have found deficient work done by iSun Industrial that will lead to increased costs. Lee Decl. at ¶ 13.

10. On July 10, 2024, the Court entered the *Order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction*

*and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 183] (the "Bidding Procedures Order") approving, among other things, the bidding procedures requested in the Sale Motion.

11. On July 11, 2024, the Debtors filed the Assumption Notice in accordance with the Bidding Procedures Order. Exhibit A to the Assumption Notice designates certain "Assigned Contracts" for potential assumption and assignment by the Debtors to the Stalking Horse Bidder or the Successful Bidder and sets forth proposed cure amounts (collectively, the "Proposed Cure Amount") in connection therewith. The Assumption Notice lists the Terminated EPC Agreements and related documents, and a related contract between Contractor and Nautilus for potential assumption and assignment, each with a Proposed Cure Amount of $0, as set forth below:

| Case # | Debtor Name | Counter Party | Contract Description | Cure Amount |
|---|---|---|---|---|
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: CHANGE ORDER 03 DTD 9/20/2023 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: CHANGE ORDER 05 DTD 10/12/2023 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED #2 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | SERVICE AGREEMENT: NOTICE OF CONTRACTOR EVENT OF DEFAULT & TERMINATION | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Norridgewock LLC | FINANCE AGREEMENT: PERFORMANCE BOND #NME 1132 AND ENERGY CAPACITY GUARANTEES | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: CHANGE ORDER 03 DTD 9/20/2023 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: CHANGE ORDER 05 DTD 10/10/2023 | $0 |

| Case # | Debtor Name | Counter Party | Contract Description | Cure Amount |
|---|---|---|---|---|
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED #2 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar North Anson LLC | SERVICE AGREEMENT: NOTICE OF CONTRACTOR EVENT OF DEFAULT & TERMINATION | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: CHANGE ORDER 03 DTD 9/20/2023 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: LIMITED NOTICE TO PROCEED #2 | $0 |
| 24-11149 | iSun Industrial, LLC | BD Solar Rangeley LLC | SERVICE AGREEMENT: NOTICE OF CONTRACTOR EVENT OF DEFAULT & TERMINATION | $0 |
| 24-11149 | iSun Industrial, LLC | Nautilus US Power Holdco LLC | THIRD PARTY SERVICE AGREEMENT: ENGINEERING, PROCUREMENT, AND CONSTRUCTION AGREEMENT ESTOPPEL DTD 12/1/2023 | $0 |

12. On July 17, 2024, iSun Industrial filed its Schedules of Assets and Liabilities [Docket No. 215] (the "Schedules"). The Schedules include the Terminated EPC Agreements and related documents. *See* Schedule G, Items 2.22-2.44, 2.102.

**OBJECTION**

**I.   A Terminated EPC Agreement Cannot Be Assumed and Assigned.**

13. A debtor cannot assume a previously executory contract which was validly terminated prior to the institution of the bankruptcy proceedings. *In re Egyptian Bros. Donut*, 190 B.R. 26, 31 (Bankr. D.N.J. 1995) (citing *In re Indri*, 126 B.R. 443, 445 (Bankr. D.N.J. 1991); *see also In re Triangle Laboratories, Inc.*, 663 F.2d 463, 467-68 (3d Cir. 1981) (citing cases). Each

7

of the Terminated EPC Agreements was terminated ten days before the Petition Date.[5]  *See* Lee Decl. at ¶ 10; Exs. D-F.

14. The Debtors have not disputed that the Contractor failed to achieve Mechanical Completion within six (6) calendar months of the Mechanical Completion Deadline under each Terminated EPC Agreement, nor can they prove that the milestones set forth in each Schedule of Work were properly adjusted pursuant to a Change Order or other modification in a manner required by the Terminated EPC Agreements.  The Debtors' failure to achieve the contractually-mandated milestones was a Contractor Event of Default under each Terminated EPC Agreement, and each of the Owners was entitled to and did in fact deliver a Termination Notice to the Contractor immediately terminating the Terminated EPC Agreements prior to the Petition Date.  *See* Lee Decl. at ¶¶ 6, 7, 10.

15. Accordingly, the Debtors have no ability to assume or assign any of the Terminated EPC Agreements or related documents, since they were validly terminated pre-petition by Nautilus Solar.

**II.    No Proposed Assignee Can Cure the Debtors' Defaults Under the Terminated EPC Agreements or Provide Adequate Assurance of Future Performance.**

16. Section 365(a) of the Bankruptcy Code empowers a debtor to assume or reject an executory contract.  Pursuant to section 365(f)(2)(A), the trustee or debtor-in-possession may assign an executory contract or unexpired lease of the debtor only if the trustee or debtor-in-possession assumes such contract or lease in accordance with the provisions of section 365 of the Bankruptcy Code.

---

[5] Indeed, the Assumption Notice includes a "SERVICE AGREEMENT: NOTICE OF CONTRACTOR EVENT OF DEFAULT & TERMINATION" among the potential contracts scheduled for assumption and assignment for each of the Owners.  *See* Assumption Notice at 7-8.

17. Section 365(b)(1) of the Bankruptcy Code provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

    (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;

    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

    (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1); *see In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000), *cert. denied*, 531 U.S. 873 (2000) (noting that trustee must satisfy requirement of cure or adequate assurance of prompt cure before he may assume a contract or lease).

    A. *The Debtors' Default under the Terminated EPC Agreements is Incurable.*

18. A default precludes assumption of an executory contract under section 365 if it is both incurable and "material in the sense that it goes to the very essence of the contract, *i.e.*, the bargained for exchange." *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990); *see also In re New Breed Realty Enters.*, 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002) (finding that a debtor's failure to close a sale on or before the time-of-the-essence closing date constitutes a non-monetary default which cannot be cured because it is an historical fact); *In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (finding that a time-of-the-essence provision is an essential bargained for term of the contract and that the debtor's failure to comply with such contractual deadline is incurable and the contract cannot be assumed under section 365).

19. Here, the parties agreed that "Time is particularly of the essence in Contractor's timely performance of [the Terminated EPC Agreements]". *See* Lee Decl. at ¶ 5. This is

9

emphasized by the Schedule of Milestones and the fact that the Terminated EPC Agreements grant Nautilus Solar termination rights in the event that the Contractor fails to achieve the contractual deadline. The Terminated EPC Agreements were terminated 211 days or nearly seven (7) months after the Mechanical Completion Deadline. *See* id. at ¶ 11. The six (6) month grace period between the Mechanical Completion Deadline and the triggering of Nautilus Solar's termination rights operates as a built-in cure period. Once that period lapsed and the Contractor was terminated, it became impossible for the Contractor to cure its material breach of the Terminated EPC Agreements. There is no additional opportunity to cure. The Debtors cannot cure their milestone default as it already is an historical fact. Accordingly, the Terminated EPC Agreements cannot be assumed and assigned.

        B.     *The Debtors are Liable for Damages Caused by their Defaults.*

20.    Not only may the Terminated EPC Agreements not be assumed or assigned due to incurable defaults, but the Debtors also are liable for significant damages to Nautilus Solar due to their untimely performance thereunder.[6] Nautilus Solar has incurred damages due to the Debtors' defaults under the Terminated EPC Agreements. Even if the Debtors could turn back the clock and undo the termination of the Terminated EPC Agreements (which they cannot), Nautilus Solar is, as of the Petition Date, entitled to (among other things) Mechanical Completion Delay Liquidated Damages of no less than $500 per MW per day for 39 days. *See* Lee Decl. at ¶ 9. This does not include the pecuniary losses incurred by Nautilus Solar in connection with the replacement contractors and any other damages recoverable under the terms of the Terminated EPC Agreements. *See* Lee Decl. at ¶ 13. Nautilus Solar reserves all rights to assert such damages,

---

[6] Nautilus Solar recently learned that certain work that was performed by the Debtors may have been deficient, leading to increased costs and damages.

losses, and costs against the Debtors whether by way of affirmative claims, offset, recoupment, or otherwise.

        C.      *Future Performance under the Terminated EPC Agreements is No Longer Possible.*

21.     The phrase "adequate assurance of future performance" is not defined in the Bankruptcy Code. *See In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007). The Bankruptcy Code adopted the phrase "adequate assurance of future performance" from the Uniform Commercial Code, which provides that "when reasonable grounds for insecurity arise with respect to the performance of either party, the other may in writing demand adequate assurance of future performance . . . ." *Id*. (citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001) (quoting UCC § 2-609(1)). Adequate assurance of future performance are not words of art; the legislative history of the Bankruptcy Code shows that they were intended to be given a practical, pragmatic construction. What constitutes adequate assurance of future performance must be determined by consideration of the facts of the proposed assumption. *Id.* at 307.

22.     A bankruptcy court must be sensitive to the rights of the non-debtor contracting party and the policy requiring that the non-debtor receive the full benefit of his or her bargain. *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990). In the Third Circuit, courts apply the "material and economically significant" standard to determine whether adequate assurance is required. *Fleming*, 499 F.3d at 305-306. The focus is on the importance of the term within the overall bargained-for exchange; that is, whether the term is integral to the bargain struck between the parties (its materiality) and whether performance of that term gives a party the full benefit of his bargain (its economic significance). *Id*. at 306. Contract provisions requiring parties to perform by a date certain may be material and economically significant if the performance delay causes economic detriment. *See id.* (citing *New Breed*, 278 B.R. at 322-25).

11

23. Here, neither the Stalking Horse Bidder nor any other Successful Bidder can provide the requisite adequate assurance of future performance under section 365 of the Bankruptcy Code. The Debtors cannot dispute that they did not achieve Mechanical Completion by the Mechanical Completion Deadline, and that they failed to secure an extension pursuant to the terms of the Terminated EPC Agreements. As of the date of this Objection, the deadline to achieve Substantial Completion (the final milestone) also has expired. *See* Lee Decl., Exs. A-C § 6.4. Nautilus Solar is now under enormous pressure to complete the Solar Projects and already has enforced its contractual right to engage replacement contractors to complete the Solar Projects. *See* Lee Decl. at ¶ 12, Exs. A-C § 11.2.3. No proposed assignee can provide adequate assurance that it can achieve deadlines that have already come and gone.

24. Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder. *Fleming*, 499 F.3d at 308 (internal citation omitted). This *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." *Id.* (internal citation omitted). The Schedule of Work and the related milestones are an integral part of the Terminated EPC Agreements. Even if the Terminated EPC Agreements could be assumed and assigned, the proposed assignee would be taking the Terminated EPC Agreements with lapsed Mechanical Completion and Substantial Completion milestones. Accordingly, the Terminated EPC Agreements are no longer assumable or assignable for the additional reason that the defaults by the Debtors are incurable and adequate assurance of future performance is impossible to provide.

25. In sum, the Debtors cannot assume and assign the Terminated EPC Agreements and any related contract because (i) the Debtors cannot resurrect executory contracts terminated pre-petition, (ii) the Debtors' defaults under the Terminated EPC Agreements are incurable and

material to the parties' bargain, and (iii) no future performance under the Terminated EPC Agreements is possible. Notwithstanding the damages caused by the Debtors as a result of their failure to perform under the Terminated EPC Agreements, the Debtors' failure to remove those contracts from the Assumption Notice has only increased the costs, expense and harm to Nautilus Solar.

**III.     Nautilus Solar is Entitled to Retain all Property, Rights and Interests in connection with the Terminated EPC Agreements**.

26.     Not only may the Terminated EPC Agreements not be assumed or assigned, but Nautilus Solar is also entitled to damages and to the turnover of all of Nautilus Solar's property, materials, and information necessary to complete the Solar Projects, none of which may be sold or transferred over Nautilus Solar's objection. Among other things, the Debtors and their management have refused to deliver to Nautilus Solar certain transformers that are critical to project completion and that are currently in possession of a third party, notwithstanding that Nautilus Solar has paid for these transformers and the Debtors' knowledge that their actions are causing immediate, increasing, and potentially irreparable harm to Nautilus Solar. Most recently, on Monday, July 22, the Debtors rejected out of hand Nautilus Solar's offer to pay the amounts the Debtors claim to be owed in connection with the transformers – although Nautilus Solar has already made these payments – which would result in a partial double payment to the Estate and a windfall to their creditors.

27.     In light of the failure by the Debtors to turnover property in which Nautilus Solar has an interest, Nautilus Solar reserves all rights, remedies, and causes of action, including without limitation the right to commence an adversary proceeding (which it intends to do) seeking declaratory and injunctive relief as well as damages against the Debtors and others interfering with Nautilus Solar's business and commercial contracts, rights and interests.

**RESERVATION OF RIGHTS**

28. Nautilus Solar reserves the right to supplement and/or amend this objection and to introduce evidence at the Sale Hearing or any other hearing regarding the proposed assumption and assignment of the Terminated EPC Agreements.

29. Nautilus Solar further reserves all rights, remedies, claims, and causes of action under the Terminated EPC Agreements, at law or equity, including without limitation direct claims against any individuals who have acted or purport to act on behalf of the Debtors to delay or interfere with the payment of subcontractors and related costs and expenses and completion of each Solar Project.

**CONCLUSION**

WHEREFORE, Nautilus Solar respectfully requests that this Court enter an order (i) denying the assumption and assignment of the Terminated EPC Agreements and related documents, and (ii) providing such further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: July 23, 2024 | **GREENBERG TRAURIG, LLP** |
| | */s/ Anthony W. Clark* |
| | Anthony W. Clark (DE Bar No. 2051) |
| | Dennis A. Meloro (DE Bar No. 4435) |
| | 222 Delaware Avenue, Suite 1600 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 661-7000 |
| | E-mail:  Anthony.Clark@gtlaw.com |
| | Dennis.Meloro@gtlaw.com |
| | |
| | -and- |
| | |
| | Julia Frost-Davies (*Pro Hac Vice* Pending) |
| | One International Place |
| | Boston, MA 02110 |
| | Telephone: (617) 310-6000 |
| | E-mail:  Julia.FrostDavies@gtlaw.com |

-and-

John S. Ducat (*Pro Hac Vice* Pending)
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Email:	John.Ducat@gtlaw.com

-and-

T. Charlie Liu (*Pro Hac Vice* Pending)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
E-mail:	charlie.liu@gtlaw.com

*Counsel for Nautilus Solar*