IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al.*,[1] | Case No. 24-11144 (TMH) |
| Debtors. | (Jointly Administered) |

### *AMENDED* OBJECTION OF NBT BANK, N.A. TO THE DEBTORS' MOTION (I) APPROVING THE PURCHASE AGREEMENT; (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (IV) GRANTING RELATED RELIEF

Secured Creditor NBT Bank, N.A. ("NBT") submits this *Amended* Objection to the Debtors' Motion (the "Sale Motion") for Order (I) Approving the Purchase Agreement; (II) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear; (III) Approving the Assumption and Assignment of Contracts and Leases; and (IV) Granting Relating Relief (Dkt. #65) (the "Objection"),[2] and states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Sale Motion and this Objection pursuant to 28 U.S.C. §1334. The Sale Motion and the Objection are core proceedings pursuant to 28 U.S.C. §157. Venue for the Sale Motion and the Objection is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

[2] The only changes in this Amended Objection are to add a word "Amended" where appropriate, add an additional sentence to the end of paragraph 20 and change the last line in paragraph 22.

2. Pursuant to Local Rule 9013-1(f), NBT consents to the entry of a final order by the Court in connection with this Objection to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**BACKGROUND**

3. On June 3, 2024 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Section 1107(a) and 1108.

The Secured Loans

4. Prior to the Petition Date, NBT made four secured loans to Debtor Peck Electric Co. ("Peck"), including a secured loan in the amount of $253,321.00, as evidenced by a promissory note dated September 17, 2019 (the "First Note"). The First Note is subject to a fixed rate of interest and requires Peck to make periodic payments until the principal balance is repaid in full.

5. Next, NBT made a loan to Peck in the amount of $732,997.00, as evidenced by a promissory note dated September 17, 2019 (the "Second Note"). The Second Note is subject to a fixed rate of interest and requires Peck to make periodic payments until the principal balance is repaid in full.

6. Next, NBT made a loan to Peck in the amount of $486,137.00, as evidenced by a promissory note dated September 17, 2019 (the "Third Note"). The Third Note is subject to a fixed rate of interest and requires Peck to make periodic payments until the principal balance is repaid in full**.**

7. The First Note, Second Note and Third Note shall be known collectively hereinafter as the "Notes" or, when referred to individually, each a "Note".

8. Each Note is secured by: (a) a Commercial Guaranty (the "Guaranties") by non-debtor Peck Company Holdings, Inc. (the "Guarantor"), (b) a Leasehold Mortgage for property leased by Peck at 14 School Street, Newfane, Vermont (the "Mortgages"), (c) a Commercial Security Agreement (the "Security Agreements"), which secured a perfected lien in collateral consisting of *inter alia* solar electric generating equipment, and (d) a Collateral Assignment of Solar Power & Services Agreement (the "Collateral Assignment Agreements") related to *inter alia* solar power service agreements.

9. True and correct copies of each Note, along with each of the above-reference forms of security (together, the "Secured Loans" or each, a "Secured Loan") are attached hereto as **Exhibits A, B and C**, respectively.[3] Each Secured Loan is properly perfected by recording and/or proper UCC-1 Financing Statements. By reason of this security, NBT believes it is a fully secured creditor.

10. The Secured Loans are cross-collateralized and provide that there is a default when *inter alia* NBT believes (a) the prospect of payment or performance of any Secured Loan is impaired and/or (b) it is insecure. Another basis for default exists when there is a change in ownership and/or Peck engages in a merger, consolidation, reorganization or liquidation of any type.

---

[3] NBT made a fourth secured loan to Debtor Peck in the amount of $216,407.64 as evidenced by a note dated September 10, 2021 (the "Fourth Note"). This Fourth Note is secured by a Commercial Security Agreement, of even date, with the collateral being five vehicles (together with the Note, the "Vehicle Loan"). This Vehicle Loan is to be assumed and assigned to Clean Royalties as indicated by the Second Amended Notice of Potential Contract Assumption and Assignment for $105,420.00 (the "Assumption and Assignment Notice") (D.I. #233). NBT has no objection to the assumption and assignment of this Vehicle Note for this cure payment. NBT reserves its rights to object to the extent Clean Royalties seeks to change its position on this.

11.     The Secured Loans entitle NBT to collect attorneys' fees and costs incurred in protecting its rights and preserves its rights of setoff, including in connection with the checking and savings accounts (the "Deposit Accounts") that the Debtors are required to maintain at NBT as a condition for obtaining the Secured Loans.

## Sale Motion

12.     On June 7, 2024, the Debtors filed the Sale Motion, together with a motion for order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter into Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief (the "Bid Procedures Motion") (Dkt. #65).

13.     On July 3, 2024, a Stipulation Among Debtors, CR, Decathlon and Committee Concerning Resolution of DIP and Bid Procedures Objection (the "Stipulation") (Dkt. #158) was filed.  As an exhibit to the Stipulation, Clean Royalties, LLC (the "Stalking Horse" or "Clean Royalties") attached a term sheet that indicates, among other things, its intention in assuming the Secured Loans.

14.     On July 10, 2024, the Court enter the order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter into Stalking Horse Agreement, (V) Approving Procedure for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief (the "Bid Procedures Order") (Dkt. #183).

15. The Bid Procedures Order approved, among other things, a stalking horse agreement with Clean Royalties, bidding procedures, a potential auction date, and the sale hearing for Tuesday, July 30, 2024.

16. On July 23, 2024, the Debtor filed a notice cancelling the auction and stating the sale would proceed forward with Clean Royalties selected as the proposed purchaser (Dkt. #269).

## **OBJECTION**

17. Prior to the Petition Date, NBT made the Secured Loans with Peck, which were guaranteed by the affiliated Guarantor based on its lending criteria and due diligence. There is no authority under the Bankruptcy Code to force NBT into a lending relationship with Clean Royalties (or any other party for that matter) without its consent, which is currently withheld.

18. Requiring NBT to enter into a lending relationship with Clean Royalties would lead to a default under these Secured Loans, as NBT has not been provided with any evidence that Clean Royalties can perform and hence it has good faith grounds for feeling insecure about this change. Moreover, a default would further exist since the Debtor is undergoing a sale of its assets, which constitute further grounds for a default under the loan documents.

19. In this regard, if this Court should find that NBT does not have the right to object to the sale of its Secured Loans, then NBT is entitled to be adequately protected in connection with the Secured Loans and to obtain adequate assurance of future performance. In good faith, NBT has requested information from Clean Royalties to analyze its ability to perform under the Secured Loans, including, but not limited to, financial statements, tax returns, and certain assurances. To date, no such information and assurances have been provided. Without this information, NBT has grounds for concluding that the Secured Loans are impaired and its position is insecure.

20. To the extent that this Court approves the sale of the Secured Loans over NBT's objection, the order should likewise require Clean Royalties to comply with the terms of the Secured Loans, which include curing any default, satisfying NBT's attorneys' fees and costs incurred in this case, and complying with any other obligations imposed on Peck, such as maintaining the Deposit Accounts with NBT. The order should further recognize its secured status in the collateral, which it currently enjoys. The order should further clarify that the Guaranties of the Guarantor are not affected and should otherwise provide that to the extent the debt to NBT is being assumed by Clean Royalties, other provisions inconsistent with this should not apply.

21. Finally, in connection with these Deposit Accounts, NBT has setoff and recoupment rights, which are superior to the lien rights of any pre-petition lender. *See generally In re Communication Dynamics, Inc.*, 300 B.R. 220, 223-27 (2003) (discussing setoff and recoupment rights and holding that the right of setoff elevates an unsecured claim to secured status and that a right of recoupment – because it is a defense to sums due by the creditor – is not subordinate to a lender's security interest).

22. The Sale Order should make clear that NBT's setoff and/or recoupment rights in these Deposit Accounts are preserved. Consistent with this, NBT plans to object to the secured lender's lien by the challenge deadline on the Deposit Account. Language should be added to this Sale Order by amendment or stipulation that provides NBT replacement liens to the extent the Debtor uses cash from the Deposit Accounts and fall below the amount on deposit as of the Petition Date. In addition, because it is not being proposed that NBT be paid off from the proceeds of the sale, but rather that Clean Royalties assume the debt, the Sale Order should provide that the liens of NBT in the assets securing NBT's debt should be maintained.

**RESERVATION OF RIGHTS**

23. The submission of this Objection by NBT is not intended as, and shall not be construed as: (a) NBT's admission of any liability or waiver of any defenses or limitation of any rights of the NBT with respect to its claim against the Debtors, the Secured Loans and/or the Deposit Accounts; (b) NBT's waiver or release of any right of exoneration it may have against anyone with respect to, without limitation, the claim against the Debtors, the Secured Loans and/or the Deposit Accounts; (c) an election of remedy; or (d) consent to the determination of the Debtors' liability to NBT by any particular court, including, without limitation, this Bankruptcy Court.

24. NBT reserves the right to raise any arguments by any other party at the Sale Hearing.  NBT expressly reserves, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with the Debtors' and non-debtor affiliates' rights and obligations relating to the Secured Loans and/or the deposit accounts.  NBT further reserves all rights to assert any and all such rights, claims, defenses, limitations, and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

25. NBT further reserves its rights to raise any issues contained in this Objection and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding, including, without limitation: (i) objections to confirmation of any plan and (ii) an adversary proceeding requesting any appropriate declaratory and/or injunctive relief.

## **CONCLUSION**

**WHEREFORE**, NBT respectfully objects to the Sale Motion for the reasons described above and for such other relief as the Court deems appropriate.

Respectfully submitted,

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: August 5, 2024

*/s/ Gaston P. Loomis*
Gary D. Bressler, Esq. (#5544)
Gaston P. Loomis, Esq. (#4812)
300 Delaware Avenue, Suite 1014
Wilmington, DE 19801
Telephone: 302-300-4510
Facsimile: 302-654-4031
E-mail: gbressler@mdmc-law.com
gloomis@mdmc-law.com

*Attorneys for NBT Bank, N.A.*