# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al.*,[1] | Case No. 24-11144 (TMH) |
| Debtors. | (Jointly Administered) |
| | RE: D.I. 183 and 269 |

## DECLARATION OF RICHARD F. NEJAME
## IN SUPPORT OF DEBTORS' SELECTION OF
## SUCCESSFUL BIDDER AND THE PROPOSED SALE TRANSACTION

Pursuant to 28 U.S.C. § 1746, I, Richard F. NeJame, declare as follows:

1. My name is Richard F. NeJame. I am over the age of 18 and have personal knowledge of the matters discussed in this declaration (this "Declaration").

2. I am a Managing Director at England Securities, LLC ("England"), the proposed investment banker for iSun, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

3. I make this Declaration in support of the Debtors' proposed sale of their assets (the "Assets") to the successful bidder (the "Successful Bidder"), pursuant to that certain Order (A) (I) Approving Bid Procedures In Connection With The Sale Of Substantially All Of The Debtors Assets, (II) Scheduling An Auction And A Sale Hearing, (III) Approving The Form And Manner

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, <u>Attn</u>: Michael Busenkell, 1201 N. Orange Street, Suite 300**,** Wilmington, DE 19801.

Of Notice Thereof, (IV) Authorizing The Debtors To Enter Into The Stalking Horse Agreement, (V) Approving Procedures For The Assumption And Assignment Of Contracts And Leases, And (VI) Granting Related Relief (the "Bid Procedures Order", and the bidding procedures attached as Exhibit 1 thereto, the "Bidding Procedures") [Docket No. 183] and the Debtors' Notice of Successful Bidder and Cancellation of Auction [Docket No. 269] (the "Notice of Successful Bidder") which sets forth the Successful Bidder selected by the Debtors.

4. Specifically, this Declaration summarizes the marketing process for the Debtors' assets, including the events of the Auction. This Declaration further explains that the proposed accepted bids are the highest and best bids for the subject Assets.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other employees of England and members of the Debtors' management, professionals, and advisors, my review of relevant documents, or my professional opinion based upon my experience and knowledge of the Debtors' industry, operations, and financial condition. If called to testify, I could and would testify competently as to the facts set forth herein. I am authorized to submit this Declaration.

6. I have previously provided a detailed description of my educational and professional background and qualifications in the Declaration Of Richard F. NeJame In Support Of Debtor's Application For Entry Of An Order: (I) Authorizing Debtors To Employ And Retain England Securities, LLC As Financial Advisor And Investment Banker To The Debtors Nunc Pro Tunc To The Petition Date, (II) Approving The Terms Of The Engagement Agreement, (III) Modifying Certain Time-Keeping Requirements, And (IV) Granting Related Relief. [Docket No. 61-2].

7. In the Declaration Of Richard F. NeJame In Support Of Debtors Motion For Entry

Of Orders (A) (I) Approving Bid Procedures In Connection With The Sale Of Substantially All Of The Debtors Assets, (II) Scheduling An Auction And A Sale Hearing, (III) Approving The Form And Manner Of Notice Thereof, (IV) Authorizing The Debtors To Enter Into The Stalking Horse Agreement, (V) Approving Procedures For The Assumption And Assignment Of Contracts And Leases, And (VI)Granting Related Relief; And (B) (I) Approving The Purchase Agreement; (II)) Approving The Sale Of Substantially All Of The Debtors Assets Free And Clear; (III)Approving The Assumption And Assignment Of Contracts And Leases; And (IV) Granting Related Relief [Docket No. 151] (the "Second NeJame Declaration" and, together with the First NeJame Declaration, the "Previous Declarations"), I summarized the arm's-length, bona fide nature of the negotiations for the Bid Protections (as defined in the Second NeJame Declaration), my observation and professional opinion that the Bid Protections reflected customary market terms, and that the Stalking Horse Bidder was critical to the success of the Debtors' sale process.

8. I discuss and reiterate certain aspects of the Previous Declarations herein and otherwise incorporate the remainder of the Previous Declarations by reference herein.

9. Overall, the Successful Bid is the transaction contemplated by the Stalking Horse Agreement despite a robust marketing process which has demonstrated the value of the subject Assets. The Successful Bid is the highest and best bid for the Assets.

10. Prior to the commencement of these chapter 11 cases, the Debtors retained England in August 2023. From that date, England has worked with the Debtors to assist the Debtors in identifying strategic partners and investors to solve the Debtors' funding requirements through either a financing or a sale transaction. With respect to a potential sale transaction, England has crafted detailed marketing materials and assembled related diligence information for a confidential electronic data room (the "Data Room") and a confidential information memorandum

(the "CIM") with the assistance of the Debtors and their other professional advisors.

11. England, with the assistance of the Debtors' management team and other professionals, endeavored to market the Debtors' assets and ensure a robust and competitive sale process that would maximize value for the Debtors' stakeholders. To that end, England contacted approximately 471 potentially interested parties, including various parties that had been contacted prior to the Petition Date, regarding the opportunity to purchase the Debtors' assets. England also contacted 64 parties specific to a venture investment that iSun holds.

12. In addition, 34 parties have executed non-disclosure agreements (each, an "NDA"). Parties who executed an NDA have been provided the CIM and access to the Data Room, which contained diligence information about the Debtors and their assets. England has responded to various inquiries and, together with the Debtors' management team, conducted virtual and in-person meetings with several of the potential buyers who executed NDAs in order to offer them the opportunity to ask questions about the Debtors' assets and operations.

13. Ultimately, England received a bid for iSun's investment in Encore, in addition to two indications of interest for a subset of the Assets subject to the Stalking Horse Bid. None of these potential transactions satisfied the requirements of a Qualified Bid. The indicative purchase prices across all those bids, in the aggregate, were substantially less than the Purchase Price required to constitute a Qualified Bid.

14. As should be clear from the above, and based upon my work and involvement with the Debtors in their efforts to sell the Assets and the course of negotiations with bidders since June 2024, the Debtors' marketing and sale process, coordinated by England and other advisors, was comprehensive and robust and the price secured through this process (conducted in accordance with the bid procedures approved by the Court), therefore, reflects the best and highest

offer available for the Debtors' assets.

15.  For the reasons described herein, I believe that the thorough and exhaustive nature of the marketing and sale process demonstrates the true and accurate market value for the Assets, that the sale is in the best interest of the Debtors and their estates, and more time would not generate any higher value for the Assets.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 7, 2024
New York. New York

/s/ Richard NeJame
Richard NeJame
Managing Director
England Securities, LLC