**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al.*,[1] | Case No. 24-11144 (TMH) |
| Debtors. | (Jointly Administered) |
| | RE: D.I. 65, 183, 185, 186, 226, 230, 233 |

**DEBTORS' OMNIBUS REPLY IN RESPONSE TO THE OBJECTIONS
TO THE SALE MOTION AND THE NOTICES OF
POTENTIAL CONTRACT ASSUMPTION AND ASSIGNMENT**

The above-captioned debtors and debtors in possession (the "Debtors"), hereby file this omnibus reply (the "Reply") in response to the following objections to the Sale Motion; the Notice of Potential Contract Assumption and Assignment filed on July 10, 2024 [D.I. 185], as amended on July 11, 2024 [D.I. 186] and July 22, 2024 [D.I. 233] (the "Initial Notice"); the Supplemental Notice of Potential Contract Assumption and Assignment [D.I. 226] (the "First Supplemental Notice"); and the Second Supplemental Notice of Potential Contract Assumption and Assignment [D.I. 230] (the "Second Supplemental Notice", and together with the Initial Notice and the First Supplemental Notice, the "Assumption Notices") made by: (a) the ReArch Company ("ReArch") [D.I. 186] (the "ReArch Objection"); (b) BNRG Renewables Limited ("BNRG") [D.I. 252] (the "BNRG Objection"); (c) Fusion Renewable NA, LLC, Fusion

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

Renewable, LLC, ER Kendall Hill Solar, LLC, and ER Waite Cemetery Solar, LLC (collectively, "Fusion") [D.I. 256] as supplemented on July 24, 2024 [D.I. 281], as amended on July 25, 2024 [D.I. 288], and as further supplemented on August 6, 2024 [D.I. 335] (the "Fusion Objection"); (d) BD Solar Norridgewock LLC, BD Solar North Anson LLC, BD Solar Rangeley LLC, and Nautilus US Power HoldCo LLC (collectively, "Nautilus Solar") [D.I. 261] (the "Nautilus Solar Objection"); (e) Merchants National Bonding Company, Inc. and Great Midwest Insurance Company (collectively, the "Sureties") [D.I. 262] (the "Sureties Objection"); (f) Encore Redevelopment, LLC ("Encore") [D.I. 263] as supplemented on July 25, 2024 [D.I. 296] (the "Encore Objection");[2] (g) Ford Motor Credit Co. ("Ford") [D.I. 270] (the "Ford Objection"); (h) Ally Bank ("Ally") [D.I. 271] (the "Ally Objection"); (i) Cedar Advance, LLC ("Cedar") [D.I. 272] (the "Cedar Objection"); (j) Opsun Systems Inc. ("Opsun") [D.I. 274] (the "Opsun Objection"); (k) NBT Bank, N.A. ("NBT") [D.I. 291] as amended on August 5, 2024 [D.I. 333] (the "NBT Objection"); and (l) Merchants Automotive Group, Inc. ("Merchants Fleet") [D.I. 331] (the "Merchants Fleet Objection") (collectively, the "Objections"). In response to the Objections and in further support of the Sale Motion, the Debtors state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors commenced these chapter 11 cases with the sole objective of maximizing value for the benefit of the Debtors' creditors. After conducting a robust marketing process, which included reaching out to over 500 potential parties regarding their interest in purchasing the Debtors' Assets, both in their entirety or separately, the Stalking Horse Bid remained the highest and best offer received by the Debtors for the Assets.

---

[2] On July 26, 2024, Maple SETF, LLC ("Maple") filed a joinder to the Encore Objection (the "Maple Joinder") [D.I. 312]. The Maple Joinder should be overruled for the reasons as the Encore Objection as further discussed below.

2.      For the reasons set forth more thoroughly below, the Objections are either moot, being resolved, or should be overruled; the sale to the Stalking Horse should be granted; and the proposed Sale Order should be entered without further delay.

## BACKGROUND

3.      On June 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their affairs as debtors in possession pursuant to §§ 1107(a) and 1009 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these cases.

4.      On June 14, 2024, the United States Trustee appointed the Committee of Unsecured Creditors (the "Committee").

5.      Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and regarding Debtors' business and capital structure is set forth in the *Declaration of Jeffrey Peck in Support of Debtors' Petition and First Day Motions* [D.I. 4] (the "First Day Declaration") which is incorporated by reference herein.

6.      On June 7, 2024, the Debtors filed Debtors' *Motion for Entry of Orders (A) (I) Approving Bid Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; and (B) (I) Approving the Purchase Agreement; (II) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear; (III) Approving the Assumption And Assignment of Contracts and Leases; and (IV) Granting Related Relief* [D.I 65] (the "Bid Procedures Motion").

3

7.      On July 10, 2024, this Court entered the *Order (A)(I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling An Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing the Debtors to Enter into the Stalking Horse Agreement, (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* (the "Bid Procedures Order") [D.I. 183].

8.      On July 10, 2024, Debtors filed the *Notice of Potential Contract Assumption and Assignment* [D.I. 185], which was subsequently amended on July 11, 2024 [D.I. 186] and July 22, 2024 [D.I. 233] (the "Initial Notice").

9.      On July 18, 2024, Debtors filed the *Supplemental Notice of Potential Contract Assumption and Assignment* [D.I. 226] (the "First Supplemental Notice").

10.      On July 19, 2024, Debtors filed the *Second Supplemental Notice of Potential Contract Assumption and Assignment* [D.I. 230] (the "Second Supplemental Notice" and together with the Initial Notice and the First Supplemental Notice, the "Assumption Notices").

11.      Although numerous parties expressed interest, the Debtors did not receive a Qualified Bid or potential competing bid other than the Stalking Horse Bid prior to the Bid Deadline, and the Auction scheduled for July 24, 2024 was cancelled.

12.      On July 23, 2024, Debtors filed a *Notice of Successful Bidder and Cancellation of Auction*, which designated the Stalking Horse Bidder as the Successful Bidder [D.I. 269].

## **DEBTORS' REPLY**

### **The ReArch Objection**

13.      ReArch objects to the proposed cure amount set forth in the Assumption Notices as it relates to the agreement between ReArch and the Debtors (the "ReArch Agreement").

Notwithstanding any disagreement in ReArch's proposed cure amount, it is Debtors' understanding that the ReArch Agreement is not being assumed and assigned under the Stalking Horse Agreement, and therefore, the ReArch Objection is moot.

**The BNRG Objection**

14.     BNRG contends that:  (i) BNRG has no contractual relationship with any of the Debtors in these cases; (ii) the EPC Construction Agreement between the Debtors and BD Solar Larson, LLC was terminated; and (iii) that Debtors cannot transfer Avoidance Actions or "Payment Intangible" claims against BNRG "free and clear" of any rights and/or defenses BNRG may have in respect of such obligations.

15.     Upon review of their books and records, the Debtors agree that there is no contractual relationship between BNRG and the Debtors.  Further, Debtors agree that the Larson Contract was terminated pre-petition.  Although the Larson Contract was terminated pre-petition, the Stalking Horse Agreement does include the rights and/or claims that belong the Debtors' estates under the Larson contract.

16.     The Stalking Horse and BNRG are currently in discussions regarding language to be included in the Proposed Sale Order resolving the remaining issue in the BNRG Objection.

**The Fusion Objection**

17.     Fusion contends that it is unable to identify the six allegedly executory agreements related to Fusion and/or the Fusion Projects.  Upon review of their Books and Records, Debtors have determined that the only executory agreements between the Debtors and Fusion are the EPC Agreements identified in the Fusion Objection, the Waite Cemetery EPC Agreement and the Kendall Hill EPC Agreement (the "Fusion EPC Agreements").  Moreover, Debtors disagree with Fusion's asserted cure amounts under the EPC Agreements.  Nevertheless, it is Debtors'

understanding that the Fusion EPC Agreements are not being assumed and assigned to the Stalking Horse.

18.     Although the Stalking Horse Agreement does include the purchase of Debtors' twenty percent interest in Fusion Renewable NA, LLC, Debtors do not agree that the Renewable NA LLC Agreement is an executory contract, let alone that there would be a cure amount that equates to the sum of the purported cure amounts of the Fusion EPC Agreements.  Fusion fails to address how the Renewable NA LLC Agreement is executory or even point to where purported defaults under the Fusion EPC Agreements would cause a default under the Renewable NA LLC Agreement.

19.     Debtors do not believe that the Stalking Horse's purchase of the Debtors' interest in Fusion Renewable NA, LLC requires the assumption and assignment of the Renewable NA LLC Agreement, and therefore, believes that this issue should be overruled.

20.     Fusion further objects on the basis that the Renewable NA LCC Agreement contains a Right of First Refusal ("ROFR") that Debtors must comply with before the membership units may be transferred.

21.     It is Debtors' understanding that the Stalking Horse and Fusion are in discussions regarding a resolution of the Fusion Objection.

**The Nautilus Objection**

22.     Nautilus contends that the EPC agreements between Nautilus and the Debtors cannot be assigned and assumed because those agreements were terminated.  Nautilus also

contends that Nautilus is entitled to certain damages and to the turnover of certain property related to Nautilus' projects.

23.     Upon review of their books and records, the Debtors agree that the EPC agreements between Nautilus and the Debtors were terminated.  Although the agreements were terminated pre-petition, the Stalking Horse Agreement does include the purchase of the rights and/or claims that belong to the Debtors' estates under the terminated EPC agreements.

24.     It is Debtors' understanding that the Stalking Horse and Nautilus are currently in discussions regarding language to be included in the Proposed Sale Order resolving the issues in the Nautilus Objection.

**The Sureties Objection**

25.     The Sureties contend that: (i) the bonds issued by the Sureties cannot be assumed and assigned; (ii) in the event that the bonds are assignable, that the proposed cure amounts are incorrect; (iii) Debtors cannot assume and assign contracts that were terminated pre-petition, and as such, any bonds associated with those contracts also cannot be assumed and assigned; (iv) the Debtors cannot assign accounts receivables on constructions projects that are not property of the Debtors' estate and in which the Sureties have a superior interest; and (v) certain deadlines in the Bid Procedures Order do not comport with due process.

26.     The Debtors, the Stalking Horse and the Sureties are currently in discussions regarding language to be included in the Proposed Sale Order resolving the issues in the Sureties Objection.

**The Encore Objection**

27.     Encore contends that the Debtors cannot sell their membership interest in Encore to the Stalking Horse because (i) Debtors must first assume and assign the Encore Membership

Interest Documents[3] before the Encore Membership Interests can be sold, which may not be possible because it is unclear whether the Encore Membership Interest Documents are executory; and (ii) even if the Encore Membership Interest Documents are executory, their assumption and assignment is prohibited.

28.    It is Debtors' understanding that the Stalking Horse and Fusion are in discussions regarding a resolution of the Fusion Objection.

**The Ford and Ally Objections**

29.    The Stalking Horse has been in contact with counsel to both Ford and Ally, and the parties are working on language to include in the Proposed Sale Order that will resolve the Ford and Ally Objections.

**The Cedar Objection**

30.    Cedar contends that the Debtors cannot sell certain receivables because Cedar purchased those receivables in an agreement entered into between Cedar and the Debtors on or around January 4, 2024 (the "Cedar Agreement"), and as such, those receivables are not property of the Debtors' estates.  Debtor disagrees with Cedar's characterization of the Cedar Agreement as a sale of the receivables, which will be addressed in the adversary proceeding initiated by Cedar.

31.    It is Debtors' understanding that Debtors' pre-petition secured lender, Decathlon Growth Credit, LLC ("Decathlon"), is discussing a potential resolution with Cedar prior to the Sale Hearing.

**The Opsun Objection**

---

[3]The Encore Membership Interest Documents include the Membership Unit Purchase Agreement (the "MUPA") and the Seventh Amended and Restated Operating Agreement of Encore Redevelopment, Inc., dated May 17, 2023 (the "Encore LLC Agreement", together with the MUPA, the ("Encore Membership Documents").

32.     After further review of Debtors' books and records and discussions with counsel to the Stalking Horse, Debtors have confirmed that the assets referred to in the Opsun Objection are not being acquired and the purported agreement in the Opsun Objection is not being assumed and assigned to the Stalking Horse.  As such, Debtors believe the Opsun Objection is moot.

**The NBT Objection**

33.     NBT contends that (i) the Secured Loans with the Debtors cannot be sold to the Stalking Horse without NBT's consent; and (ii) even if the Secured Loans can be sold without consent, NBT is entitled to adequate assurance of future performance, which has not been provided.

34.     It is Debtors' understanding that the Stalking Horse and NBT are currently discussing the terms of the assumption of the NBT debt, which if agreed upon, will resolve NBT's objection.

**The Merchants Fleet Objection**

35.     After further review of Debtors' books and records and discussions with counsel to the Stalking Horse, Debtors have confirmed that the vehicles leased from Merchants Fleet and the services agreement with Merchants Fleet are not being assumed and assigned to the Stalking Horse.  As such Debtors believe the Merchants Fleet Objection is moot.

WHEREFORE, the Debtors respectfully request that the Court overrule the Objections; and grant the relief requested in the Sale Motion, to the extent such objections are not consensually resolved by the parties or withdrawn.

Dated: August 7, 2024

GELLERT SEITZ BUSENKELL &
BROWN, LLC

*/s/ Michael Van Gorder*
Michael Busenkell (DE 3933)
Amy D. Brown (DE 4077)
Michael Van Gorder (DE 6214)
1201 North Orange Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5812
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
        abrown@gsbblaw.com
        mvangorder@gsbblaw.com

*Proposed Counsel to the Debtors and
Debtors-in-Possession*