# **EXHIBIT 1**

## Stalking Horse Agreement

**AMENDED AND RESTATED ASSET PURCHASE AGREEMENT**

between

**ISUN, INC. AND EACH OF ITS AFFILIATES OR SUBSIDIARIES**

as Sellers

and

**CLEAN ROYALTIES, LLC**

as Purchaser

August 22, 2024

# ASSET PURCHASE AGREEMENT

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS AND RULES OF CONSTRUCTION. ........................................... 1

    Section 1.1      Definitions ................................................................................... 1

    Section 1.2      Rules of Construction ................................................................. 8

ARTICLE II. PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES. ........... 8

    Section 2.1      Purchase and Sale of Assets ....................................................... 8

    Section 2.2      Assignment and Assumption of Liabilities; Novation of Project Debt ............. 8

    Section 2.3      Purchase Price ............................................................................ 8

    Section 2.4      Deemed Consents and Cure Payments ....................................... 9

    Section 2.5      Obligations in Respect of Assumed Contracts ............................ 9

    Section 2.6      Post-Closing Assignment of Contracts ....................................... 9

ARTICLE III. CLOSING. ............................................................................................................ 9

    Section 3.1      Closing ....................................................................................... 9

    Section 3.2      Deliveries by Sellers .................................................................. 9

    Section 3.3      Deliveries by Purchaser ............................................................. 10

ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF SELLERS. ........................... 11

    Section 4.1      Organization, Standing and Power ............................................. 11

    Section 4.2      Authorization ............................................................................. 11

    Section 4.3      Title to Assets ............................................................................ 11

    Section 4.4      Conflicts; Consents .................................................................... 11

    Section 4.5      Assumed Contracts .................................................................... 12

    Section 4.6      Cure Amounts ............................................................................ 12

    Section 4.7      Brokers ...................................................................................... 12

    Section 4.8      Intellectual Property .................................................................. 12

    Section 4.9      Taxes ......................................................................................... 13

    Section 4.10    Labor Matters ............................................................................ 13

    Section 4.11    Environmental Matters ............................................................... 13

    Section 4.12    Litigation; Proceedings .............................................................. 14

    Section 4.13    Compliance with Laws .............................................................. 14

ARTICLE V. REPRESENTATIONS AND WARRANTIES OF PURCHASER. ..................... 14

31956518.4

Section 5.1    Organization, Standing and Power .................................................................. 14

Section 5.2    Authorization ..................................................................................................... 14

Section 5.3    No Conflict or Violation...................................................................................... 15

Section 5.4    Availability of Funds .......................................................................................... 15

Section 5.5    Brokers................................................................................................................ 15

Section 5.6    Limitation of Representations and Warranties .................................................. 15

ARTICLE VI. COVENANTS OF PURCHASER AND SELLERS; OTHER AGREEMENTS. 16

Section 6.1    Consents and Approvals ..................................................................................... 16

Section 6.2    Access to Information.......................................................................................... 16

Section 6.3    Further Assurances ............................................................................................ 16

Section 6.4    Bankruptcy Actions ........................................................................................... 17

Section 6.5    Auction Procedures ............................................................................................ 18

Section 6.6    Disclosure Schedules and Supplements ............................................................. 18

Section 6.7    Conduct of Business Prior to Closing................................................................. 18

Section 6.8    Casualty .............................................................................................................. 20

Section 6.9    Assumed Obligations .......................................................................................... 20

Section 6.10   Disclaimer........................................................................................................... 20

ARTICLE VII. CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER............ 20

Section 7.1    Representations and Warranties; Covenants .................................................... 20

Section 7.2    Due Diligence ..................................................................................................... 21

Section 7.3    Bankruptcy Court Approval .............................................................................. 21

Section 7.4    No Injunctions .................................................................................................... 21

Section 7.5    Closing Deliveries .............................................................................................. 21

ARTICLE VIII. CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS. ................ 21

Section 8.1    Representations and Warranties; Covenants .................................................... 21

Section 8.2    Consideration ..................................................................................................... 22

Section 8.3    Bankruptcy Court Approval .............................................................................. 22

Section 8.4    No Injunctions .................................................................................................... 22

Section 8.5    Closing Deliveries .............................................................................................. 22

ARTICLE IX. TERMINATION; TERMINATION PAYMENT. ............................................. 22

Section 9.1    Termination ........................................................................................................ 22

Section 9.2    Breakup Fee and Expense Reimbursement ...................................................... 23

Section 9.3    Effect of Termination or Breach........................................................................ 24

31956518.4

ARTICLE X. ADDITIONAL POST-CLOSING COVENANTS. ................................................. 24

Section 10.1    Employees ................................................................................... 24

Section 10.2    Employee Benefit Plans.............................................................. 24

Section 10.3    Joint Post-Closing Covenant of Purchaser and Sellers................. 25

Section 10.4    Name Changes ........................................................................... 25

Section 10.5    Tax Matters ................................................................................ 25

ARTICLE XI. MISCELLANEOUS. ...................................................................................... 26

Section 11.1    Expenses ..................................................................................... 26

Section 11.2    Amendment ................................................................................ 27

Section 11.3    Notices ....................................................................................... 27

Section 11.4    Waivers ...................................................................................... 28

Section 11.5    Counterparts and Execution........................................................ 28

Section 11.6    Electronic Signatures ................................................................. 28

Section 11.7    Headings ..................................................................................... 28

Section 11.8    Submission to Jurisdiction.......................................................... 28

Section 11.9    Governing Law; Jurisdiction ...................................................... 28

Section 11.10   WAIVER OF JURY TRIAL ....................................................... 29

Section 11.11   Binding Nature; Assignment ...................................................... 29

Section 11.12   No Third Party Beneficiaries ..................................................... 29

Section 11.13   Construction ............................................................................... 29

Section 11.14   Public Announcements................................................................ 29

Section 11.15   Entire Understanding .................................................................. 30

Section 11.16   Closing Actions.......................................................................... 30

Section 11.17   Conflict Between Transaction Documents.................................... 30

Section 11.18   No Survival ................................................................................ 30

Section 11.19   Access to Books and Recrods Post-Closing................................. 30

## AMENDED AND RESTATED ASSET PURCHASE AGREEMENT

**THIS AMENDED AND RESTATED ASSET PURCHASE AGREEMENT** is made and entered into as of this 9th day of July, 2024 (the "Execution Date"), by and among (i) Clean Royalties, LLC ("Purchaser"), and (ii) iSun, Inc. and each of its affiliates or subsidiaries listed on the signature page of this Agreement (each, a "Seller" and collectively, "Sellers").

WHEREAS, Purchaser desires to purchase, and Sellers desire to sell, convey, assign, transfer and deliver to Purchaser, certain assets relating to Sellers' Business;

WHEREAS, Purchaser and Sellers desire to take such action as may be necessary to maintain business operations and preserve the value of the Business pending the Closing of the transactions described herein;

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual covenants, agreements and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I. DEFINITIONS AND RULES OF CONSTRUCTION.

      **Section 1.1**    **Definitions.** Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"Acquired Assets" means all of the direct and indirect right, title and interest of Sellers in and to the assets of Sellers set forth on Schedule 1.1(a), which schedule may be amended from time to time through and including the Closing Date.

"Alternate Proposal" means a proposal (other than by Purchaser or its Affiliates) relating to any merger, consolidation, business combination, sale or other disposition of greater than 50% of the Acquired Assets pursuant to one or more transactions, the sale of greater than 50% of the outstanding shares of capital stock or equity interests of any Seller (including, without limitation, by way of a tender offer, foreclosure or plan of reorganization or liquidation) or a similar transaction or business combination involving one or more third parties and any Seller.

"Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"Agreement" means this Asset Purchase Agreement, including all the Exhibits and the Schedules hereto, as the same may be amended from time to time in accordance with its terms.

"Allocation" shall have the meaning set forth in Section 10.5(b) hereof.

"Assignment and Assumption Agreement" shall have the meaning set forth in Section 3.2(b) hereof.

"Assumed Contracts" means collectively those Contracts of Sellers set forth on Schedule 1.1(a) under the heading "Assumed Contracts," which schedule may be amended from time to time through and including the Closing Date.

"Assumed Indebtedness" means those Liabilities of Sellers set forth on Schedule 1.1(c).

"Assumed Obligations" means (a) the obligations relating to any Assumed Contract first arising as of or following the Closing, and (b) those obligations of Sellers set forth on Schedule 1.1(b), which schedule may be amended from time to time through and including the Closing Date.

"Assumed Plans" means the employee benefit plans identified in Schedule 1.1(a) attached hereto under the heading "Assumed Plans."

"Auction" means the auction conducted by Sellers pursuant to the Bidding Procedures Order and Section 6.5 hereof.

"Avoidance Actions" means all of Sellers' claims and causes of action arising under Chapter 5 of the Bankruptcy Code relating to (a) former employees hired by Purchaser (but excluding any employee who is a current or former director or current or former officer of Sellers), (b) counterparties of Assumed Contracts, (c) vendors included in Purchaser's go-forward business to be identified in a schedule delivered to Sellers on or before July 25, 2024, and (d) any current customer of Sellers, (e) any customer that is a debtor and/or obligor on an account receivable acquired by Purchaser, and (f) any contractual warranty obligation assumed by the Purchaser. For the avoidance of doubt, Avoidance Actions shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code against a current or former director or current or former officer of the Sellers.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Bid" or "Bids" shall have the meaning set forth in Section 6.6 hereof.

"Bidders" shall have the meaning set forth in Section 6.6 hereof.

"Bidding Increment" shall have the meaning set forth in Section 6.5(d) hereof.

"Bidding Procedures" means the procedures outlined in the Bidding Procedures Order.

"Bidding Procedures Order" means an order entered by the Bankruptcy Court in a form attached hereto as Exhibit C, together with such other changes that are satisfactory to Purchaser.

"Bill of Sale" shall have the meaning set forth in Section 3.2(a) hereof.

"Books and Records" means all books, records and lists of Sellers including, without limitation, (i) all records relating to customers, suppliers or personnel of Sellers (including, without limitation, customer and mailing lists) and (ii) all books, ledgers, files, reports, plans, drawings and operating

records of Sellers; provided, however, that "Books and Records" shall not include the originals of any Seller's minute books, stock books and Tax Returns.

"Breakup Fee" shall have the meaning set forth in Section 9.2(a) hereof.

"Business" means the business of Sellers and their affiliates and subsidiaries in commercial solar contracting, EV charging, system installation and other related solutions for both residential, commercial and utility scale customers.

"Business Day" means a day other than Saturday, Sunday or other day that banks located in New York, New York are authorized or required by Law to close.

"Casualty" shall have the meaning set forth in Section 6.9 hereof.

"CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) and any regulations promulgated thereunder.

"Cash Purchase Price" means $10,000,000.

"Chapter 11 Cases" means the cases to be commenced by Sellers under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Claim" has the meaning ascribed by Bankruptcy Code §101(5), including all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations and liabilities of any kind or nature under contract, at Law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"Closing" shall have the meaning set forth in Section 3.1 hereof.

"Closing Date" shall have the meaning set forth in Section 3.1 hereof.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Committee Settlement Payment" means the $75,000 to be paid by or on behalf of Purchaser at the Closing or, if the closing does not occur, at the closing of an Alternative Transaction by a reduction of the Break-Up Fee, in accordance with the *Stipulation Among Debtors, CR, Decathlon and the Committee Concerning Resolution of DIP and Bid Procedures Objections* filed with the Bankruptcy Court at Docket No. 157 and the CR Term Sheet (as defined in and attached to such stipulation).

"Confidentiality Agreement" means the Confidentiality Agreement, dated December 27, 2023, 2024, between iSun, Inc. and Clean Royalties, LLC.

"Contract" means any agreement, contract, commitment or other binding arrangement or understanding, whether written or oral.

"Cure Payments" means any cure payment or obligations (pursuant to section 365 of the Bankruptcy Code due by Sellers, and required by the Bankruptcy Court to be made or assumed by Purchaser, in order to cure any default with respect to any Acquired Assets or Assumed Obligations.

"Deposit" means an amount in cash equal to $1,250,000.

"DIP Credit Agreement" means the Superpriority Debtor-in-Possession Credit Facility among the Sellers named herein, as borrowers, Clean Royalties, LLC, as lender, (as the same may be amended, restated, supplemented or otherwise modified from time to time).

"DIP Obligations" shall have the same meaning as defined in the DIP Orders.

"DIP Orders" means the interim and final orders of the Bankruptcy Court approving Sellers' entry into the DIP Credit Agreement.

"Dollars" or "$" means dollars of the United States of America.

"Eligible Employees" shall have the meaning set forth in Section 10.1(a) hereof.

"Environmental Laws" shall have the meaning set forth in Section 4.11 hereof.

"Execution Date" shall have the meaning set forth in the Preamble hereto.

"Exhibits" means the exhibits hereto.

"Expense Reimbursement" shall have the meaning set forth in Section 9.2(b) hereof.

"Excluded Liabilities" shall mean any and all Claims, Liens, Tax or liability, obligation, agreement or contract other than an Assumed Obligation.

"Final Order" means an Order which has not been stayed or vacated and as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"Governmental Authority" means any United States federal, state or local or any foreign government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

"Hazardous Materials" shall mean (a) any petroleum products or byproducts, radioactive materials, friable asbestos or polychlorinated biphenyls or (b) any waste, material, or substance defined as a "hazardous substance," "hazardous material," or "hazardous waste" or "pollutant" or otherwise regulated under any applicable Environmental Law.

"Intellectual Property" means any and all intellectual property rights in the world arising under the Laws of any jurisdiction with respect to, arising from or associated with the following: (a) patents, patent applications and patent disclosures, together with all reissuances, continuations, continuations in part, revisions, extensions, reexaminations, provisionals, divisions, renewals,

revivals and foreign counterparts thereof and all registrations and renewals in connection therewith, (b) trademarks, service marks, trade names (registered and unregistered), trade dress, brand names, industrial designs, trade dress rights, logos, emblems, signs or insignia, social media handles and names, corporate names and other indicia of origin and corporate branding, together with all translations, adaptations, derivations and combinations thereof and including all goodwill associated therewith throughout the world, and all applications, registrations, renewals and associated rights to register any of the foregoing in connection therewith,  (c) works of authorship, copyrightable works, copyrights (including copyrights in software programs) and registrations and applications therefor and all other rights corresponding thereto, moral rights, database and design rights, and mask works and registrations and applications therefor, and all applications, registrations and renewals in connection therewith, (d) trade secrets, inventions and confidential business information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, business and marketing plans and proposals, assembly, test, installation, service and inspection instructions and procedures, technical, operating and service and maintenance manuals and data, hardware reference manuals and engineering, programming, service and maintenance notes and logs), (e) software, (f) internet protocol (IP) addresses, Internet addresses, uniform resource locaters, domain names, websites and web pages, and all administrative rights thereto, (g) any and all other intellectual property and proprietary rights, and (h) goodwill related to all of the foregoing, in each case to the extent used or useful in the operation of the Business or related to the Acquired Assets.

"Intellectual Property Assets" means all Intellectual Property that is owned or controlled by Sellers, their affiliates and subsidiaries, and/or is used or held for use in the operation of the Business, including but not limited to the data used or held for use in the operation of the Business that are stored, hosted or otherwise maintained on or by business applications and services utilized by Sellers in the ordinary course of their Business.

"Knowledge of Sellers" or "Sellers' Knowledge" shall mean the actual knowledge of Sellers' officers with no duty of investigation.

"Law" means any law, statute, regulation, ruling or Order of, administered or enforced by or on behalf of, any Governmental Authority.

"Liability" means any liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted).

"Lien" or "Liens" means any charge, claim, lien, option, encumbrance, mortgage, pledge, security interest, conditional sale agreement or other title retention agreement, lease, security agreement, right of first refusal, option, restriction, tenancy, license, covenant, right of way, easement or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or statute or law of any jurisdiction) on property.

"Material Adverse Effect" means any change or event that is materially adverse to the assets, liabilities, operations or condition of Sellers, taken as a whole, in each case, except for any such

change, event or effect resulting from or arising out of (a) the filing of the Chapter 11 Cases and reasonably anticipated effects thereof, (b) changes in economic conditions generally or in the industries in which Sellers operate, whether international, national, regional or local, (c) changes in general regulatory or political conditions, including any acts of war or terrorist activities, (d) strikes, work stoppages or other labor disturbances, (e) increases in the costs of commodities or supplies, (f) effects of weather or meteorological events, (g) any change of Law, accounting standards or regulatory policy, (h) changes or adverse conditions in the securities markets, including those relating to debt financing, (i) the announcement, execution or delivery of this Agreement or the consummation of the transactions contemplated hereby, and (j) any actions specifically required to be taken or consented to pursuant to or in accordance with this Agreement.

"No Fee Event" means (a) Sellers' termination of this Agreement solely pursuant to Section 9.1(c), or (b) the failure of Sellers to consummate, or agree to consummate, an Alternate Proposal or effect, or agree to effect, a plan of reorganization on or prior to the second anniversary of the date hereof.

"Novation Agreement" means an agreement, in form and substance acceptable to Purchaser, by and among the Purchaser, Sellers and applicable Project Lender to novate or otherwise cause Purchaser to assume the Project Debt.

"Order" means any decree, order, injunction, rule, judgment or consent of or by any Governmental Authority.

"Permits" means all certificates of occupancy or other certificates, permits, authorizations, filings, approvals and licenses possessed by Sellers, or through which Sellers have rights, that are used, useable or useful in the operation of the Business or the use or enjoyment or benefit of the Acquired Assets, including those set forth on Schedule 1.1(d).

"Permitted Liens" means (i) Liens for current property Taxes and assessments not yet due and payable (including, without limitation, liens for *ad valorem* Taxes and statutory liens not yet due and payable arising other than by reason of any default on the part of any Seller), (ii) Liens in the nature of zoning restrictions, building and land use laws, ordinances, orders, decrees, restrictions or any other conditions imposed by or pursuant to any Governmental Authority; (iii) Liens granted or reserved by an instrument executed in connection with this Agreement or the transactions contemplated hereby or thereby; (iv) deposits or pledges made in connection with, or to secure payment of, workers' compensation, unemployment insurance, pension programs mandated under applicable laws or other social security regulations; (v) statutory or common law Liens in favor of carriers, warehousemen, mechanics and materialmen, statutory or common law Liens to secure claims for labor, materials or supplies and other like Liens, which secure obligations to the extent that payment thereof is not in arrears or otherwise due; and (vi) Liens, easements, restrictions, covenants and other matters of record.

"Person" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"Petition Date" shall have the meaning set forth in Section 6.4(a) hereof.

31956518.4

"Project Debt" means the indebtedness owed to the Project Lenders and described on Schedule 1.1(b).

"Project Lenders" means NBT Bank, N.A., the Vermont Community Loan Fund, Inc., and the Vermont Economic Development Authority

"Purchase Price" shall have the meaning set forth in Section 2.3 hereof.

"Purchaser" shall have the meaning set forth in the Preamble hereto.

"Purchaser Plans" shall have the meaning set forth in Section 10.2(a) hereof.

"Qualified Bids" shall have the meaning set forth in Section 6.5(e) hereof.

"Rehired Employees" shall have the meaning set forth in Section 10.1(a) hereof.

"Release" shall have the meaning set forth in CERCLA.

"Rule" or "Rules" means the Federal Rules of Bankruptcy Procedure.

"Sale Order" means an order entered by the Bankruptcy Court in a form reasonably satisfactory to Purchaser and Sellers, authorizing Sellers to sell the Acquired Assets to Purchaser pursuant to this Agreement and Sections 105, 363 and 365 of the Bankruptcy Code, free and clear of all Liens, claims and interests other than Assumed Obligations.

"Schedules" means the schedules attached hereto, which may be amended in sole discretion of Purchaser at any time up to and through Closing.

"Seller" and "Sellers" shall have the meaning set forth in the Preamble hereto.

"Solar Array" shall mean the group net metered photovoltaic electric generating facilities comprising approximately 3 MW owned and/or operated by the Sellers as of the Petition Date, including the projects described on Schedule 1.1(a) under the heading "Owned Solar Assets."

"Tax" and, with correlative meaning, "Taxes" mean with respect to any Person all federal, state, local, county, foreign and other taxes, including, without limitation, any income, alternative or add-on minimum tax, estimated gross income, gross receipts, sales, use, ad valorem, value added, transfer, capital stock franchise, profits, license, registration, recording, documentary, intangibles, conveyancing, gains, withholding, payroll, employment, social security (or similar), unemployment, disability, excise, severance, stamp, occupation, premium, property (real and personal), environmental or windfall profit tax, together with any interest, penalty, addition to tax or additional amount imposed by any Governmental Authority responsible for the imposition of any such tax (domestic or foreign).

"Tax Return" means any report, return, declaration, claim for refund or other information or statement supplied or required to be supplied by any Seller relating to Taxes, including any schedules or attachments thereto and any amendments thereof.

"Tranche 4 DIP Obligations" means all DIP Obligations associated with the Tranche 4 DIP Loan, including the principal amount of any Tranche 4 DIP Loan outstanding as of the Closing, plus any interest accrued thereon, all fees and costs associated therewith and the Upsize Fees and the Exit Fees accrued therein or payable with respect thereto, as such terms are defined in the DIP Credit Agreement or the Final DIP Order; provided, however, that for purposes of this Agreement, Tranche 4 DIP Obligations shall exclude fees and expenses due to the DIP Lender's professionals.

"Transaction Documents" means this Agreement, the Assignment and Assumption Agreement, the Bill of Sale and all other agreements, instruments, certificates and other documents to be entered into or delivered by any party in connection with the transactions consummated pursuant to this Agreement.

"WARN Act" means the Worker Adjustment and Retraining Notification Act and any rules or regulations as have been issued in connection therewith.

**Section 1.2    Rules of Construction.** Unless the context otherwise clearly indicates, in this Agreement:

(a)    the singular includes the plural;

(b)    "includes" and "including" are not limiting;

(c)    "may not" is prohibitive and not permissive; and

(d)    "or" is not exclusive.

## ARTICLE II. PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES.

**Section 2.1    Purchase and Sale of Assets.** On the terms and subject to the conditions set forth in this Agreement, at the Closing, Sellers shall sell, convey, assign, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of, for the consideration specified in Section 2.3, all of the Acquired Assets, free and clear of all Liens other than Permitted Liens.

**Section 2.2    Assignment and Assumption of Liabilities; Novation of Project Debt.** Subject to the terms and conditions set forth in this Agreement, Purchaser shall assume from Sellers, and thereafter be solely responsible for the payment, performance or discharge, of the Assumed Obligations and the Assumed Indebtedness, subject to execution of Novation Agreements with the applicable Project Lender with respect to the Project Debt owed to each Project Lender. Purchaser shall have no liability or obligation with respect to any Excluded Liabilities.

**Section 2.3    Purchase Price.** The aggregate purchase price for the Acquired Assets (the "Purchase Price") shall be the total of the Cash Purchase Price, the assumption and/or novation of the Assumed Indebtedness, and the assumption of the Assumed Obligations, and payment of the

Cure Payments. Payments made pursuant to this Section 2.3 shall be allocated among the Acquired Assets purchased in accordance with Section 10.5(b).

**Section 2.4    Deemed Consents and Cure Payments.** For all purposes of this Agreement (including all representations and warranties of Sellers contained herein), Sellers shall be deemed to have obtained all required consents in respect of the assignment of any Assumed Contract if, and to the extent that, pursuant to the Sale Order or other Bankruptcy Court Order, Sellers are authorized to assume and assign Assumed Contracts to Purchaser pursuant to Section 365 of the Bankruptcy Code and any applicable Cure Payments have been satisfied by Purchaser on behalf of Sellers, as provided herein.

**Section 2.5    Obligations in Respect of Assumed Contracts.** To the extent that any Assumed Contract is subject to a cure amount pursuant to Section 365 of the Bankruptcy Code, immediately after the Closing, Purchaser shall directly pay or otherwise provide for the amount of any applicable Cure Payment.

**Section 2.6    Post-Closing Assignment of Contracts.** With respect to any Contract that is not set forth on Schedule 1.1(a) attached hereto, and provided that such Contract is still in effect and has not been rejected by Sellers pursuant to Section 365 of the Bankruptcy Code, upon written notice(s) from Purchaser, as soon as practicable, Sellers shall take all actions reasonably necessary to assume and assign to Purchaser, pursuant to Section 365 of the Bankruptcy Code, any Contract(s) set forth in Purchaser's notice(s); provided, that any applicable Cure Payment shall be satisfied by Purchaser. Sellers agree and acknowledge that they shall provide Purchaser with reasonable advance notice of any motion(s) to reject any Contract. Notwithstanding anything in this Agreement to the contrary, on the date any Contract is assumed and assigned to Purchaser in writing pursuant to this Section 2.6, such Contract shall be deemed an Assumed Contract and deemed scheduled under the appropriate heading on Schedule 1.1(a) for all purposes under this Agreement.

## ARTICLE III. CLOSING.

**Section 3.1    Closing.** Upon the terms and subject to the satisfaction of the conditions contained in this Agreement, the closing of the transaction contemplated by this Agreement (the "Closing") will take place at the offices of Gellert, Seitz, Buskenell & Brown, LLC, 1 Commerce Center, 1201 North Orange St., Ste. 300, Wilmington, DE 19801 at 10:00 a.m., prevailing local time, no later than the first Business Day after the date on which the conditions set forth in Article VII and Article VIII have been satisfied or waived; or on such other date or place as Purchaser and Seller may determine (the "Closing Date").

**Section 3.2    Deliveries by Sellers.** At the Closing, Sellers shall deliver or procure delivery to Purchaser of:

(a)    one or more bills of sale, substantially in the form attached hereto as Exhibit A (collectively, the "Bill of Sale"), conveying in the aggregate all of the owned personal property of Sellers included in the Acquired Assets, duly executed by Sellers;

(b)     one or more assignments and assumptions of the Assumed Obligations, substantially in the form attached hereto as <u>Exhibit B</u> (collectively, the "<u>Assignment and Assumption Agreements</u>"), duly executed by Sellers;

(c)     the Novation Agreements duly executed by Sellers and the respective Project Lenders;

(d)     deeds for the transfer of any real property owned by any of Sellers which constitutes an Acquired Asset;

(e)     a certificate duly executed by the Secretary of each Seller dated as of the Closing Date certifying (A) as to the incumbency of the persons executing this Agreement and the other documents required hereby on such Seller's behalf and (B) the genuineness of the resolutions (attached thereto) of the board of directors, board of managers or managing member, as applicable, of such Seller, evidencing the authority of such Seller as set forth in Section 5.2 hereof;

(f)     each Seller's (a) charter and/or certificate of formation and all amendments thereto and (b) a good standing certificate in its state of organization, each dated as of a date reasonably proximate to the Closing Date and certified by the applicable Secretary of State or other authorized Governmental Authority;

(g)     duly executed statutory and regulatory consents and approvals, if any, which are required under the laws or regulations of the United States and other Governmental Authorities, and all other necessary consents and approvals of third parties or Affiliates of Sellers to the transactions contemplated hereby;

(h)     title certificates to any motor vehicles included in the Acquired Assets, duly executed by the relevant Seller (together with any other transfer forms necessary to transfer title to such vehicles);

(i)     all other agreements, records and other documents required by this Agreement; and

(j)     all such other instruments of conveyance and related affidavits as shall, in the reasonable opinion of Purchaser and its counsel, be necessary to vest in Purchaser good, valid and marketable title to the Acquired Assets, including time-stamped instruments and releases, in form and substance satisfactory to Purchaser, evidencing release and removal of any Liens on the Acquired Assets other than Permitted Liens.

**Section 3.3     Deliveries by Purchaser.** At the Closing, Purchaser shall deliver or procure delivery to Sellers of:

(a)     the Cash Purchase Price minus the DIP Obligations but excluding the Tranche 4 DIP Obligations;

(b)     Assumption of the Tranche 4 DIP Obligations;

(c)      the Committee Settlement Payment;

(d)      the Novation Agreements duly executed by Purchaser; and

(e)      the Assignment and Assumption Agreement duly executed by Purchaser.

## ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF SELLERS.

Except as disclosed in the Schedules delivered by Sellers to Purchaser on the date hereof (with any disclosure in any section or subsection thereof being deemed and understood to be a disclosure in each other section or subsection thereof to which the applicability of the disclosure is apparent on its face, notwithstanding the reference to a specific section or paragraph), which Schedules may be amended from time to time through the Closing Date, Sellers jointly and severally represent and warrant to Purchaser as follows:

**Section 4.1    Organization, Standing and Power.** Each Seller is duly incorporated or organized, as applicable, validly existing and in good standing under the Laws of the jurisdiction of its formation and, except where the failure to obtain such qualification or license could not reasonably be expected to have a Material Adverse Effect, is qualified or licensed to do business in each jurisdiction in which the properties owned, leased or operated by Sellers makes such qualification necessary. Each Seller has all Permits necessary to own and operate its properties and to carry on the Business as now conducted by it, except such Permits the failure of which to have would not reasonably be expected to have a Material Adverse Effect.**Authorization.** Subject to any necessary authorization from the Bankruptcy Court, each Seller has all requisite power and authority to own, lease and operate its properties, to carry on the Business as now being conducted and to execute and deliver the Transaction Documents to which it is a party and to perform its obligations thereunder. All Transaction Documents to which any Seller is a party have been duly executed and delivered by such Seller, except such Transaction Documents that are required by the terms hereof to be executed and delivered by such Seller after the date hereof, in which case such Transaction Documents will be duly executed and delivered by such Seller at or prior to the Closing, and, subject to any necessary authorization from the Bankruptcy Court, all Transaction Documents constitute, or will constitute, as the case may be, the valid and binding agreements of Sellers, enforceable against Sellers in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar Laws of general applicability relating to or affecting creditors' rights and to general equitable principles.

**Section 4.3    Title to Assets.** Sellers have good, valid, marketable and undivided title and/or a valid leasehold interest in, the Acquired Assets free and clear of all Liens, other than Permitted Liens. Subject to Bankruptcy Court approval, Sellers have the power and the right to sell, assign and transfer and Sellers will sell, assign and/or transfer and deliver to Purchaser, and Purchaser will be vested with good, valid, marketable and undivided title to, the Acquired Assets, free and clear of all Liens other than Permitted Liens, and the Assumed Obligations.

**Section 4.4    Conflicts; Consents**.

(a)      The execution, delivery and performance by each Seller of this Agreement and the consummation of the transaction contemplated hereby, and compliance by each Seller with any of the provisions hereof do not, or will not at the time of execution,

result in the creation of any Lien upon the Acquired Assets and do not, or will not at the time of execution, conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of payment, termination, modification, acceleration or cancellation under any provisions of: (i) such Seller's certificate of incorporation, bylaws or comparable organizational documents; (ii) subject to entry of the Sale Order, any Assumed Contract to which such Seller is a party or by which any of the Acquired Assets are bound; (iii) subject to entry of the Sale Order, any order, writ, injunction, judgment or decree of any Governmental Authority applicable to such Seller or any of the Permits, licenses, rights, properties or assets of such Seller as of the date hereof; or (iv) subject to entry of the Sale Order, any applicable Law.

(b)     Subject to entry of the Sale Order, no consent, waiver, approval, order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required on the part of any Seller in connection with the execution, delivery and performance of this Agreement or any other agreement, document or instrument contemplated hereby or thereby to which it is or will become a party, the compliance by such Seller with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby, or the assignment or conveyance of the Acquired Assets.

### Section 4.5    Assumed Contracts.

(a)     Schedule 1.1(a) attached hereto contains a list of all Assumed Contracts.

(b)     Except for defaults that will be cured through the Cure Payments listed on Schedule 4.6 attached hereto or defaults arising solely as a consequence of the commencement of the Chapter 11 Cases, neither any Seller nor, to the Knowledge of Sellers, any other party thereto is in default or breach in any material respect under the terms of any Assumed Contract.

**Section 4.6    Cure Amounts.** To the Sellers' knowledge, Schedule 4.6 attached hereto sets forth all of the Cure Payments to be satisfied for purposes of Sellers' assumption and assignment to Purchaser of the Assumed Contracts under Section 365 of the Bankruptcy Code.

**Section 4.7    Brokers.** No Seller has incurred any Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby, other than the Seller's retention of England Securities, LLC ("England") under a letter of engagement dated May 20th, 2024.

**Section 4.8    Intellectual Property.** Other than as set forth on Schedule 4.8 attached hereto, to the Sellers' Knowledge, (i) with respect to any Intellectual Property owned by any Seller (as opposed to Intellectual Property of which any Seller is a licensee), Sellers have all right, title and interest to all such Intellectual Property, without any conflict known to any Seller with the rights of others, (ii) no Person other than Sellers has the right to use such Intellectual Property owned by Sellers, and (iii) Sellers have the valid right to use, pursuant to a license, sublicense or

other agreement, any Intellectual Property used in Sellers' Business that is owned by a party other than Sellers.

**Section 4.9     Taxes.**

(a)     Each Seller has filed all Tax Returns that it was required to file. All such Tax Returns were correct and complete in all material respects. All Taxes owed by any Seller (whether or not shown on any Tax Return) have been paid. No Seller is the beneficiary of any extension of time within which to file any Tax Return. With respect to each Seller, no claim has ever been made by a Governmental Authority in a jurisdiction where such Seller does not file Tax Returns that such Seller is or may be subject to taxation by that jurisdiction.

(b)     Other than as set forth on Schedule 4.9 attached hereto,, Each Seller has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, stockholder, or other third party, and all Forms W-2 and 1099 (or any other applicable form) required with respect thereto have been properly completed and timely filed.

(c)     There is no dispute or claim concerning any Tax Liability of any Seller claimed or raised by any authority in writing or, to Sellers' Knowledge, orally. No Seller has waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a Tax assessment or deficiency.

**Section 4.10   Labor Matters**.

(a)     Sellers are party to collective bargaining agreements. There is no labor strike, slowdown, work stoppage or other material labor dispute relating to operation of the Sellers' businesses pending or, to Sellers' Knowledge, threatened against Sellers except for those issues listed on Schedule 4.10. To Sellers' Knowledge, no union organizing or decertification efforts are underway or threatened.

(b)     No Seller has received written notice of any material employment-related charge or material complaint against the Business before the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board or any other Governmental Authority and no Seller has received any notice of any material threatened employment-related charge or complaint against any Seller any such Governmental Authority.

(c)     With respect to this transaction, any notice required under any Law or collective bargaining agreement has been given, and all bargaining obligations with any employee representative have been, or prior to the Closing will be, satisfied. No Seller has implemented any mass layoff of employees that could implicate the WARN Act or similar state, local or foreign Laws or regulations.

**Section 4.11   Environmental Matters.** Other than as set forth on Schedule 4.11 attached hereto, to the Sellers' Knowledge, (a) the Acquired Assets are in material compliance with all

applicable Laws, regulations, or other legal requirements relating to the protection of the environment or human health and safety as it relates to Hazardous Materials ("Environmental Laws"); (b) no Seller has received written notice of any proceeding relating to or arising under Environmental Laws with respect to the Acquired Assets or the Business, nor, to Sellers' Knowledge, are any of the same being threatened in writing against any Seller or any real property owned, operated, or leased by any Seller; (c) no Seller has received any written notice of, or entered into, any obligation, order, settlement, judgment, injunction, or decree involving outstanding requirements relating to or arising under Environmental Laws; and (d) there has been no Release of any Hazardous Material into the environment at, onto, or from any property owned or leased by any Seller which would reasonably be expected to result in material Liability, costs or Claims relating to any Environmental Law.

Section 4.12    Litigation; Proceedings. Other than as set forth on Schedule 4.12 attached hereto, there is no material claim, action, suit, proceeding, complaint, charge, hearing, grievance or arbitration pending or, to Sellers' Knowledge, threatened against or related to the Business, whether at Law or in equity, whether civil or criminal in nature or by or before any arbitrator or Governmental Authority, nor are there any investigations relating to the Business, pending or, to Sellers' Knowledge, threatened by or before any arbitrator or any Governmental Authority. None of the Acquired Assets is subject to any judgment, injunction, order, consent or decree of any Governmental Authority or any settlement agreement with any Person.

Section 4.13    Compliance with Laws. To Sellers' Knowledge, each Seller (i) has complied in all material respects with, is in compliance in all material respects with and has operated the Business in compliance in all material respects with all applicable Laws, and (ii) holds all Permits, concessions, grants, licenses, easements, variances, exemptions, consents, orders, franchises, authorizations and approvals of all Governmental Authorities necessary for the lawful conduct of the Business and is in compliance in all material respects with all of the foregoing. No Seller has received any written notice or other written communication from any Governmental Authority or other Person (i) asserting any violation of, or failure to comply with, any requirement of any Permit or (ii) notifying a Seller of the non-renewal, revocation or withdrawal of any Permit. Each Seller is in compliance with the terms of the Permits.

## ARTICLE V. REPRESENTATIONS AND WARRANTIES OF PURCHASER.

Purchaser represents and warrants to Sellers as follows:

Section 5.1    Organization, Standing and Power. Purchaser is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Delaware.

Section 5.2    Authorization. Purchaser has all requisite power and authority to own, lease and operate its properties, to carry on the Business and to execute and deliver the Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder. All Transaction Documents to which Purchaser is a party have been duly executed and delivered by Purchaser, except such Transaction Documents that are required by the terms hereof to be executed and delivered by Purchaser after the date hereof, in which case such Transaction Documents will be duly executed and delivered by Purchaser at or prior to the Closing, and all Transaction

31956518.4

Documents constitute, or will constitute, as the case may be, the valid and binding agreements of Purchaser, enforceable against Purchaser in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar Laws of general applicability relating to or affecting creditors' rights and to general equitable principles.

**Section 5.3     No Conflict or Violation.** Except to the extent any of the foregoing is not enforceable due to operation of applicable bankruptcy Law or the Sale Order, the execution, delivery and performance of the Transaction Documents and the consummation of the transactions contemplated thereby by Purchaser do not and shall not violate any Law or any provision of the charter or organizational documents of Purchaser.

**Section 5.4     Availability of Funds.** Purchaser has cash available or has existing borrowing facilities, which together are sufficient to enable it to consummate the transactions contemplated by this Agreement.

**Section 5.5     Brokers.** Purchaser has incurred no Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

**Section 5.6     Limitation of Representations and Warranties.** PURCHASER REPRESENTS AND ACKNOWLEDGES THAT IF THE CLOSING IS CONSUMMATED, THE ACQUIRED ASSETS AND ASSUMED OBLIGATIONS ARE BEING SOLD TO PURCHASER ON AN "AS IS, WHERE IS" BASIS WITH ALL FAULTS, WITHOUT ANY WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, OF ANY NATURE WHATSOEVER INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR CAUSE. THE REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 4.1 THROUGH 4.13 ARE ONLY SET FORTH HEREIN FOR PURPOSES OF DEFINING THE CONDITION TO PURCHASER'S OBLIGATIONS TO CLOSING SET FORTH IN ARTICLE VII. IMMEDIATELY FOLLOWING THE CLOSING, SUCH REPRESENTATIONS AND WARRANTIES WILL CEASE TO HAVE ANY FURTHER FORCE OR EFFECT AND ANY BREACH THEREOF, WHETHER BEFORE OR AFTER THE CLOSING, MAY NOT SERVE AS A BASIS FOR A BREACH OF CONTRACT OR OTHER CLAIM BY PURCHASER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) ANY PROJECTIONS, ESTIMATES OR BUDGETS DELIVERED TO OR MADE AVAILABLE TO PURCHASER OF FUTURE FINANCIAL RESERVES, FUTURE REVENUES, FUTURE RESULTS OF OPERATIONS (OR ANY COMPONENT THEREOF), FUTURE CASH FLOWS OR FUTURE FINANCIAL CONDITION (OR ANY COMPONENT THEREOF) OF SELLERS OR THE FUTURE BUSINESS AND OPERATIONS OF SELLERS OR (B) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO PURCHASER OR ITS COUNSEL, ACCOUNTANTS OR ADVISORS WITH RESPECT TO SELLERS OR THE BUSINESS. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THERE WILL BE NO PURCHASE PRICE ADJUSTMENTS OF ANY TYPE OR MANNER, INCLUDING ANY QUALITY ASSESSMENT OF THE ACQUIRED ASSETS BEING CONVEYED. EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, SELLERS MAKE NO REPRESENTATIONS AS TO THE CONDITION OF THE ACQUIRED ASSETS

AND PURCHASER HAS MADE ITS OWN INSPECTION AND IS SATISFIED WITH THE ACQUIRED ASSETS IN ALL RESPECTS.

## ARTICLE VI. COVENANTS OF PURCHASER AND SELLERS; OTHER AGREEMENTS.

**Section 6.1    Consents and Approvals.** Prior to Closing, Sellers and Purchaser shall cooperate and use commercially reasonable efforts (a) to obtain all necessary consents and approvals to consummate the purchase and sale of the Acquired Assets and the assignment of the Assumed Obligations, together with any other necessary consents and approvals to consummate the transactions contemplated hereby, including, without limitation, obtaining the Bidding Procedures Order and Sale Order, (b) to make all filings, applications, statements and reports to all authorities that are required to be made prior to the Closing Date by or on behalf of Sellers or any of their Affiliates pursuant to any applicable Law in connection with this Agreement and the transactions contemplated hereby and (c) to obtain all required consents and approvals (if any) necessary to assign and transfer Sellers' Permits included in the Acquired Assets to Purchaser at Closing. In the event that certain of Sellers' Permits included in the Acquired Assets are not transferable or replacements therefore are not obtainable on or before the Closing, but such Permits are transferable or replacements therefore are obtainable after the Closing, Sellers and Purchaser shall continue to cooperate and use such commercially reasonable efforts after the Closing as may be required to obtain all required consents and approvals to transfer, or obtain replacements for, such Permits after Closing and shall do all things necessary to give Purchaser the benefits that would be obtained under such Permits.

**Section 6.2    Access to Information.** Sellers shall, prior to the Closing Date, (a) provide Purchaser and its representatives, upon reasonable written notice and at reasonable times, access to the facilities, offices, personnel and consultants of Sellers and to the Books and Records of Sellers as it reasonably requests; (b) furnish Purchaser with such financial and operating data and other information with respect to the condition (financial or otherwise), businesses, assets, properties or operations of Sellers related to the Acquired Assets as Purchaser shall reasonably request; and (c) permit Purchaser to make such reasonable inspections and copies thereof as Purchaser may reasonably require, provided, that Purchaser shall be bound by and shall comply with the terms of the Confidentiality Agreement with respect to Purchaser's ability to use or disclose any such information and provided, further, that no Seller shall be required to disclose any internal or confidential materials prepared by or on behalf of it in connection with the transactions contemplated hereby, and provided, further, that Sellers shall not disclose or provide copies of any documents or materials that are covered by the Sellers' attorney-client privilege.

**Section 6.3    Further Assurances**.

(a)    Sellers will use commercially reasonable efforts (i) to obtain the entry of the Bidding Procedures Order on the Bankruptcy Court's docket as soon as practicable and no later than thirty (30) days after the date hereof; (ii) to hold the Auction no later than thirty (30) days after the date of entry of the Bidding Procedures Order; and (iii) to obtain the entry of the Sale Order on the Bankruptcy Court's docket as soon as practicable and no later than ten (10) Business Days after the conclusion of the Auction.

(b)     With respect to each Assumed Contract, to the extent required by the Bankruptcy Court, Purchaser shall provide adequate assurance of the future performance of such Assumed Contract by Purchaser. Purchaser shall take such actions as may be reasonably requested by Sellers to assist Sellers in obtaining the Bankruptcy Court's entry of the Sale Order and any other order of the Bankruptcy Court reasonably necessary to consummate the transactions contemplated by this Agreement.

(c)     From time to time after the Closing and without further consideration, (i) Sellers, upon the reasonable request of Purchaser, shall execute and deliver such documents and instruments of conveyance and transfer as Purchaser may reasonably request in order to consummate more effectively the purchase and sale of the Acquired Assets as contemplated hereby and to vest in Purchaser title to the Acquired Assets transferred hereunder, or to otherwise more fully consummate the transactions contemplated by this Agreement, and (ii) subject to the Sale Order, Purchaser, upon the reasonable request of Sellers, shall execute and deliver such documents and instruments of contract or lease assumption as Sellers may reasonably request in order to confirm Purchaser's Liability for the obligations specifically assumed hereunder or otherwise to more fully consummate the transactions contemplated by this Agreement.

(d)     For a period of ninety (90) days after the Closing, Sellers shall not seek to reject or terminate any Contract without providing Purchaser at least five (5) business days' notice (or such shorter period consented to by Purchaser) and an opportunity to elect to take assumption and assignment of such contract pursuant to Section 2.6 hereof.

**Section 6.4     Bankruptcy Actions**.

(a)     As promptly as practicable, but in no event later than five (5)  Business Days after the date of this Agreement, Sellers shall make all filings necessary to initiate the Chapter 11 Cases in the Bankruptcy Court (such actual filing date, the "Petition Date").

(b)     As promptly as practicable, but in no event later than fifteen (15) Business Days after the Petition Date, Sellers shall file in the Chapter 11 Cases a motion, in form and substance reasonably acceptable to Purchaser, seeking the entry of (i) the Bidding Procedures Order and (ii) the Sale Order.

(c)     Subject to its obligations as a debtor-in-possession, each Seller shall promptly make any filings, take all actions and use all commercially reasonable efforts to obtain any and all relief from the Bankruptcy Court that is necessary or appropriate to consummate the transactions contemplated by this Agreement and the Transaction Documents.

(d)     Sellers shall give notice to all parties entitled to notice of the Bidding Procedures Order, the Sale Order and any motions related thereto in accordance with all

applicable Laws, the Rules and any applicable local rules, and to any other Persons reasonably requested by Purchaser.

(e)    Sellers shall conduct any auction process in accordance with the Bidding Procedures. Except as permitted by the Bidding Procedures Order or with Purchaser's consent, Sellers shall comply with, and shall not amend, waive, modify or supplement, the Bidding Procedures.

(f)    Sellers shall promptly notify Purchaser if any party appeals, requests a stay of, or seeks reconsideration of the Bidding Procedures Order or Sale Order and provide Purchaser a copy of any related notices, applications or motions within one Business Day after receipt by Sellers.

**Section 6.5    Auction Procedures.** Notwithstanding anything to the contrary in this Agreement, the following terms and conditions shall govern:

(a)    The sale of the Acquired Assets, the approval of this Agreement and the consummation of the transactions contemplated hereby are expressly subject to (i) higher or better offers that may be received and accepted by Sellers in accordance with the Bidding Procedures Order and (ii) entry of the Sale Order by the Bankruptcy Court.

(b)    Sellers and Purchaser shall cooperate in resolving or contesting any objections (including testimony or argument in Bankruptcy Court) to this Agreement, the Bidding Procedures Order or the Sale Order, and Purchaser and Sellers shall bear their own costs relating thereto; provided, however, that Purchaser's costs relating thereto shall be considered part of the Expense Reimbursement up to the maximum cap of such Expense Reimbursement.

**Section 6.6    Disclosure Schedules and Supplements.** Sellers shall notify Purchaser of, and shall supplement or amend the Schedules to this Agreement with respect to, any matter that (a) arises after the Execution Date and that, if existing or occurring at or prior to such delivery of the Schedules, would have been required to be set forth or described in the Schedules to this Agreement or (b) makes it necessary to correct any information in the Schedules to this Agreement or in any representation and warranty of Sellers that has been rendered inaccurate thereby. Each such notification and supplementation, to the extent known, shall be made no later than two (2) Business Days after discovery thereof and no later than three (3) days before the date set for the Closing by the parties. Each such supplement or amendment to the Schedules to this Agreement shall be deemed to cure any inaccuracy of any representation or warranty made in this Agreement.

**Section 6.7    Conduct of Business Prior to Closing.** Except as expressly contemplated by this Agreement or with Purchaser's prior written consent, and except to the extent expressly required or permitted under the DIP Credit Agreement, the Bankruptcy Code, other applicable Law or any ruling or order of the Bankruptcy Court:

(a)    Sellers shall not take any action that would constitute or result in an Event of Default (as defined therein) under the DIP Credit Agreement;

(b)     Sellers shall not directly or indirectly sell or otherwise transfer, or offer, agree or commit (in writing or otherwise) to sell or otherwise transfer, any of the Acquired Assets other than the sale of inventory in the ordinary course of business or the use of cash collateral in accordance with the DIP Credit Agreement or the DIP Orders;

(c)     Sellers shall not permit, offer, agree or commit (in writing or otherwise) to permit, any of the Acquired Assets to become subject, directly or indirectly, to any Lien, Claim or other encumbrance, except for Permitted Liens or Liens granted in connection with the DIP Credit Agreement;

(d)     Sellers shall not enter into any transaction or take any other action that could be reasonably expected to cause or constitute a material breach of any representation or warranty made by Sellers in this Agreement;

(e)     Sellers shall notify Purchaser promptly in writing of any Material Adverse Effect;

(f)     Sellers shall comply in all material respects with all Laws applicable to them or having jurisdiction over the Business or any Acquired Asset;

(g)     Sellers shall not enter into any Contract material to Sellers (taken as a whole) to which any Seller is a party or by which it is bound and that are used in or related to the Business or the Acquired Assets or assume, amend, modify, reject or terminate any Contract to which any Seller is a party or by which it is bound and that are used in or related to the Business or the Acquired Assets (including any Assigned Contract);

(h)     Sellers shall not cancel or compromise any material debt or claim or waive or release any right of Sellers that constitutes an Acquired Asset or an Assumed Obligation, including, for the avoidance of doubt, the compromise of any account receivable;

(i)     Sellers shall not enter into any material commitment for capital expenditures except pursuant to the Budget (as defined in the DIP Credit Agreement);

(j)     Sellers shall not terminate, amend, reject or modify in any manner any lease for leased real property;

(k)     Sellers shall use commercially reasonable efforts to (i) conduct the Business in substantially the same manner as conducted as of the date of this Agreement and only in the ordinary course, (ii) preserve the existing business organization and management of the Business intact, (iii) keep available the services of the current officers and employees of the Business, to the extent reasonably feasible, (iv) maintain the existing relations with customers, distributors, suppliers, creditors, business partners, employees and others having business dealings with the Business, to the extent reasonably feasible, and (v) refrain from changing in any material respect any of their product prices or pricing policies (e.g., discount policies) for any of their products or services except as shall be necessary to meet competition or customer requirements;

(l)     Sellers shall at all times maintain, preserve and protect all of their material Intellectual Property, and preserve all the remainder of their material property, in use or useful in the conduct of the Business and keep the same in good repair, working order and condition (taking into consideration ordinary wear and tear) and from time to time make, or cause to be made, all necessary or appropriate repairs, replacements and improvements thereto consistent with industry practices, so that the business carried on in connection therewith may be properly and advantageously conducted at all times; and

(m)    Sellers shall not take, agree, commit or offer (in writing or otherwise) to take, any actions in violation of the foregoing.

**Section 6.8    Casualty.** If, between the Execution Date and the Closing, any of the Acquired Assets shall be destroyed or damaged in whole or in part by fire, earthquake, flood, other casualty or any other cause ("Casualty"), then Sellers shall hold the entirety of all insurance proceeds payable to Sellers in respect of the Casualty in trust for Purchaser, and shall not dissipate such funds without the express prior written consent of the Purchaser.

**Section 6.9    Assumed Obligations.** Subsequent to the Closing, Purchaser agrees to be solely responsible for the payment and performance of the Assumed Obligations and shall indemnify and hold Sellers harmless with respect to the Assumed Obligations after the Closing, including, without limitation, any loss, Liability, cost or expense (including, without limitation, legal fees and court costs) arising out of or in connection with, or otherwise relating to, the Assumed Obligations.

**Section 6.10    Disclaimer.** Sellers do not make, have not made and, if previously made, hereby expressly disclaim, any representations or warranties in connection with the transactions contemplated hereby other than those expressly set forth herein. It is understood that any data, any financial information, and projections or any memoranda or offering materials or presentations are not and shall not be deemed to be or to include representations or warranties of Sellers and no representation or warranty is made with respect thereto and, if made, is hereby expressly disclaimed. Except as expressly set forth herein, no Person has been authorized by Sellers to make any representation or warranty relating to Sellers, the Acquired Assets, the Assumed Obligations or otherwise in connection with the transactions contemplated hereby and, if made, such representation or warranty is expressly disclaimed and may not be relied upon as having been authorized by Sellers.

## ARTICLE VII. CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER.

The obligations of Purchaser under this Agreement are, at the option of Purchaser, subject to satisfaction of the following conditions precedent on or before the Closing Date.

**Section 7.1    Representations and Warranties; Covenants**.

(a)     Each of the representations and warranties of Sellers contained herein shall be true and correct in all material respects on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and

correct in all material respects as of that date) with the same force and effect as though made on and as of the Closing Date.

(b)     Sellers shall have performed and complied in all material respects with the obligations and covenants required by this Agreement to be performed or complied with by Sellers on or prior to the Closing Date.

**Section 7.2     Due Diligence.** Prior to the Execution Date, Purchaser shall have completed and shall be satisfied in all respects with the results of its ongoing due diligence investigation of the business, assets, operations, properties, financial condition, contingent liabilities, prospects and material agreements of Sellers and relating to Sellers' assets. Upon the Execution Date, Purchaser shall be deemed to have completed its due diligence investigation and shall be deemed to be satisfied in all respect with the results thereof, and no ongoing due diligence contingency shall remain as a condition to Closing.

**Section 7.3     Bankruptcy Court Approval.** The Sale Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

**Section 7.4     No Injunctions.** On the Closing Date, there shall be no Laws or Orders that operate to restrain, enjoin or otherwise prevent or make illegal the consummation of the transactions contemplated by this Agreement. No action or proceeding initiated by any Governmental Authority seeking an Order prohibiting the consummation of the transactions contemplated by this Agreement shall be pending.

**Section 7.5     Closing Deliveries.** Sellers shall have delivered to Purchaser: (a) a certificate signed by an officer of each Seller, dated the date of the Closing Date, in form and substance satisfactory to Purchaser, certifying that the conditions specified in Section 7.1(a) and 7.1(b) have been satisfied as of the Closing and (b) all of the closing deliveries set forth in Section 3.2.

## ARTICLE VIII. CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS.

The obligations of Sellers under this Agreement are, at the option of Sellers, subject to the satisfaction of the following conditions precedent on or before the Closing Date.

**Section 8.1     Representations and Warranties; Covenants**.

(a)     The representations and warranties of Purchaser contained herein shall be true and correct in all material respects on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct as of that date in all material respects) with the same force and effect as though made by Purchaser on and as of the Closing Date.

(b)     Purchaser shall have performed and complied in all material respects with the obligations and covenants required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date.

**Section 8.2     Consideration.** Purchaser shall have delivered to Sellers the Purchase Price.

**Section 8.3     Bankruptcy Court Approval.** The Sale Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

**Section 8.4     No Injunctions.** On the Closing Date, there shall be no Laws or Orders that operate to restrain, enjoin or otherwise prevent or make illegal the consummation of the transactions contemplated by this Agreement. No action or proceeding initiated by any Governmental Authority seeking an Order prohibiting the consummation of the transactions contemplated by this Agreement shall be pending.

**Section 8.5     Closing Deliveries.** Purchaser shall have delivered to Sellers: (a) a certificate signed by an officer of Purchaser, dated the date of the Closing Date, in form and substance reasonably satisfactory to Sellers, certifying that the conditions specified in Section 8.1(a) and 8.1(b) have been satisfied as of the Closing and (b) all of the closing deliveries set forth in Section 3.3.

## ARTICLE IX. TERMINATION; TERMINATION PAYMENT.

**Section 9.1     Termination.** This Agreement may be terminated prior to the Closing as follows:

(a)     by mutual written agreement of Purchaser and Seller;

(b)     automatically and without any action or notice by either Seller to Purchaser, or Purchaser to Seller, and immediately upon the entry thereof, if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated under this Agreement;

(c)     by either Purchaser or Seller (provided that the terminating party is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach or misrepresentation of any of the representations or warranties or a material breach of any of the covenants set forth in this Agreement on the part of the other party, which breach would give rise to the failure of the condition set forth in Section 7.1 or Section 8.1, as applicable, and such breach is not cured within ten (10) days following written notice to the party committing such breach or which breach, by its nature, cannot be cured prior to the Closing;

(d)     by Purchaser, if the Bidding Procedures Order shall not have been entered by the date that is thirty (30) days after the Petition Date;

(e)     by Purchaser, if the Auction shall not have commenced by the date that is thirty (30) days after the date of entry of the Bidding Procedures Order;

(f)     by Purchaser, if the Sale Order shall not have been entered on the date that is five (5) Business Days following the conclusion of the Auction;

(g)     by Purchaser or Sellers if the Bankruptcy Court enters an order approving any Alternate Proposal;

(h)     by Purchaser on any day on or after the sixtieth (60th) day following the date hereof if the Closing shall not have been consummated by such date (or by such later date as shall be mutually agreed to by Purchaser and Sellers in writing), provided that the right to terminate this Agreement under this Section 9.1(h) shall not be available to any party whose failure to fulfill any obligation under this Agreement has been a significant cause of, or resulted in, the failure of the Closing on or before such date;

(i)     by Purchaser, if, prior to the Closing any of the Sellers' Bankruptcy Cases shall have been converted to a case under Chapter 7 of the Bankruptcy Code or dismissed, or if a trustee or examiner with expanded powers is appointed in any Bankruptcy Case;

(j)     by Purchaser (provided that Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein) if it shall have reasonably determined that one or more conditions set forth in Article VII has not been fulfilled or satisfied prior to the date specified in such condition (if such condition specifies a date other than the Closing Date by which such condition must be satisfied); and

(k)     by Sellers (provided that no Seller is then in material breach of any representation, warranty, covenant or other agreement contained herein) if it shall have reasonably determined that one or more conditions set forth in Article VIII has not been fulfilled or satisfied prior to the date specified in such condition (if such condition specifies a date other than the Closing Date by which such condition must be satisfied).

**Section 9.2     Breakup Fee and Expense Reimbursement**.

(a)     If the Bankruptcy Court enters the Bidding Procedures Order and any Seller thereafter consummates an Alternate Proposal, Sellers shall pay (in cash) to Purchaser a breakup fee equal to $750,000 (the "Breakup Fee") plus up to $250,000 for reimbursement of Purchaser's legal and professional fees and for other reasonable expenses; provided, however, that the Breakup Fee shall (x) not be payable to Purchaser if a No Fee Event shall have occurred and (y) be payable solely from the proceeds of the Alternate Proposal.

(b)     If the transactions contemplated hereby are not consummated for any reason other than the material breach by Purchaser of this Agreement, Sellers shall immediately pay (in cash) to Purchaser an amount equal to the reasonable, actual and necessary costs and out-of-pocket expenses incurred by Purchaser in connection with its legal, accounting and business due diligence and the preparation and negotiation of this Agreement up to a maximum of $ 250,000 (the "Expense Reimbursement").

(c)     Sellers' obligation to pay the Breakup Fee and the Expense Reimbursement pursuant to this Section 9.2 shall constitute an allowed administrative expense of Sellers' bankruptcy estates under Section 503(b) of the Bankruptcy Code.

(d)     If Purchaser is entitled to a Breakup Fee, Sellers shall withhold $75,000 from the amount of the Breakup Fee to be held by Sellers in trust and used only as directed by the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases for: (i) payment of Committee's professional fees and expenses; (ii) fund the expenses of a chapter 11 plan and liquidating trust; and/or (iii) distributions to unsecured creditors.

**Section 9.3    Effect of Termination or Breach.** If the transactions contemplated hereby are not consummated: (a) this Agreement shall become null and void and of no further force and effect, except (i) for this Section 9.3, (ii) for the provisions of Section 9.2, Section 11.1, Section 11.7, Section 11.8, Section 11.9, Section 11.10 and Section 11.2 hereof, and (iii) that the termination of this Agreement for any cause shall not relieve any party hereto from any Liability which at the time of termination had already accrued to any other party hereto or which thereafter may accrue in respect of any act or omission of such party prior to such termination; and (b) the payment of the Breakup Fee and Expense Reimbursement, if required under Section 9.2, shall be the sole and exclusive remedy (as liquidated damages) of Purchaser.

## ARTICLE X. ADDITIONAL POST-CLOSING COVENANTS.

**Section 10.1    Employees**.

(a)     Purchaser shall have the right, but not the obligation, to employ any or all of the employees of Sellers as Purchaser determines in its sole discretion (collectively, the "Eligible Employees"), provided that all Eligible Employees shall be offered employment under wage terms substantially comparable to those enjoyed by the Eligible Employees immediately prior to the Closing Date and under employee benefit plans that provide substantially the same level of coverage and benefits as those provided to similarly situated employees of Purchaser (and in no event materially less than those provided by Sellers). Notwithstanding the foregoing, the parties to this Agreement contemplate that substantially all of Sellers' employees are Eligible Employees. All Eligible Employees who accept Purchaser's offer of employment are herein referred to as "Rehired Employees."

(b)     For purposes of the WARN Act and applicable state Laws, (i) Rehired Employees shall become employees of Purchaser on the Closing Date and (ii) Purchaser shall assume all responsibility for any WARN Act notice or other WARN obligation with regard to any terminations or layoffs by Purchaser following the Closing.

**Section 10.2    Employee Benefit Plans**.

(a)      At Closing, Purchaser shall either (i) adopt the Assumed Plans and shall be responsible for and assume any and all obligations and liabilities with respect to the Assumed Plans or (ii) make available or establish one or more employee benefit plans for the Rehired Employees and their dependents. Purchaser shall credit (i)

each Rehired Employee with his or her service with Sellers, to the extent such service would have been credited had such service been with Purchaser, and (ii) the Rehired Employees with all service recognized by Sellers under employee plans as service with Purchaser for purposes of eligibility to participate and vesting under all employee benefit plans, programs and policies of Purchaser, whether now existing or hereafter adopted ("Purchaser Plans"). Nothing contained in this Agreement shall confer upon any Rehired Employee any right with respect to continuance of employment by Purchaser, nor shall anything herein interfere with the right of Purchaser to terminate the employment of any Rehired Employee at any time, with or without notice, or restrict Purchaser in the exercise of its business judgment in modifying the terms and conditions of employment of the Rehired Employees after the Closing.

(b)    Except as otherwise specified in this Agreement (including without limitation Purchaser's adoption of the Assumed Plans as contemplated under clause (i) of Section 10.1(a) hereof), Sellers shall retain (i) all Liabilities and obligations in respect of the past, present and future employees, including the Rehired Employees, under applicable Laws and (ii) all Liabilities and obligations under any "employee benefit plan" within the meaning of Section 3.3 of ERISA and any other employee benefit plan or program maintained or contributed by a Seller or any ERISA Affiliate, and Purchaser shall have no Liability or obligation whatsoever under such employee benefit plans nor shall Purchaser assume the sponsorship of such employee benefit plans.

**Section 10.3    Joint Post-Closing Covenant of Purchaser and Sellers.** Purchaser and Sellers jointly covenant and agree that, from and after the Closing Date, Purchaser and Sellers will each use commercially reasonable efforts to cooperate with each other in connection with any action, suit, proceeding, investigation or audit of the other relating to (a) the preparation of an audit of any Tax Return of any Seller or Purchaser for all periods prior to or including the Closing Date and (b) any audit of Purchaser and/or any audit of any Seller with respect to the sales, transfer and similar Taxes imposed by the Laws of any state or political subdivision thereof, relating to the transactions contemplated by this Agreement. In furtherance hereof, Purchaser and Sellers further covenant and agree to promptly respond to all reasonable inquiries related to such matters and to provide, to the extent reasonably possible, substantiation of transactions and to make available and furnish appropriate documents and personnel in connection therewith. All costs and expenses incurred in connection with this Section 10.3 referred to herein shall be borne by the party who is subject to such action.

**Section 10.4    Name Changes.** On or prior to the Closing Date, each Seller shall take all necessary action to change its name to a name bearing no resemblance to the names set forth on the signature pages to this Agreement. Purchaser agrees and acknowledges that it shall not change its name to the name of any Seller prior to the Closing.

**Section 10.5    Tax Matters.**

(a)    Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges which may be payable by reason

of the sale of the Acquired Assets or the assumption of the Assumed Obligations under this Agreement or the transactions contemplated herein shall be borne and timely paid by Sellers and Sellers shall indemnify, defend (with counsel reasonably satisfactory to Purchaser), protect and save and hold Purchaser harmless from and against any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such Taxes.

(b)     Purchaser shall, within the later of (i) one hundred twenty (120) days after the Closing Date or (ii) thirty (30) days prior to the date by which Sellers' federal income Tax Returns must be filed, prepare and deliver to Sellers a schedule allocating the Purchase Price (and any other items that are required for federal income tax purposes to be treated as part of the purchase price) among the respective Sellers and the Acquired Assets (such schedule, the "Allocation"). Purchaser and Sellers shall report and file all Tax Returns (including amended Tax Returns and claims for refund) consistent with the Allocation, and shall take no position contrary thereto or inconsistent therewith (including, without limitation, in any audits or examinations by any Governmental Authority or any other proceeding). Purchaser and Sellers shall cooperate in the filing of any forms (including Form 8594 under Section 1060 of the Code) with respect to such Allocation, including any amendments to such forms required pursuant to this Agreement with respect to any adjustment to the Purchase Price. Notwithstanding any other provision of this Agreement, the terms and provisions of this (b) shall survive the Closing without limitation.

## ARTICLE XI. MISCELLANEOUS.

### Section 11.1    Expenses.

(a)     Except as provided in Section 9.2 hereof, each party hereto shall bear its own costs and expenses, including attorneys' fees, with respect to the transactions contemplated hereby. Notwithstanding the foregoing, in the event of any action or proceeding to interpret or enforce this Agreement, the prevailing party in such action or proceeding (i.e., the party who, in light of the issues contested or determined in the action or proceeding, was more successful) shall be entitled to have and recover from the non-prevailing party such costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may incur in the pursuit or defense thereof.

(b)     The parties hereto agree that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees or commissions are ever asserted against Purchaser or Sellers in connection with this transaction, all such claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify (with counsel reasonably satisfactory to the party(ies) entitled to indemnification) and hold the other harmless from and against any and all such claims or demands asserted by any Person, firm or corporation in connection with the transaction contemplated hereby.

**Section 11.2   Amendment.** This Agreement may not be amended, modified or supplemented except by a written instrument signed by Sellers and Purchaser.

**Section 11.3   Notices.** Any notice, request, instruction or other document to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) on the date of transmission if sent by telex, telecopy, email or other wire transmission (with answer back confirmation of such transmission, if applicable), (c) upon delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (d) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid. Unless another address is specified in writing, any notice, request, instruction or other documents given to the parties to this Agreement shall be sent to the addresses indicated below:

To Purchaser:

Joshua Sanger
Clean Royalties, LLC
1401 McKinney Street, Ste. 900
Houston, TX 77010
Email: joshua.sanger@siltstone.com

with a copy to:

Gordon Rees Sully Mansukhani, LLP
2200 Ross Avenue, Ste. 3700
Dallas, TX 75201
Attn:  Megan Adeyemo
Email: madeyemo@grsm.com

To Sellers:

Jeffrey Peck, CEO
iSun, Inc.
400 Avenue D, Ste. 10
Williston, VT 05495
Email: jeff@isunenergy.com

with a copy to:

Gellert, Seitz, Busenkell & Brown, LLC
1 Commerce Center
1201 North Orange St., Ste. 300
Wilmington, DE 19801
Attn: Michael Busenkell
Email: mbusenkell@gsbblaw.com

31956518.4

**Section 11.4    Waivers.** The failure of a party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing by Seller, in the case of a waiver by any Seller, or Purchaser, in the case of any waiver by Purchaser, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach of other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

**Section 11.5    Counterparts and Execution.** This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each Party and delivered to each other Party, it being understood that the Parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

**Section 11.6    Electronic Signatures.** Each Party agrees that the electronic signatures, whether digital or encrypted, of the parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. "Electronic signature" means any electronic sound, symbol, or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record, including facsimile or email electronic signatures. The Company expressly agrees that this Agreement constitutes "transferable records" as defined in applicable regulations relating to electronic transaction and that it may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by such applicable regulations.

**Section 11.7    Headings.** The headings preceding the text of the Articles and Sections of this Agreement and the Schedules are for convenience only and shall not be deemed part of this Agreement.

**Section 11.8    Submission to Jurisdiction.** THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

**Section 11.9    Governing Law; Jurisdiction.** Prior to the Sellers filing their cases under the Bankruptcy Code, all questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas, without regard to the principles of conflicts of law thereof. Each Party agrees that all business disputes and legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement (whether brought against either Party or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents) arising prior to the bankruptcy filing shall be shall be settled by arbitration in Houston, Texas, administered by the then-existing Streamlined JAMS

31956518.4

Arbitration Rules and Procedures.  After the Sellers file their cases under the Bankruptcy Code, all questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflicts of law thereof. Each Party agrees to personal and subject matter jurisdiction in the U.S. District Court for the State of Delaware, U.S. Bankruptcy Court for the District of Delaware, or any other bankruptcy court in which Sellers might file cases under any chapter of the Bankruptcy Code.  If either Party shall commence an action or proceeding to enforce any provisions of this Agreement, then the prevailing party in such action or proceeding shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such action or proceeding.

**Section 11.10 WAIVER OF JURY TRIAL.** IN ANY ACTION, SUIT, OR PROCEEDING IN ANY JURISDICTION BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY, THE PARTIES EACH KNOWINGLY AND INTENTIONALLY, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND EXPRESSLY WAIVES FOREVER TRIAL BY JURY.

**Section 11.11 Binding Nature; Assignment.** Upon the approval of this Agreement by the Bankruptcy Court, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties (which shall not be unreasonably withheld or delayed), except: (a) the rights and interests of Sellers hereunder may be assigned to a trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code; (b) this Agreement may be assigned to any entity appointed as a successor to Sellers pursuant to a confirmed Chapter 11 plan; (c) this Agreement may be assigned to any Affiliate or Affiliates of Purchaser; and (d) as otherwise provided in this Agreement. Sellers hereby agree that the terms of this Agreement shall be binding upon any subsequent trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code.

**Section 11.12 No Third Party Beneficiaries.** This Agreement is solely for the benefit of the parties hereto and nothing contained herein, express or implied, is intended to confer on any Person other than the parties hereto or their successors and permitted assigns, any rights, remedies, obligations, claims, or causes of action under or by reason of this Agreement.

**Section 11.13 Construction.** The Parties agree that each of them and/or their respective counsel have reviewed and had an opportunity to revise this Agreement and that the language used in this Agreement will be deemed to be the language chosen by the parties to this Agreement to express their mutual intent, and no rule of strict construction shall be applied against any party. Any reference to any federal, state, local or foreign Law shall be deemed also to refer to all rules and Laws promulgated thereunder, unless the context requires otherwise.

**Section 11.14 Public Announcements.** Except as required by Law or in connection with the Chapter 11 Cases, neither Sellers nor Purchaser shall issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other parties hereto relating to the contents and manner

of presentation and publication thereof, which approval will not be unreasonably withheld, delayed or conditioned. Prior to making any public disclosure required by applicable Law, the disclosing parties shall give the other party a copy of the proposed disclosure and reasonable opportunity to comment on the same. Notwithstanding the foregoing, Purchaser shall not be restricted from making any public announcements or issuing any press releases after the Closing.

**Section 11.15  Entire Understanding.** This Agreement, the Exhibits and the Schedules set forth the entire agreement and understanding of the parties hereto in respect to the transactions contemplated hereby Agreement, the Exhibits and the Schedules supersede all prior agreements, arrangements and understandings relating to the subject matter hereof and are not intended to confer upon any other Person any rights or remedies hereunder.

**Section 11.16  Closing Actions.** All deliveries, payments and other transactions and documents relating to the Closing shall be interdependent, and none shall be effective unless and until all are effective (except to the extent that the party entitled to the benefit thereof has waived satisfaction or performance thereof as a condition precedent to the Closing).

**Section 11.17  Conflict Between Transaction Documents.** The parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other Transaction Document referred to herein, this Agreement shall govern and control.

**Section 11.18  No Survival**. The representations and warranties of Sellers and Purchaser contained in this Agreement or in any instrument delivered in connection herewith shall not survive the Closing**.**

**Section 11.19  Access to Books and Records Post-Closing.**  From and after the Closing, Purchaser shall (a) provide to Sellers (after reasonable notice and during normal business hours and without charge to Sellers) access to all Books and Records included in the Acquired Assets for periods prior to the Closing to the extent, and only to the extent, such access is necessary in order for Sellers (as applicable) to comply with applicable Law or any contract to which it is a party, for claims or causes of action brought in connection with the Bankruptcy Cases, claim administration, liquidation, winding up, or Tax reporting so long as such access is subject to an obligation of confidentiality, and (b) preserve such Books and Records until the earliest of (i) three (3) years after the Closing Date, (ii) the required retention period for all government contact information, records or documents, (iii) the conclusion of all bankruptcy proceedings relating to the Chapter 11 Cases or (iv) in the case of Books and Records related to Taxes, the expiration of the statute of limitation applicable to such Taxes. Such access shall include access to any information in electronic form to the extent reasonably available. Purchaser acknowledges that Sellers have the right to retain copies of all Books and Records included in the Acquired Assets for periods prior to the Closing.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered on the date first above written.

**SELLERS:**

**iSun, Inc.**

_____

Name:_____

Title: _____

**Solar Communities, Inc. d/b/a Sun Common**

_____

Name:_____

Title: _____

**Liberty Electric, Inc.**

_____

Name:_____

Title: _____

31956518.4

**Hudson Solar Service, LLC**

_____

Name:_____

Title: _____

**Hudson Valley Clean Energy, Inc.**

_____

Name:_____

Title: _____

**iSun Corporate, LLC**

_____

Name:_____

Title: _____

**iSun Energy LLC**

_____

Name:_____

Title: _____

**iSun Utility, LLC**

_____

Name:_____

Title: _____

**Peck Electric Co.**

_____

Name:_____

Title: _____

**Sun CSA 36, LLC**

_____

Name:_____

Title: _____

**PURCHASER:**

**Clean Royalties, LLC**

_____

Name: Joshua Sanger

Title:  Authorized Signatory

## Schedule 1.1(a) - Acquired Assets

Books and Records

All Books and Records related to the Business and the Acquired Assets, whether in electronic or tangible format, including for the avoidance of doubt:

- All emails or correspondence
- All lists of current and former customers, prospects, and vendors with all details, contracts, agreements, warranties, and historical data.

General Intangibles

1.       Any and all interests and rights in and to Intellectual Property Assets that are wholly or beneficially owned by or controlled by Sellers, their affiliates and their subsidiaries or for which Sellers, their affiliates and their subsidiaries are a registrant, including but not limited to all Intellectual Property used or held for use in the conduct of the Sellers' and their Affiliates' business, including, among other things, all of Sellers' rights, ownership and registrations for any and all of Sellers' internet protocol (IP) addresses, domain names, websites, applications, social media names and handles, trademarks, trademark applications, service marks, collective marks and patents, including the following:

(a)       *Trademarks or Trademark Applications*

| Entity | Trademark | Country | App # | Reg # |
|--------|-----------|---------|-------|-------|
| iSUN Energy LLC | ISUN | USA | 87118176 | 5259181 |
| iSUN Energy LLC | ISUN | Canada | 1767865 | TMA983469 |
| SolarCommunities, Inc. | CLIMATE ACTION FILM FESTIVAL<br><br>And design | USA | 88788079 | 6259451 |
| SolarCommunities, Inc. | Design of Houses in a Circle<br><br>(color) | USA | 88455441 | 5937293 |
| SolarCommunities, Inc. | Design of Houses in a Circle<br><br>(B&W) | USA | 88455131 | 5937284 |
| SolarCommunities, Inc<br>Hudson Valley Clean Energy, Inc. | SUNCOMMON | USA | 85518407 | 4380819 |

(b)     *Applications*

- iSun EV application for computer and mobile devices
- Applications built into, onto, or connected to any software system used by any of the companies (e.g. NetSuite and Salesforce customizations).

2.    Avoidance Actions

3.    Venture-level Equity Investments (along with any associated rights)

    a)     *AmpUp*

        -$1,000,000 SAFE equity investment in NAD Grid Group (AmpUp) with a $15,000,000 post-money valuation cap. Signed March 16, 2021
        -NAD Grid Corp (AmpUp) Pro Rata Agreement signed March 16, 2021
        -NAD Grid Corp (AmpUp) Side Letter Agreement signed March 16, 2021

    b).     *Gemini*

        -$1,500,000 SAFE equity investment in Gemini signed March 15, 2021
        -Gemini Electric Mobility Co Side Letter Agreement signed March 15, 2021

    c)     *Encore Renewables*

        -$5,000,000 investment in Encore Renewables with ROFO and Board Observer rights

    d)     *Fusion Renewable*

        -20% equity interest

4.    Permits

- Liberty Electric, Inc., MA Registered Electrical Business License No: 3388 A1
- Liberty Electric NH Registered Electrical Business License No: 5820
- All permits identified under the heading "1. Owned Solar Assets" of this Schedule 1.1(a)
- All other permits used in connection with the Business and Acquired Assets

5.    All of Sellers' rights and interests in marketing and promotional materials, including:

- Marketing collateral, plans, contracts, historical data
- Photographs, customer testimonials, references

6.    All rights, including enforcement rights, under non-solicitation and non-compete agreements in favor of Sellers concerning the Business and Acquired Assets

7.    All warranties, guaranties and similar rights related to the Business and Acquired Assets, including warranties and guarantees made by suppliers, manufacturers and contractors or sub-contractors under the Purchase Assets and claims thereunder

8.    All shares of common stock in the Amicus Solar Cooperative

9.     All professional certifications associated with the Business and Acquired Assets, including, without limitation:

- NYSERDA solar installation
- B Corporation Certification

Payment Intangibles

1. All accounts receivables held by the Debtors or generated in the course of their business that remain unpaid as of the Closing

Assumed Contracts

1. That certain collective bargaining agreement between Sellers and IBEW Local 567 (Maine), except Purchaser's obligation as to associated Liabilities existing prior to Closing shall be capped at $100,000.

2. That certain collective bargaining agreement between Sellers and IBEW Local 300 (Union Benefits Funds)(Vermont), except Purchaser's obligation as to associated Liabilities existing prior to Closing shall be capped at $100,000.

3. That certain insurance policy by and between Sellers and Navigator Casualty, Ltd. Providing coverage for general liability, auto insurance and Worker's Compensation coverage, including all accompanying capital, cash security, unpaid assessments and dividends payable.

4. The following Office Leases:
   o Office Lease for the premises located at 400 Avenue D #10, Williston, VT 05495
   o Liberty Electric office leases for the premises located at 50 Northwestern Drive, Salem, NH 03079 and annex
   o Lease for the premises located at 442 US-2 Waterbury, VT 05676

5. All of the Sellers' contracts with the owners of the Projects for the performance and completion of such projects, and all of the Sellers' rights and interest in such contracts, regardless of whether such contracts have been or are alleged to have been terminated or are not executory for purposes of section 365 of the Bankruptcy Code listed below under the heading "Industrial and Commercial Contracted Backlog"

6. All of the Sellers' active contracts with customers (including owners of Projects) to provide electrical, fire alarm, data, solar or other services, and all of Sellers' rights and interest in such contracts, including those listed below under the hearing "O&M Contracts (Active and Contract Finance):".

7. Any lease, easement or other agreement permitting the use or occupancy of real property in connection with the assets described under the heading "1. Owned Solar Assets" of this Schedule 1.1(a)

8. Any agreement for the offtake or purchase of electricity related to the Solar Array, including any net metering agreement or power purchase agreement, including those described under the heading "1. Owned Solar Assets" of this Schedule 1.1(a)

9. Any interconnection or similar agreement related to the Solar Array, including those described under the heading "1. Owned Solar Assets" of this Schedule 1.1(a)

10. All Contracts with Global Foundries for information technology and data services

11. All Contracts with the following service providers:

| **Software** |
|---|
| Intuit (Quickbooks Online) |
| JAMF Software LLC |
| Meraki |
| Mircom |
| Nest |
| NetSuite |
| Office 365 |
| Okta |
| OWN Backup |
| OwnCompany Inc |
| Paylocity |
| Paystand |
| Promevo, LLC |
| Quickbase |
| Resilient Networks |
| Salesforce |
| Scanifly |
| SolarEdge |
| Solis |
| Spectrum |
| SymQuest Group, Inc. |
| Tesla |
| TPX Communications |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

| TransUnion |
| Trimble Inc |
| Verizon |
| Vonage Business Inc. |
| Wordpress |
| Zapier |
| Zoom |
| PEX Card |
| BlueHouse Group |
| J Studio Creative |

12. The following insurance policies:

| DEBTOR NAME | COUNTER PARTY | CONTRACT DESCRIPTION |
| --- | --- | --- |
| **Hudson Solar Service, LLC** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 |
| **Hudson Solar Service, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **Hudson Solar Service, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Solar Service, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Solar Service, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **Hudson Solar Service, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Solar Service, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Valley Clean Energy, LLC** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 |
| **Hudson Valley Clean Energy, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |

| | | |
|---|---|---|
| **Hudson Valley Clean Energy, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Valley Clean Energy, LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Valley Clean Energy, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **Hudson Valley Clean Energy, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **Hudson Valley Clean Energy, LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun Energy LLC** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 |
| **iSun Energy LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **iSun Energy LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun Energy LLC** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun Energy LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **iSun Energy LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun Energy LLC** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun, Inc.** | ACCELERANT SPECIALTY INS CO | INSURANCE POLICIES: INSURANCE POLICY #S0073PL002055-00 DTD 9/26/2023 |
| **iSun, Inc.** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 |

| | | |
|---|---|---|
| **iSun, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **iSun, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #58461264 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | Insurance Policy |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #58907086 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | Insurance Policy |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #65830032 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #66189001 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #66189001 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #67058700 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 |
| **iSun, Inc.** | EVANSTON INSURANCE CO | INSURANCE POLICIES: COMMERCIAL EXCESS LIABILITY POLICY #MKLV1EUL104207 |
| **iSun, Inc.** | HISCOX INSURANCE CO INC | INSURANCE POLICIES: COMMERCIAL CRIME INSURANCE POLICY #UC25376768.23 |

| | | |
|---|---|---|
| **iSun, Inc.** | HISCOX INSURANCE CO INC | INSURANCE POLICIES: COMMERCIAL CRIME INSURANCE POLICY #UC25376768.23 |
| **iSun, Inc.** | HISCOX INSURANCE CO INC | INSURANCE POLICIES: COMMERCIAL CRIME INSURANCE POLICY #UC25376768.24 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #58461264 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | Insurance Policy |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #58907086 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | Insurance Policy |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #65830032 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #66189001 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #66189001 |
| **iSun, Inc.** | LIBERTY MUTUAL INSURANCE CO | INSURANCE POLICIES: INSURANCE POLICY #67058700 |
| **Peck Electric Co.** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 (WORKERS COMPENSATION) |
| **Peck Electric Co.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 (AUTOMOBILE) |
| **Peck Electric Co.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |

| | | |
|---|---|---|
| **Peck Electric Co.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **Peck Electric Co.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 (AUTOMOBILE) |
| **Peck Electric Co.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **Peck Electric Co.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **SolarCommunities, Inc.** | ARCH INSURANCE CO | INSURANCE POLICIES: WORKERS COMPENSATION & EMPLOYERS LIABILITY INSURANCE POLICY #ZAWCI9423406 (WORKERS COMPENSATION) |
| **SolarCommunities, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 (AUTOMOBILE) |
| **SolarCommunities, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **SolarCommunities, Inc.** | ARCH INSURANCE CO. | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **SolarCommunities, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZACAT9249306 (AUTOMOBILE) |
| **SolarCommunities, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |
| **SolarCommunities, Inc.** | ASSUREDPARTNERS NEW ENGLAND INC | INSURANCE POLICIES: INSURANCE POLICY #ZAGLB9236106 (GENERAL LIABILITY) |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## Contracted Backlog

### Industrial and Commercial Contracted Backlog

| Job ID | C&I Projects |
|---|---|
| 23LE0734 | 23LE0734 - Coliseum Senior Living |
| 22SV0684 | 22SV0684 - Stone Mill Solar Pull Test plus EPC |
| 22SV0679 | 22SV0679 - BD Solar Rangeley LLC Design |
| 22SV0683 | 22SV0683 - Trolly Tracks Solar Pull Test plus EPC |
| 22SV0685 | 22SV0685 - Halladay Solar Pull Test |
| 22SV0677 | 22SV0677 - BD Solar Norridgewock LLC Design plus full EPC |
| 22SV0673 | 22SV0673 - SV Limestone CSG 1 ME 90% 4.409mw SAT ground mount |
| 23SV0701 | 23SV0701 - SO 2023 Giri Jonesboro Solar ME 2.9568mw fixed tilt |
| 22SV0681 | 22SV0681 - BD Solar Larson LLC Design |
| 23LE0731 | 23LE0731 - Acre Crossing Credit Union |
| 23LE0736 | 23LE0736 - Pinkerton Academy Bldg 19 |
|  | Autumn Harp |
| 22SV0663 | 22SV0663 - Onlogic 654.2kw ballasted roof mount |
| 23E5690 | 23E5690 - ICE Harvest Lane |
| 21SV0624 | 21SV0624 - Simon Pearce Oakland MD 3.1616 |
| 23LE0732 | 23LE0732 - Acre Crossing Residential Bldg |
| 670878 | Church Communities NY, Inc. (Maple Ridge) |
| 22LE0720 | 22LE0720 - Red Tavern |
| 22SV0660 | 22SV0660 - SV Easton CSG Solar ME 4.171mw SAT ground mount |
| 23E5725 | 23E5725 - Troy BESS |
| 24D6310 | 24D6310 - Phone Coverage T&M |
| 508948 | Stone Creek Properties (Surface Creations) - Commercial PV Roof - 2022-06 |
| 577504 | Arcadia Fields, Commercial PV Roof - 2023-03 |
| 22SV0688 | 22SV0688 - ER South Street 6.49476 mw tracker mount |
| 24LE0737 | 24LE0737 - Pennichuck Dehumidification |
|  | Wings Market |
| 24D6308 | 24D6308 - Running T&M KTLO |
|  | Essex Resorts |
|  | Greg Beaudoin |
| 624813 | Lake and Lake and Maple Apartments - Grant Butterfield |
| 21SV0639 | 21SV0639 - Von Turkivich S. Burlington |
| OM58 | OM58 - Wispering Pines PM |
|  | Talta Lodge |
| 583065 | Bouchard Family Farm |
| 22LE0723 | 22LE0723 - McKelvie Intermediate School Fire Alarm System |
|  | Catamount Run Phase I |
| 24D6326 | 24D6326 - Courthouse re-wire |
| 24D6315 | 24D6315 - Prison Video Systems |
| 24D6309 | 24D6309 - Running T&M Spectralink |
| 23SV0724 | 23SV0724 - COTS 18.225 Ballasted roof mount |
| 696189 | Oblong Books (Millerton) |
| 24D6328 | 24D6328 - Marquesas Project |
| OM11 | OM11 - Novus Hardwick |
| 24LE6868 | 24LE6868 - Humidifier/LED/Ballast |
| 581760 | Commercial - SUNWEALTH Four Girls Dairy (Peter Rainville) 72kW - 2023-03 |
| 539054 | Greater Bennington Community Services, Commercial PV Roof - 2022-10 |
| 24D6316 | 24D6316 - Phone Installs |
| 24D6319 | 24D6319 - Vermont National Country Club |
| 22SV0674 | 22SV0674 - SV Limestone CSG 2 ME 90% 3.555MW SAT ground mount |
| 23E5721 | 23E5721 - Bristol BESS |
| 23E5709 | 23E5709 - Camp Johnson Resiliency |
| 23SV0702 | 23SV0702 - KSI Novus rock pit pull test & racking dep |
| 22SV0678 | 22SV0678 - BD Solar North Anson LLC Design plus EPC |
| 22LE0729 | 22LE0729 - Laconia Solar Array |
| 22SV0656 | 22SV0656 - ER Wilton Solar Me 4.01752mw Screw ground mount |
| 23SV0700 | 23SV0700 - SO 2023 Giri Cherryfield Solar ME 3.1416mw fixed tilt |

## O&M Contracts (Active and Contract Finance)

| Site Name | Site Address |
| --- | --- |
| **Active** | |
| Echo Center | 1 College Street, Burlington, VT |
| Route 149 | Route 149, West Pawlet, VT 05775 |
| Shields Drive | 359 Shields Drive, Bennington, VT 05201 |
| Cross Pollination | 7263 Ethan Allen Highway, New Haven, VT 05472 |
| South Forty | Sunset Cliff Road, Burlington, VT |
| Chace Mill | 1 Mill St, Burlington, VT |
| Redstone Lofts | 165 Davis Road, Burlington, VT, US |
| Novus Hardwick | Arsen Ace. East Hardwick, Vermont 05386 |
| Novus Rockingham | 25 Jackson Road, Rockingham, VT 05143 |
| University 2 | 200 Robin Hollow Road, West Greenwhich, RI 02718 |
| Blissville Rd | 1327 Blissville Rd, Poultney< VT 05764 |
| Park Road Solar, LLC | 26 Ferry Road, Hartland, VT 05048 |
| Upper Road | 325 QSI Rd, Poultney, VT 05764 |
| Whispering Pines | Panton Road, Panton, VT 05491 |
| Nedde Bank | 77 Pine street, Burlington, VT 05401 |
| Breezy Hill | 900 Breezy Hill Rd, Saint Johnsbury, VT 05819 |
| Case Street | Middlebury, VT 05753 |
| Newfrane | 14 School Street Newfane, VT 05345 |
| VPR | Troy Avenue 365, Colchester, VT, US |
| WSOC | 280 State Drive, Waterbury, VT 05676 |
| Williston DPW | *na* |
| MNFC | 1600 Town Hill Rd, New Haven, VT 05472 |
| Gervaise | 1330 Twitchell Hill Road, New Haven, VT 05472 |
| Randolph | 576 Beanville Rd, Randolph, VT |
| St. Albans | 91 Brigham rd., Saint Albans, VT |
| Hartland | 314 Clay Hill Road, Hartland, VT 05048 |
| Radio Kingston | 241-267 Albany Ave, Kingston, NY 12401 |
| CSA McNary | 1906 Route 7, Ferrisburgh, VT 05456 |
| CSA Erb Jericho | Old Pump Road 35, Jericho, VT, US |
| CSA Meshna | 1195 Dog Team Road, New Haven, VT 05472 |
| CSA Blakely | 680 Route 73, Orwell, VT 05760 |
| CSA Guendel | 226 Plank Road, Weltham, VT 05491 |
| CSA Quinn | 185 Leicester- Whiting Road, Whiting, VT 05778 |
| GMP Middlebury | 121 Cady Road, Middlebury, VT |
| Cressett Brook- MS | 5672 VT-100 Duxbury, VT 05676 |
| CSA Saladino | 462 Lake Morey Road, Bradford, VT |
| CSA Siminger | 365 Eden Rd, Albany, VT |
| CSA Tolle | 2742 US-5, Barnet, VT |
| CSA Lendway | 2594 Young Road, Benson, VT |
| CSA Marcott | 1 Birch Meadow Road, Fairlee, VT |
| CSA Connor | VT Route 22A, Bridport, VT |
| CSA Hodge | 7389 US Route 5, Thetford, VT |
| CSA Evarts | Green Street, Waltham, VT |
| CSA Johnson | 28 Bowers Road, Hartland, VT |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## O&M Contracts (Active and Contract Finance) (con't)

| Site Name | Site Address |
|---|---|
| CSA Cameron | 2742 US-5, Barnet, VT |
| CSA Gildrien | Delorm Road, Leicester, VT |
| CSA Magnan | 5618 Duffy Hill Road, Fairfield, VT |
| CSA Miserocchi | 1509 Middle Road, North Clarendon, VT |
| CSA Stevens | 1870 Shard villa Road, Salisbury, VT |
| CSA Mason | 980 Wooster Road, Whiting, VT 05778 |
| CSA SATEC | 169 South Main Street, St. Albans, VT 05478 |
| CSA Red hook | 44 MM Ham Memorial Fire House Lane, Red Hook, NY |
| Novus Rock Pit | 2029 Rockingham Rd Rockingham, Vermont |
| Member CSA- GMP Colchester | 163 Acorn Ln, Colchester, VT 05446 |
| Member CSA- OCCF | 23 White Oak Dr, Chester, NY 10981 |
| Member CSA- Loveland | 3847 Route 9G, Germantown, NY  12526 |
| Member CSA- Lyric Theater | 7 Green Tree Dr, South Burlington, VT |
| Member- CSA POP 1,2, & NM | 234 Hurley Ave, Kingston, NY |
| Dousevicz Berlin Mall | 430 Berlin Mall, Berlin, VT |
| Dousevicz Blair Park | 422 Blair Park Road, Williston, VT |
| Dousevicz Meadows | 20 Carmichael St., Essex Junction, VT |
| Dousevicz Mansfield | 18 Carmichael St. Essex junction, VT |
| Poly.co | 2300 St George Rd. Williston, VT |
| VT Livestock | 76 Depot Road, Ferrisburgh, VT 05456 |
| Allen Street Solar | 16 Gallup Court, Swanton, VT 054488 |
| Bridge Street Solar | *na* |
| Acre Solar | *na* |
| Bloom | *na* |
| GBR Fairbanks Road Solar | *na* |
| Orr Solar | *na* |
| **Contract Finance** | |
| Echo Center | *na* |
| Route 149 | *na* |
| Shields Drive | *na* |
| Cross Pollination | *na* |
| South Forty | *na* |
| Chace Mill | *na* |
| Redstone Lofts | *na* |
| Novus Hardwick | *na* |
| Novus Rockingham | *na* |
| University 2 | *na* |
| Blissville Rd | *na* |
| Park Road Solar, LLC | *na* |
| Upper Road | *na* |
| Whispering Pines | *na* |
| Nedde Bank | *na* |
| Breezy Hill | *na* |
| Case Street | *na* |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

### O&M Contracts (Active and Contract Finance) (con't)

| Site Name | Site Address |
| --- | --- |
| Newfrane | *na* |
| VPR | *na* |
| WSOC | *na* |
| Williston DPW | *na* |
| MNFC | *na* |
| Gervaise | *na* |
| Randolph | *na* |
| St. Albans | *na* |
| Hartland | *na* |
| Radio Kingston | *na* |
| CSA McNary | *na* |
| CSA Erb Jericho | *na* |
| CSA Meshna | *na* |
| CSA Blakely | *na* |
| CSA Guendel | *na* |
| CSA Quinn | *na* |
| GMP Middlebury | *na* |
| Cressett Brook- MS | *na* |
| CSA Saladino | *na* |
| CSA Siminger | *na* |
| CSA Tolle | *na* |
| CSA Lendway | *na* |
| CSA Marcott | *na* |
| CSA Connor | *na* |
| CSA Hodge | *na* |
| CSA Evarts | *na* |
| CSA Johnson | *na* |
| CSA Cameron | *na* |
| CSA Gildrien | *na* |
| CSA Magnan | *na* |
| CSA Miserocchi | *na* |
| CSA Stevens | *na* |
| CSA Mason | *na* |
| CSA SATEC | *na* |
| CSA Red hook | *na* |
| Member CSA- GMP Colchester | *na* |
| Member CSA- OCCF | *na* |
| Member CSA- Loveland | *na* |
| Member CSA- Lyric Theater | *na* |
| Member- CSA POP 1,2, & NM | *na* |
| Dousevicz Berlin Mall | *na* |
| Dousevicz Blair Park | *na* |
| Dousevicz Meadows | *na* |
| Dousevicz Mansfield | *na* |
| Poly.co | *na* |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

O&M Contracts (Active and Contract Finance) (con't)

| Site Name | Site Address |
| --- | --- |
| VT Livestock | *na* |
| Peck Investment Properties Gallup Court | *na* |
| Allen Street Solar | *na* |
| Bridge Street Solar | *na* |
| Novus Rock Pit | *na* |
| CSA Parma Solar 1, LLC | *na* |
| CDG Huron Solar 1, LLC | *na* |
| CDG Sodus Solar 1, LLC | *na* |
| Conway 302 Solar, LLC | *na* |
| NESG Lasconia 1 Solar, LLC | *na* |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

<u>Personal Property</u>

---

1.      Owned Solar Assets as follows:

| Name | ID | GMP Acct # ID | Site | Sage ID | Job # |
|------|----|---------------|------|---------|-------|
| VPR (2015) | 1 | 30154450305 | 365 Troy Ave, Colchester VT 05446 | VPR-2 | OM66 |
| Breezy Hill (2016) | 2 | 52723033412 | 900 Breezy Hill Rd., St. Johnsbury VT 05819 | Town of St Johnsbury | OM70 |
| WSOC (2016) | 3 | 66463854829 | 103 South Main Street , Waterbury VT 05676 | State of Vermont BGS | OM72 |
| Newfane (2017) | 5 | 47528115414 | 14 School Rd., Newfane VT 05345 | Windham | OM75 |
| Case Street (2018) | 6 | 21030056689 | VT State Colleges - Case St, Middlebury VT 05753 | Vermont State College | OM71 |
| Hartland (2014) | 7 | 47106174668 | 314 Clay Hill Rd., Hartland VT 05048 | Hartford Town | OM64 |
| MNFC (2014) | 8 | 54722317721 | 3830 Ethan Allen Highway, New Haven VT 05472 | MIDD NAT | OM74 |
| Gervaise (2014) | 9 | 58555525219 | 1330 Twitchell Hill Road, New Haven VT 05472 | Town of Middlebury | OM73 |
| Bushey Property (CSA36) | 10 | - | 489 Barry Rd, Fairfield, VT | Fairfield | - |

Including the Sellers' rights and interests in and arising under the following documents:

| Project Name | VPR, Troy Ave., Colchester |
|--------------|----------------------------|
| Debtor | Peck Electric Co. ("Peck") |
| Predecessor to Debtor | Encore Troy Avenue Solar, LLC. ("Encore Troy") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 11/21/2015 with Peck and Encore Troy |

| Project Location | 365 Troy Avenue, Colchester VT |
|---|---|
| Land Owner | Vermont Public Radio |
| Lease Documents | Site Lease Agreement dated 8/19/2015 with Peck as successor to Encore Troy |
| Customer/Purchaser | Vermont Public Radio |
| Customer Agreement | Group Net Metering Agreement dated 8/19/2015 with Peck as successor to Encore Troy |
| Permits | Energizing Permit dated 12/12/2015. |
| Certificate of Public Good | CPG #NM-6358 9/11/2015 <br><br> Notice of Transfer of CPG to Peck 12/11/2015 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct # 30154450305) |

| Project Name | Breezy Hill – Cole – St. Johnsbury |
|---|---|
| Debtor | Peck |
| Predecessor to Debtor | Solarflect Solar Futures, LLC. ("Solarflect") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 10/24/2016 with Peck and Solarflect |
| Project Location | Breezy Hill Road, St. Johnsbury VT |
| Land Owner | Solaflect Properties V, LLC |
| Lease Documents | Solar System Site Lease Agreement dated 10/24/2016 with Peck Electric Company, Inc. |
| Customer/Purchaser | Town of St. Johnsbury |
| Customer Agreement | Group Net Metering Agreement dated 9/11/2015 with Peck as successor to Solarflect |
| Permits | Permission to Operate dated 1/11/2017 |
| Certificate of Public Good | CPG #NM-6393 9/24/2015 <br><br> Amendment to CPG #NM-6393 8/5/2016 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct # 52723033412) |

| Project Name | State of Vermont (WSOC) |
|---|---|
| Debtor | Peck |
| Predecessor to Debtor | Encore Redevelopment, LLC ("Encore") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 11/21/2015 with Peck and Encore. |
| Project Location | 103 South Main Street, Waterbury VT |
| Land Owner | State of Vermont (Dept of Buildings & General Services) |
| Lease Documents | Easement Deed for a portion of 103 South Main Street, Waterbury, Vermont, dated 12/22/2015, with Encore as Grantee and Peck as assignee/successor |
| Customer/Purchaser | State of Vermont |
| Customer Agreement | Group Net Metering Agreement dated 12/8/2015 with Peck as successor to Encore |
| Permits | Electric Permit 3/28/2016 |
| Certificate of Public Good | CPG #NM-6824 10/21/2015 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #66463854829) |

| Project Name | VT Tech Windham County Supervisory Union – Newfane |
|---|---|
| Debtor | Peck |
| Predecessor to Debtor | Encore |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 12/5/2017 with Peck and Encore. |
| Project Location | 14 School Street, Newfane VT |
| Land Owner | West River Modified Union Education District |
| Lease Documents | Lease Agreement dated 12/3/2019 with Peck |
| Customer/Purchaser | Jamaica Village School; Vermont State Colleges/Vermont Technical College; Leland & Gray Union Middle and High School; Wardsboro Elementary School; Windham Elementary School; Townshend Elementary School; The Brookline-Newfane Joint Contract Board |
| Customer Agreement | Solar Power and Services Agreement dated 7/25/2017 Solar Power and Services Agreement dated 12/21/2015 |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

|  | Solar Power and Services Agreement dated 8/14/2017<br>Solar Power and Services Agreement dated 9/5/2017<br>Solar Power and Services Agreement dated 8/7/2017<br>Solar Power and Services Agreement dated 8/14/2017<br>Solar Power and Services Agreement dated 8/6/2015 as amended on 6/30/2017 |
|---|---|
| Certificate of Public Good | CPG #16-00063-NMP 7/10/2017 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #47528115414) |

| Project Name | VT State College – Case Street |
|---|---|
| Debtor | Peck |
| Predecessor to Debtor | Encore |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 12/12/2017 with Peck and Encore. |
| Project Location | 3614 Case Street, Middlebury VT |
| Land Owner | Ronald Fenn and Susan Fenn |
| Lease Documents | Lease Agreement dated 5/30/2018 with Peck |
| Customer/Purchaser | Vermont State Colleges |
| Customer Agreement | Solar Power & Services Agreement dated 11/11/2015 with Peck as successor to SunEdison Origination 1, LLC |
| Certificate of Public Good | CPG #16-0065-NMP 11/8/2017 |
| Inter Connection Agreement | Generation Interconnection Agreement dated 12/5/17 with Peck as successor to Encore (GMP Acct#210300056689) |

| Project Name | Town of Hartford – Dunne – Clay Hill Road - Hartland |
|---|---|
| Debtor | Peck |
| Predecessor to Debtor | Encore Hartford Solar I, LLC ("Encore Hartford") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 3/18/2015 with Peck and Encore Hartford. |
| Project Location | 314 Clay Hill Road, Hartland VT |
| Land Owner | Matt Dunne and Sarah Taylor |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

| Lease Documents | Lease Agreement dated 10/15/2014 with Peck as successor to Encore Hartford |
| --- | --- |
| Customer/Purchaser | Town of Hartford |
| Customer Agreement | Group Net Metering Agreement dated 11/3/2014 with Peck as successor to Encore Hartford |
| Certificate of Public Good | CPG #NM-5073 10/15/2014<br><br>Notice of Transfer of CPG 6/15/15 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #47106174668) |

| Project Name | Middlebury Natural Foods - MNFC |
| --- | --- |
| Debtor | Peck |
| Predecessor to Debtor | Encore Middlebury Natural Foods Solar, LLC. ("Encore MNFS") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 5/17/2014 with Peck and Encore MNFS. |
| Project Location | 3830 Ethan Allen Highway, New Haven VT |
| Land Owner | John H. and Carmen L. Palmer DBA Misty Knoll Farm |
| Lease Documents | Lease Agreement dated 3/26/2014 with Peck as successor to Encore MNFS |
| Customer/Purchaser | Middlebury Natural Foods |
| Customer Agreement | Net Metering Agreement dated 4/11/2014 with Peck as successor to Encore MNFS |
| Certificate of Public Good | CPG #NM-3587 3/20/2014 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #54722317721) |

| Project Name | Town of Middlebury (Twitchell Hill Road) - Gervaise |
| --- | --- |
| Debtor | Peck |
| Predecessor to Debtor | Encore Middlebury Solar I, LLC. ("Encore MS") |
| Assignment Docs | Solar Project Assignment and Assumption Agreement dated 10/2014 with Peck and Encore MS.<br><br>Solar Project Assignment and Assumption Agreement dated 3/25/2015 with Peck and Encore Middlebury. |

|  | Solar Project Assignment and Assumption Agreement dated 12/4/2017 with Peck and Encore Redevelopment LLC. |
| --- | --- |
| Project Location | 1330 Twitchell Hill Road/498 Field Days Road |
| Land Owner | Edward and Shirley Gervais Family Trust dated 10/24/2017 (Edward Gervais, Trustee) as successor to Edward and Shirley Gervais |
| Lease Documents | Site Lease Agreement dated 8/22/2014 with Peck as successor to Encore MS<br><br>Amendment to Site Lease Agreement dated 4/25/2015 with Peck as successor to Encore MS |
| Customer/Purchaser | Town of Middlebury |
| Customer Agreement | Net Metering Agreement dated 8/19/2014 with Peck Electric Co. as successor to Encore MS |
| Certificate of Public Good | CPG #NM-5056 11/26/2014 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #58555525219) |

| Project Name | CSA36 // Bushey Property |
| --- | --- |
| Debtor | Sun CSA 36, LLC ("CSA 36") |
| Project Location | 489 Barry Road, Fairfield, Vermont |
| Land Owner | Harvey E. Bushey and Mary A. Bushey |
| Lease Documents | Permanent Easement dated 11/3/2014 with CSA 36 as successor to SollarCommunities, Inc |
| Customer/Purchaser | See Below |
| Customer Agreement | CSA Membership Agreement/Residential Agreement with the customers identified below |
| Certificate of Public Good | CPG #NM-5162 10/30/2014 |
| Inter Connection Agreement | Generation Interconnection Agreement (GMP Acct #6144200) |

Sun CSA 36 LLC Customers

| Household | Participation level | Start Date |
| --- | --- | --- |
| Jason Wyman Household | 3.00% | 3/15/2024 |
| Mark Osborne Household | 4.00% | 5/15/2023 |
| Ben Owens Household | 4.00% | 9/15/2022 |

| | | |
|---|---|---|
| Rene Morrissette Household | 3.00% | 9/15/2022 |
| Marc Christie Household | 1.00% | 9/15/2022 |
| Pete Gold Household | 2.00% | 1/15/2022 |
| Daniel Hament Household | 2.00% | 7/15/2021 |
| Jerry Dukas Household | 4.00% | 5/10/2021 |
| Karl Meisterling Household | 4.00% | 9/15/2019 |
| Marnie MacKenzie Household | 1.00% | 6/15/2019 |
| Amy DiPalma Household | 3.00% | 6/15/2019 |
| Joanne Crawford Household | 4.00% | 12/15/2018 |
| Chris Redder Household | 3.00% | 11/15/2018 |
| Deborah Shelby Household | 2.00% | 10/15/2017 |
| Anne Quinn Household | 2.00% | 9/15/2017 |
| Clarence Ogilvie Household | 7.00% | 3/15/2017 |
| Mike Williamson Household | 3.00% | 6/2/2015 |
| Harvey Bushey Household | 2.00% | 6/2/2015 |
| Kenneth Lawrence Household | 2.00% | 6/2/2015 |
| Paula Cutting Household | 2.00% | 6/2/2015 |
| Jed Emerson Household | 2.00% | 6/2/2015 |
| Allison Bannister Household | 5.00% | 6/2/2015 |
| Peter Czaja Household | 2.00% | 6/2/2015 |
| Elizabeth Monley Household | 3.00% | 6/2/2015 |
| Patrick & Diane Fitzgerald Household | 5.00% | 6/2/2015 |
| Craig Reeves Household | 2.00% | 6/2/2015 |
| Gillian Trevithick Household | 2.00% | 6/2/2015 |
| Thomas Talbot Household | 3.00% | 6/2/2015 |
| Arnold Benjamin Household | 2.00% | 6/2/2015 |
| William Mercier Household | 4.00% | 6/2/2015 |
| Bethany Creaser Household | 2.00% | 6/2/2015 |
| Jeffrey Hullstrung Household | 4.00% | 6/2/2015 |
| Abbi Jaffe Household | 2.00% | 6/2/2015 |
| Russ Weis Household | 3.00% | 6/2/2015 |

Sellers' owned Electric Vehicle charging stations located at

- 5 at Dorset Street, South Burlington VT (along with that certain Charging Station License Agreement, between Solar Communities Inc DBA SunCommon and Larkin Family Partnership, dated May 6, 2021)
- 1 at 89 Mad River Green, Waitsfield, VT 05673

Sellers' 5 solar carports located at 400 Avenue D, Williston, VT

2.       All furniture, fixture and equipment associated with the iSUN and Liberty Electric divisions of the Business, including the following:

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| LEASEHOLD IMPROVEMENTS | 05/17/2018 | Middlebury Fence - New Storage Area |
| LEASEHOLD IMPROVEMENTS | 04/01/2021 | Office Fit-Up |
| LEASEHOLD IMPROVEMENTS | 12/01/2022 | Office Fitup - Common Area |
| LEASEHOLD IMPROVEMENTS | 12/01/2022 | Office Fitup - Carport |
| **Grand totals:  1 ( 4 assets )** | | |
| INTANGIBLES | 01/29/2021 | iSun Acquisition Costs |
| INTANGIBLES | 07/01/2021 | Oakwood Construction IP |
| INTANGIBLES | 10/31/2021 | Liberty Goodwill |
| **Grand totals:  10 ( 3 assets )** | | |
| IT Equipment | 05/01/2023 | Resilient (Liberty) IT Equipment |
| IT Equipment | 08/01/2023 | IT Equipment - 8 Laptop's Dell 15.6 Latitude 5x 5540 + 3x 3540 |
| IT Equipment | 10/01/2023 | Liberty Electric - Laptop |
| IT Equipment | 10/01/2023 | Liberty Electric - Laptop |
| IT Equipment | 11/01/2023 | Liberty Electric - Laptop |
| **Grand totals:  11 ( 5 assets )** | | |
| OFFICE FURN & EQUIP | 12/08/2014 | Sage Accounting Upgrade |
| OFFICE FURN & EQUIP | 04/04/2017 | Dell Server Upgrade |
| OFFICE FURN & EQUIP | 02/28/2021 | New Office IT infrastructure |
| OFFICE FURN & EQUIP | 04/01/2021 | Gym Equipment |
| OFFICE FURN & EQUIP | 04/01/2021 | Office Equipment |
| OFFICE FURN & EQUIP | 07/18/2021 | Computers |
| OFFICE FURN & EQUIP | 08/03/2021 | Software |
| OFFICE FURN & EQUIP | 08/13/2021 | Software |
| OFFICE FURN & EQUIP | 11/05/2021 | Computer Equipment |
| OFFICE FURN & EQUIP | 12/01/2022 | Dell Latitude Laptop 5520 Laptop 15.6in |
| OFFICE FURN & EQUIP | 12/01/2022 | Microsoft Surface pro 8 - 13" |
| OFFICE FURN & EQUIP | 12/01/2022 | Dell Latitude Laptop 5520 + 24" Monitor + Dell WD19S Docking Station |
| OFFICE FURN & EQUIP | 12/01/2022 | Sales Force Software |
| OFFICE FURN & EQUIP | 10/01/2023 | Liberty Electric  - Furniture & Fixtures |
| **Grand totals:  4 ( 14 assets )** | | |
| SOFTWARE | 04/01/2023 | Sales Force |
| **Grand totals:  5 ( 1 asset )** | | |
| SOLAR | 08/31/2014 | 2014 MFNC Solar Array |
| SOLAR | 12/31/2014 | 2014 Gervais Solar Array |
| SOLAR | 04/30/2015 | 2015 Dunne Solar Array |
| SOLAR | 12/31/2015 | 2015 VPR Solar Array |
| SOLAR | 05/31/2016 | 2016 Waterbury State Office Solar |
| SOLAR | 12/31/2016 | 2016 Cole Solar Array St. J |
| SOLAR | 12/15/2017 | 2017 Newfane School District |
| SOLAR | 06/01/2018 | Building Solar Array |
| SOLAR | 06/01/2018 | MNFC Solar Farm |
| SOLAR | 06/01/2018 | Gervais Solar Farm |
| SOLAR | 06/01/2018 | Dunne Solar Array |
| SOLAR | 06/01/2018 | VPR Solar Array |
| SOLAR | 06/01/2018 | Waterbury State Office Solar |
| SOLAR | 06/01/2018 | Williston DPW Solar Array |
| SOLAR | 06/01/2018 | Cole Solar Array St. J |
| SOLAR | 06/01/2018 | Newfane School District |
| SOLAR | 06/15/2018 | Middlebury Case St Solar Array |
| **Grand totals:  6 ( 17 assets )** | | |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| EQUIPMENT | 08/26/2008 | 3 Lifts (Direct Capital |
| EQUIPMENT | 02/03/2012 | Various Machinery & Equipment |
| EQUIPMENT | 04/17/2012 | Extension Ladders |
| EQUIPMENT | 07/18/2012 | Solar Tools |
| EQUIPMENT | 11/07/2012 | Solar Tools |
| EQUIPMENT | 07/29/2013 | Trailer to Haul Panels |
| EQUIPMENT | 08/20/2013 | L2050 Kubota Tractor |
| EQUIPMENT | 10/23/2013 | Solar Tools |
| EQUIPMENT | 07/02/2014 | hipot tester |
| EQUIPMENT | 07/22/2014 | Schletter, Inc - Gayle |
| EQUIPMENT | 08/25/2014 | Schletter Inc Solar Mounting System |
| EQUIPMENT | 11/30/2014 | Solar Ladder |
| EQUIPMENT | 03/09/2015 | Solar Greenlee Tugger |
| EQUIPMENT | 05/27/2015 | Kee Anchor Counter Weight |
| EQUIPMENT | 08/26/2015 | PVA-1000S Solar Array Testing Kit |
| EQUIPMENT | 09/22/2015 | Gayk Ram HRE 4000 |
| EQUIPMENT | 05/04/2017 | [LKA000010] 2017 Sure-Trac Tilt Bed |
| EQUIPMENT | 01/01/2018 | John Deere 2038R Compact Utility Tractor |
| EQUIPMENT | 03/07/2018 | Brushless Drill/Impact Kit |
| EQUIPMENT | 03/21/2018 | 2 FI1000-TIP-KITs from Graybar |
| EQUIPMENT | 04/10/2018 | Post Driver Tracks |
| EQUIPMENT | 05/05/2018 | 6 Bay Charger & Impact Kit |
| EQUIPMENT | 05/09/2018 | Checkers Industrial Safety (Graybar) |
| EQUIPMENT | 05/16/2018 | Magnetic Drill |
| EQUIPMENT | 07/06/2018 | Solar Tools |
| EQUIPMENT | 08/21/2018 | High capacity 1/2" to 4" Kit |
| EQUIPMENT | 09/26/2018 | WEIGHTANKA non-penetrating mobile deadweight anchor system |
| EQUIPMENT | 10/11/2018 | Starter kit & Impact Ring |
| EQUIPMENT | 10/11/2018 | Misc tools |
| EQUIPMENT | 10/11/2018 | 2 Gate Foot Pins |
| EQUIPMENT | 11/29/2018 | Electric Scissor Lift |
| EQUIPMENT | 01/25/2019 | Skyjack Scissor Lift |
| EQUIPMENT | 01/30/2019 | Dell Computer |
| EQUIPMENT | 02/07/2019 | Hammer KF9 |
| EQUIPMENT | 02/20/2019 | IMR - GRT Machinery |
| EQUIPMENT | 06/26/2019 | IMR Equipment |
| EQUIPMENT | 09/18/2019 | NEW TRAILER PURCHASED BY KIP |
| EQUIPMENT | 04/01/2021 | Solar Tools |
| EQUIPMENT | 10/31/2021 | Liberty Equipment |
| EQUIPMENT | 12/01/2021 | GRT Post Driver - KF9 Hammer |
| EQUIPMENT | 07/01/2023 | 2 Rotary Drills + bits |
| EQUIPMENT | 07/15/2023 | Mamava |
| EQUIPMENT | 10/01/2023 | Liberty Electric - Equipment |
| **Grand totals:  2 ( 43 assets )** | | |
| Debt Issue Costs | 07/30/2019 | NBT Refinancing Fees |
| **Grand totals:  8 ( 1 asset )** | | |
| **Grand totals for all assets:  ( 149 assets )** | | |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

3.    All inventory and equipment owned by Sellers associated with (i) the projects and Contracts identified under the heading "Industrial and Commercial Contracted Backlog" and "O&M Contracts (Active and Contract Finance)" and (ii) the SunCommon division of the Business, including the following:

| Item | Description |
| --- | --- |
| AE3TL16-6 | 16KW-500V 3PH string inverter, AFCI, US |
| AE3TL20-6 | 20KW-500V 3PH string inverter, AFCI, US |
| APA - 488 Truss Kit | APA - Truss Kit - 2 foundations per Truss Front post, rear post, cross brace tube, Cee Channel and truss kit bags. |
| APSmart Rapid Shutdown - RSD-S-PLC | APSmart Rapid Shut Down PLC 1000V UL/TUV, 0.25m input/1.2m output cable, MC4 original, Mounting brackets To be used with Fronius Symo Advanced, Yaskawa/Solectria and other Certified compatible SunSpec protocol inverters. |
| CANADIAN SOLAR 395 Bifacial | CANADIAN SOLAR 395 Bifacial |
| ConnectDER - 20a | ConnectDER 20A |
| ConnectDER - 30a | ConnectDER 30A |
| ConnectDER - 40a | ConnectDER 40A |
| ConnectDER - 50a | ConnectDER 50A |
| ConnectDER - 60a | ConnectDER 60A |
| ConnectDER - 70a | ConnectDER 70A |
| Enphase - Cell Modem | ENP MOBILE CONNECT LTE 5 YR PLAN |
| Enphase - IQ Envoy (ENV2-IQ-AM1-240) | Enphase X2 IQ Envoy, single phase, metered. Complies with IEEE 1547:2018 (UL 1741-SB, 3rd Ed.) |
| Enphase - Microinverter - IQ7 Plus | Enphase IQ 7+ microinverter, 295VA peak power, MC4 DC connectors.  Generally matches to 235 - 440W modules. |
| Enphase - Microinverter - IQ7A | Enphase IQ 7+ microinverter, 295VA peak power, MC4 DC connectors.  Generally matches to 235 - 440W modules. |
| Enphase - Microinverter - IQ8 Plus | Enphase IQ 8+ microinverter  300VA 240V 60/72C MICRO |
| Enphase - Microinverter - IQ8A | Enphase IQ 8A microinverter. 366VA 240V 60/72C MICRO |
| Enphase - Microinverter - IQ8M | Enphase IQ 8M microinverter  330VA 240 / 211 – 264V  54-cell / 108 half-cell, 60-cell / 120 half-cell, 66-cell / 132 half-cell and 72-cell / 144 half-cell |
| Enphase - X2 IQ Envoy W/ Combiner 4 and CT (UL1741SB) | UL1741SB certified  Enphase IQ Envoy Combiner 4, single phase, metered.  (Use with IQ8s) |
| EV Charger - Charge Point Home Flex 25' - 32a | ChargePoint Home Flex Electric Vehicle (EV) Charger upto 50 Amp, 240V, Level 2 WiFi Enabled EVSE, UL Listed, Energy Star, NEMA 6-50 Plug or Hardwired, Indoor/Outdoor, 23-Foot Cable |

## SunCommon Operating Inventory (con't)

| Item | Description |
|------|-------------|
| EV Charger - Clipper Creek HCS-40 - 32a | Sold with 25ft Cable CLIPPERCREEK 0918-00-003 |
| EV Charger - Span Drive | Span Drive EV charger: input/output: 208-240v, 48a, 50/60hz 1/0. Type 3R enclosure. indoor outdoor use. operating temp -22F to 122F. |
| EV Charger - Tesla 18' cable | Model S/X/3 Wall Connector..18' Cable |
| Froni Rapid Shutdown - Duo | NEW FRONIUS RSD - works with all snapinverters except symo 15 208. Only works up to 600V, single... |
| Froni Rapid Shutdown - Single | |
| Galvo 3.1-1 | Fronius Galvo 3.1-1 Inverter. Includes: DATAMAN 2.0 and latest firmware update |
| Ground Screw - Canopy | Bayo-SGround screw with set screws for Ironridge ground mount or Canopy. Screw Hex 160 M16 76x2050 |
| Ground Screw - Standard Ground Mount | Ground screw 76x2000x3.75mm - 138 per pallet  Model 3 (3" x 79") |
| Ironridge - XR-100-168B - Black | IRONRIDGE XR-100-168B 168" (14FT) |
| LG Neon 315 N1C-G4 | LG 315W Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 320 Black | LG 320W Mono N-Type 60 cell All Black  solar module. 40mm frame thickness. LG320N1K-A5 |
| LG Neon2 330 | LG 330W Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 345 | LG 345W Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 350 | LG 350W Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 370 | LG-370N1C-A6 Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 380 | LG-380N1C-A6 Mono N-Type 60 cell solar module. 40mm frame thickness |
| LG Neon2 400 Bifacial | LG 400W Mono N-Type 72 cell solar module. Bifacial, Silver Frame,  40mm frame thickness |
| LG Neon2 405 Bifacial | LG 405W Mono N-Type 72 cell solar module. Bifacial, Silver Frame,  40mm frame thickness - LG-405N2T-L5 |
| LG NeonH 435 Bifacial | LG 435W Mono N-Type 72 cell solar module. Bifacial, Silver Frame,  40mm frame thickness - LG435N2T-E6 |
| LG NeonH 440 Bifacial | LG 440W Mono N-Type 72 cell solar module. Bifacial, Silver Frame,  40mm frame thickness - LG440N2T-E6 |
| LG NeonH 455 72 (144) - Cell | LG 455W Mono N-Type 72 cell solar module. White Back Sheet, Silver Frame,  40mm frame thickness - LG455N2W-E6 |
| LG NeonR 375 | LG 375W Mono 60 cell solar module. 40mm frame thickness |
| LG NeonR 380 BLK | LG 380W Mono N-Type 60 cell solar module. 40mm frame thickness black backsheet |
| LG NeonR 395 | LG 395W Mono 60 cell solar module. 40mm frame thickness |
| LG NeonR 425 BLK | LG 425W Mono 66 cell solar module. 40mm frame thickness |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## SunCommon Operating Inventory (con't)

| Item | Description |
|------|-------------|
| LG NeonR 435 | LG 435W Mono 66 cell solar module. 40mm frame thickness |
| LG265 | LG265 legacy modules |
| LG280 | LG280 legacy modules |
| Longi LR4-360 | Longi Black on White Solar Module, black 35mm frame - 320W LR4-60HPH 360.   1.2m cables with MC4 or MC4-EVO2 connectors. |
| Longi LR6-320 | Longi Black on White Solar Module, black 35mm frame - 320W LR6-60HPH 320.   1.2m cables with MC4 or MC4-EVO2 connectors. |
| MCI/RSD for PW PLUS & PVI | Tesla MCI/RSD 650V 12A 1879359-00-B |
| Q PEAK 400 DUO BLK ML-G10+ | 400 W, 132 half-cut cell monocrystalline module, black backsheet, 1000V or 1500V max system 48.5 lbs/mod |
| Q PEAK 405 DUO BLK ML-G10+ | 405 W, 132 half-cut cell monocrystalline module, black backsheet, 1000V or 1500V max system 48.5 lbs/mod |
| Q PEAK 410 DUO ML-G10+ | 410W, 132 monocrystalline Q.ANTUM solar half cells, White backsheet, 1,000V max system. 48.5 lbs/mod. 32 per pallet |
| Q PEAK 430 DUO L G6.2 | 430 Watt, Q PEAK 430 DUO L-G6.2 - 72 cell |
| Q PEAK 475 DUO XL G10.2 | 475 Watt, Q PEAK 475 DUO XL-G10.2 2216 mm × 1045 mm × 35 mm white backsheet, 1000V or 1500V max system |
| Q PEAK 475 DUO XL G10.3 BFG | 475 Watt, Q PEAK 475 DUO XL-G10.3 BFG  6 × 26 monocrystalline Q.ANTUM solar half cells Bifacial |
| Q PEAK 485 DUO XL G10.3 BFG | 485 Watt, Q PEAK 485 DUO XL-G10.3 2216 mm × 1045 mm × 35 mm bifacial, 1000V or 1500V max system 64.2 lbs/mod 29 per pallet |
| Q Peak Duo 340 - G6+ BLK - Tesla | Tesla Solar provided Q Cell Q. Peak 340 G6+ Black modules |
| Q PEAK DUO L G5 - 385 | 385 Watt, Q.Peak Duo L G5 module - 72 cell |
| Q PEAK DUO L G5 - 395 | 395 Watt, Q.Peak Duo L G5 module - 72 cell |
| Q PEAK DUO XL G10 BFG 480W | 480 Watt, Q PEAK 480 DUO XL-G10 BFG  6 × 26 monocrystalline Q.ANTUM solar half cells Bifacial 64.2 lbs/mod |
| Q TRON 425 BLK M-G2+ | 425 W, 108 Cell - 6 × 18 Monocrystalline Q.ANTUM NEO solar half cells. Black anodised aluminium Frame 46.7 lbs/mod 36 per pallet |
| Q.PLUS L-G4.2 345 | Q.plus L G4.2 345W module |
| REC350TP2S 72 | 350W REC Polycrystalline Module 72 cell, (2005 mm×1001 mm×30 mm) |
| REC375TP2S 72 | 375W REC Monocrystalline Module 72 cell, (2005 mm×1001 mm×30 mm) |
| REC385TP2SM 72 | 385W REC Monocrystalline Module 72 cell, (2005 mm×1001 mm×30 mm) |
| REC440 Alpha 72 | 440W REC Alpha Series - Monocrystalline Module 72 cell HJT |
| SE P1101 | Solaredge P1101 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-CELL-B-R0 5-S-S2 | Zigbee Wireless Module with External Antenna- Master(coordinator) and Slave for SetApp Inverter's |

## SunCommon Operating Inventory (con't)

| Item | Description |
| --- | --- |
| SE-P300 | Optimizer 300W/48V, Input-MC4-Compatible; |
| SE-P320 | SolarEdge Power Optimizer. P320. |
| SE-P340 | SOLAREDGE P340, 340 WATT SE OPTIMIZER |
| SE-P370 | SOLAREDGE P370, 370 WATT SE OPTIMIZER |
| SE-P400 OPT | SOLAREDGE P400-2NM4ARM 400 WATT SE OPTIMIZER |
| SE-P401 | SOLAREDGE P401 SE OPTIMIZER |
| SE-P485 | SolarEdge Power Optimizer. P485 |
| SE-P505 | SolarEdge Power Optimizer. P505 |
| SE-P700 | Solaredge P700 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-P730 | Solaredge P730 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-P800s | Solaredge P800 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-P860 | Solaredge P860 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-P960 | Solaredge P960 optimizer for two, 72-cel modules. MC4 compatible - for use with 3P inverters. |
| SE-ZBGW-B-S1-NA | Zigbee Wireless Module with External Antenna- Leader and Follower for SetApp Inverter's |
| SE-ZBSLV-B-S1-NA | Zigbee Wireless Module with External Antenna-  Follower unit Only for SetApp Inverter's |
| SE1000-ZBGW-K5-NA (Legacy - Service use only) | Zigbee Wireless Module with External Antenna- Master(coordinator) and Slave |
| SE11400 H-US | SOLAREDGE SE11400SV 11.4 KW SINGLE PHASE INVERTER |
| SE3000 H-US | SOLAREDGE SE3000 HUS SINGLE PHASE INVERTER w/AC RSD |
| SE3800 H-US | SOLAREDGE SE3800 HUS SINGLE PHASE INVERTER w/AC RSD |
| SE5000 H-US | SOLAREDGE SE5000 HUS SINGLE PHASE INVERTER w/AC RSD |
| SE6000 H-US | SOLAREDGE SE6000 HUS SINGLE PHASE INVERTER w/AC RSD |
| SE7600 H-US | SOLAREDGE SE7600H-US..SINGLE PHASE INVERTER |
| SMA - Cell Modem | CELLULAR LTE MODEM 5YR PLAN |
| SMA - Wifi Extender | WIFI EXTENSION KIT X.0-40 & -22 |
| SMA SB 3.0 | Sunny Boy 3.0-US w/integrated DC Disconnect, LCD, Grey Lid, AFCI, 208 & 240VAC; SunSpec Compliant. |
| SMA SB 5.0 | Sunny Boy 5.0-US w/integrated DC Disconnect, LCD, Grey Lid, AFCI, 208 & 240VAC; SunSpec Compliant. |
| SMA SB 6.0 | Sunny Boy 6.0-US w/integrated DC Disconnect, LCD, Grey Lid, AFCI, 208 & 240VAC; SunSpec Compliant. |
| SMA SB 7.0 | Sunny Boy 7.0-US w/integrated DC Disconnect, LCD, Grey Lid, AFCI, 208 & 240VAC; SunSpec Compliant |
| SMA SB 7.7 | Sunny Boy 7.7-US w/integrated DC Disconnect, LCD, Grey Lid, AFCI, 208 & 240VAC; SunSpec Compliant. |
| SnapNRack - UR40 Rail - 172 Mill | SNAPNRACK, UR-40 RAIL, 172IN, Mill |

## SunCommon Operating Inventory (con't)

| Item | Description |
|------|-------------|
| SnapNRack - UR40 Rail - 172" - Black | SNAPNRACK, UR-40 RAIL, 172IN, BLACK |
| SOLIS - Cell Stick - 4 Pin | SOLIS PLUG IN Cell COM STICK - 4 PIN STYLE |
| SOLIS - Wifi Stick - 4 Pin | SOLIS PLUG IN WIFI COM STICK - 4 PIN STYLE |
| SOLIS 10K-4G | SOLAR INVTR 10KW SNGL PH 4 MPPT WITH TIGO RSD TRANSMITTER |
| SOLIS 3.6K-4G | SOLAR INVTR 3.6K SNGL PH DUAL MP WITH TIGO RSD TRANSMITTER |
| SPAN - 225A - SmartMSP | SPAN Smart MSP Integrated grid disconnect relay Revenue accurate energy monitoring 100 - 200A main breaker 225A bussing |
| SPR-320WHT | 320 Watt, SPR-E19-320- C2C AR-S5 M5 B1 YUK |
| SPR-327 | residential 360watt sunpower module. White back sheet. Black frame |
| Sunpreme GxB 370W Bifacial | Sunpreme Maxima GxB 370W Bifacial Module - Frameless |
| Sunpreme GxB 380W Bifacial | Sunpreme Maxima GxB 380W Bifacial Module - Frameless |
| Tesla - Battery Backup Gateway 2 | Sold with Tesla Powerwall 2. |
| Tesla 7.6kw Solar Inverter | Tesla Solar Inverter 7.6Kw  Single Phase To be used with RSD |
| Tesla Powerwall 2 | Tesla Powerwall 2. |
| Tesla Powerwall 3 | Tesla Powerwall 3 w/ integrated inverter |
| Tesla T400H | 400 W, 132 half-cut cell monocrystalline module, black backsheet, 1000V or 1500V max system |
| Timberframe 3.0 - Mini Unit incl. Q-Cell Rafters | Douglas fir wooden components of an entire mini single frame solar canopy.  Inventory item for ordering and tracking.  2022 - Q.peak 475 Version |
| Timberframe 3.0 - Single Unit incl. Q-Cell Rafters | Douglas fir wooden components of an entire single frame solar canopy.  Inventory item for ordering and tracking.  2022 - Q.peak 475 Version |
| Trina TSM 380 72 Cell | TSM-380DE14A(II) PERC MONO - Mono TALL MAX PLUS 380 72 cell solar module, Silver Frame,  40mm frame thickness |

4.      All furniture, fixtures and equipment associated with the SunCommon division of the Business, including the following:

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Furniture and Fixtures | 01/12/2012 | Office funiture |
| Furniture and Fixtures | 01/24/2012 | Chairs for the office |
| Furniture and Fixtures | 07/01/2012 | Duane- picnic table and bench |
| Furniture and Fixtures | 09/07/2012 | Office Desks |
| Furniture and Fixtures | 05/07/2015 | Outdoor furniture |
| Furniture and Fixtures | 04/15/2016 | Office Furniture |
| Furniture and Fixtures | 05/16/2016 | Deposits on tables for Waterbury building |
| Furniture and Fixtures | 05/16/2016 | Kitt Clark - Kitchen Tables |
| Furniture and Fixtures | 05/31/2016 | Wood&Wood - Building Signs |
| Furniture and Fixtures | 09/27/2016 | FireProTec - Fire Exit Signs |
| Furniture and Fixtures | 12/01/2016 | Red Thread - Furniture |
| Furniture and Fixtures | 02/01/2017 | Hard casters on chairs |
| Furniture and Fixtures | 06/08/2017 | Picnic tables for staff |
| Furniture and Fixtures | 10/26/2017 | (2) Samsung 40" LED TV's w/mount |
| Furniture and Fixtures | 05/16/2018 | Additional chairs & stools |
| Furniture and Fixtures | 03/28/2019 | Desk reinforcement |
| Furniture and Fixtures | 06/14/2022 | Road Sign for New York Offic |

**Grand totals:  15200 ( 17 assets )**

| | | |
|---|---|---|
| Leasehold Improvements | 03/06/2012 | Office Flooring |
| Leasehold Improvements | 03/23/2012 | Office Fit-up (Gristmill Builders) |
| Leasehold Improvements | 01/27/2013 | Crestone Accoustical Soultions |
| Leasehold Improvements | 09/23/2013 | Crestone Accoustical Soultions |
| Leasehold Improvements | 05/16/2016 | Marclay Architects - building design |
| Leasehold Improvements | 05/19/2016 | Cushman - Interior Design |
| Leasehold Improvements | 07/27/2016 | Gotham City - Interior decorating/design |
| Leasehold Improvements | 09/27/2016 | Gordons - Interior decorating for building |
| Leasehold Improvements | 10/10/2016 | Malone Prop - curbing on office building |
| Leasehold Improvements | 12/09/2021 | Color Craft Painting, Inc |
| Leasehold Improvements | 01/11/2022 | Replace Security System with Updated Materials |
| Leasehold Improvements | 01/24/2022 | Galaxy Solstice Cherry Laminate Flooring & Installation |
| Leasehold Improvements | 05/04/2022 | Warehouse Kitchen build-out |
| Leasehold Improvements | 07/01/2022 | Deposit for Kingston Office Work |
| Leasehold Improvements | 07/14/2022 | Pave Apron at 442 US Rt 2, Waterbuty |
| Leasehold Improvements | 09/23/2022 | Canopy at 442 US Route 2, Waterbury |

**Grand totals:  15300 ( 16 assets )**

| | | |
|---|---|---|
| Capitalized Software Costs | 07/25/2018 | JI Exacttime software updated |
| Capitalized Software Costs | 12/31/2018 | Boomi License fees related to Netsuite |
| Capitalized Software Costs | 01/01/2019 | NetSuite consulting setup costs for week Ending 12/21 |
| Capitalized Software Costs | 01/01/2019 | NetSuite consulting setup costs for week Ending 12/28 |
| Capitalized Software Costs | 01/01/2019 | Capitalized Netsuite Software Costs |
| Capitalized Software Costs | 01/04/2019 | Netsuite consulting setup costs for week Ending 01/04/19 |
| Capitalized Software Costs | 01/11/2019 | Netsuite consulting setup costs for week Ending 1/11/19 |
| Capitalized Software Costs | 01/18/2019 | Netsuite consulting setup costs for week Ending 1/18/19 |
| Capitalized Software Costs | 01/20/2019 | Netsuite |
| Capitalized Software Costs | 04/08/2019 | $19,875 already paid on this PO in 2018 (quickbooks) - please pay just the remainder as per invoice |
| Capitalized Software Costs | 05/27/2019 | Quarterly Planning & Budgeting cloud service software |
| Capitalized Software Costs | 05/29/2019 | Activation for Planning & Budgeting tool |
| Capitalized Software Costs | 08/22/2019 | Quarterly Planning & Budgeting cloud service software |
| Capitalized Software Costs | 11/19/2019 | Quarterly Planning & Budgeting cloud service software |

**Grand totals:  15450 ( 14 assets )**

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Trailers | 04/16/2012 | Trailers |
| Trailers | 07/16/2014 | New trailer: VIN: 542BC2+3XFB008932 |
| Trailers | 07/16/2014 | New Trailer: VIN 542BC1621FB008933 |
| Trailers | 04/03/2015 | 2014 Bravo Star ST716TA2: For roof installations |
| Trailers | 04/03/2015 | 2014 Bravo Star ST716TA2 |
| Trailers | 04/03/2015 | 2014 Bravo Star ST716TA2 |
| Trailers | 04/30/2015 | 2014 Bravo Star ST716TA2 |
| Trailers | 03/31/2017 | WH trailer delivery truck- 1GCOKUEG8HZ193240 |
| Trailers | 03/31/2017 | WH trailer delivery truck - 1GCOKUEG5HZ195785 |
| Trailers | 04/10/2017 | Flatbed trailer ASC885 |
| Trailers | 04/19/2017 | Flatbed trailer ASC890 |
| Trailers | 09/05/2017 | Trailer Wrap x2 |
| Trailers | 11/01/2017 | 2014 Bravo Star ST716TA2 |
| Trailers | 11/01/2017 | 2014 Bravo Star ST716TA2 |
| Trailers | 05/18/2018 | Trailer Heavy 2015 |
| Trailers | 11/30/2018 | Suncommon Trailer |
| Trailers | 02/05/2019 | Ladder rack and towing tools for christians Truck |
| Trailers | 05/20/2019 | Trailer purchase |
| Trailers | 07/30/2019 | Purchased trailer 2019 Felling FT-14-IT-1 VIN#%FTBE2724K2002098 |
| Trailers | 09/30/2020 | Trailer for RBK Drill Team (Kubota, Skid Steer) |
| Trailers | 04/06/2021 | Trailer for Drill Team VT - VIN 50PAT222XML001590 |
| Trailers | 05/18/2022 | 2022 Belmont Equipment Trailer 50PAT222XNL004717 |
| Trailers | 07/10/2022 | Trailer Wrap |
| Trailers | 07/11/2022 | Trailer Wrap |
| Trailers | 07/26/2022 | Trailer Wrap |
| Trailers | 07/26/2022 | Trailer Wrap |
| Trailers | 09/01/2022 | #25, delivered Sept. '22 |
| Trailers | 09/14/2022 | #26, delivered Sept. '22 |
| Trailers | 09/28/2022 | Trailer 27 |
| Trailers | 11/09/2022 | Trailers - Perfection Auto Parts |
| Trailers | 05/19/2023 | Wrap Trailer #2 |
| Trailers | 05/26/2023 | Wrap 16' Trailer |
| Trailers | 07/27/2023 | Wrap 16' Trailer |
| Trailers | 09/14/2023 | Bravo Star Contrator Trailer (Perfection) VIN 999999990001 |
| Trailers | 09/14/2023 | Bravo Star Contrator Trailer (Perfection) SN-542BC1625RB044290 |
| Trailers | 09/14/2023 | Bravo Star Contrator Trailer (Perfection) VIN999999990001 |
| Trailers | 09/15/2023 | Bravo Star Contrator Trailer (Perfection) |
| Trailers | 09/15/2023 | Bravo Star Contrator Trailer (Perfection) |
| Trailers | 09/15/2023 | Bravo Star Contrator Trailer (Perfection) |
| Trailers | 09/15/2023 | Bravo Star Contrator Trailer (Perfection) |
| Trailers | 09/15/2023 | Bravo Star Contrator Trailer (Perfection) |
| Trailers | 09/21/2023 | Bravo Star Contrator Trailer (Perfection) |

**Grand totals:  15500 ( 42 assets )**

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Vehicles | 06/09/2022 | Wrap for Chevy Colorado |
| Vehicles | 08/01/2023 | Cap for 2019 Chevy Colorado VIN7242 |
| Vehicles | 08/18/2023 | Advantage Outfitters Llc - Shelving Unit for Skylar's ESS Van |
| **Grand totals: 15800 ( 101 assets )** | | |
| Loan Costs | 05/29/2015 | VEDA Loan Costs |
| Loan Costs | 05/29/2015 | VCLF Loan Costs |
| **Grand totals: 17050 ( 2 assets )** | | |
| Investment in PoP Net Metering | 11/12/2020 | Point of Praise Net Metering Modules |
| **Grand totals: 17060 ( 1 asset )** | | |
| Investment in Taste Place EV Charger | 09/23/2020 | EV Taste Place Charging Station |
| **Grand totals: 17070 ( 1 asset )** | | |
| Intangibles | 01/01/2022 | Intangibles - Backlog of Projects |
| Intangibles | 01/01/2022 | Intangibles - Brand & Trademark |
| **Grand totals: 17090 ( 2 assets )** | | |
| Goodwill | 01/01/2013 | VPRIG Intellectual Property & Goodwill |
| **Grand totals: 17100 ( 1 asset )** | | |
| Trademark | 03/01/2012 | Trademark |
| Trademark | 06/04/2013 | Trademark Filing Fee |
| **Grand totals: 17200 ( 2 assets )** | | |

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Computer Equipment | 01/09/2013 | MacBook Pro 13 in 2.5GHz and Fujitsu SCANSNAP s1500M for USB Scanner |
| Computer Equipment | 10/01/2013 | MacBook Pro 13 in 2.5 GHz Invoice #946608 |
| Computer Equipment | 02/05/2014 | MacBook Pro for new hire, Apple Care, Monitor, Mouse |
| Computer Equipment | 04/08/2014 | New laptop for Tim |
| Computer Equipment | 04/08/2014 | New laptop for Jacob |
| Computer Equipment | 04/21/2014 | 3 New MacBook Pros + Applecare |
| Computer Equipment | 04/23/2014 | Mac Mini Ser#SC07MC039DWYL |
| Computer Equipment | 04/30/2014 | MacBook Pro for Storyteller |
| Computer Equipment | 04/30/2014 | MacBook Pro Ser# SCPWM49R7DTY3 |
| Computer Equipment | 05/20/2014 | Memory upgrade for 20 machines |
| Computer Equipment | 05/28/2014 | MacBook Pro 13 in 2.5 GHz i5 4GB/500GB |
| Computer Equipment | 06/09/2014 | Magsafe adapter and converter |
| Computer Equipment | 06/09/2014 | Purchase and install 16 RAM mods |
| Computer Equipment | 06/20/2014 | MacBook Pro 13 in 2.5 GHz i5 4 GB/500GB |
| Computer Equipment | 07/15/2014 | Mac mini |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 08/01/2014 | 7 new MacBook Pro's |
| Computer Equipment | 10/06/2014 | 2 mac books & add ons |
| Computer Equipment | 10/26/2014 | ipad- serial #SDMPLX3KKJF4YJ |
| Computer Equipment | 11/01/2014 | Mini mac S/N C07NM1V VG1J1 |
| Computer Equipment | 11/01/2014 | Mini mac S/N C07NM1HVG1H1 |
| Computer Equipment | 11/01/2014 | Mini mac S/N C07NM1R7G1J1 |
| Computer Equipment | 11/01/2014 | iPad S/N SDMPLXHZVF4YJ |
| Computer Equipment | 11/01/2014 | iPad S/N SDMPLXJGWF4YJ |
| Computer Equipment | 11/01/2014 | Mini mac s/n SC07MMBP4DWYL |
| Computer Equipment | 11/01/2014 | Monitor s/n T1Y143480592 |
| Computer Equipment | 11/01/2014 | Monitor s/n T1Y143480727 |
| Computer Equipment | 11/01/2014 | Monitor s/n T1Y143480587 |
| Computer Equipment | 11/01/2014 | Monitor s/n T1Y143480875 |
| Computer Equipment | 11/01/2014 | Monitor s/n T1Y143480871 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SDLXNL9Y1G5YN |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SDLXNL9Y1G5YN |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN51D9DTY3 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN3UNQDTY3 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN58VADTY3 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN5J1DTY3 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN5HYGDTY3 |
| Computer Equipment | 11/03/2014 | Ipad/Macbook serial # SC1MN5J25DTY3 |
| Computer Equipment | 11/13/2014 | RUKUS 1100 WiFi Controller, Rukus ZF R700 |
| Computer Equipment | 11/24/2014 | Mac mini s/n C07NROPOG1J1 |
| Computer Equipment | 12/15/2014 | Serial #SC1MNL1T3DTY3 mac book |
| Computer Equipment | 12/15/2014 | Monitor serial #T1Y143860026 |
| Computer Equipment | 12/15/2014 | Montior serial #t1Y143860039 |
| Computer Equipment | 12/15/2014 | Monitor serial # T1Y143860094 |
| Computer Equipment | 12/23/2014 | iMac 27 inch |
| Computer Equipment | 12/26/2014 | Serial #542BC1624FB011115 |
| Computer Equipment | 12/26/2014 | Serial #542BC1627FB011142 |
| Computer Equipment | 12/26/2014 | Serial #452BC1626FB011116 |
| Computer Equipment | 02/03/2015 | Sn SC02NV58EG3QC design |
| Computer Equipment | 02/26/2015 | 13 in MacBook Pro sn: C1mn8cfkdty3 |
| Computer Equipment | 02/26/2015 | 13 in MacBook Pro sn: c1mn8cp8dty3 |
| Computer Equipment | 02/26/2015 | Two Viewsonic VA2451m monitors |
| Computer Equipment | 03/23/2015 | Network Hardware |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Computer Equipment | 04/20/2015 | 13 in MacBook Pro sn: CPWNF2QXDTY3 |
| Computer Equipment | 05/14/2015 | S/n S42BA0814FB012348 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP3ROZDTY3 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP6S2XDTY3 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP3R1NDTY3 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP6S0GDTY3 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP6S2JDTY3 |
| Computer Equipment | 05/27/2015 | MacBook Pro SC1MP6S2XDTY3 |
| Computer Equipment | 05/31/2015 | CCM card-Printers and toner for Advisors |
| Computer Equipment | 06/03/2015 | S/N SC02PLKSL8WN |
| Computer Equipment | 06/05/2015 | SN SC1MNDJ52DTY3 |
| Computer Equipment | 06/05/2015 | SN SDLXP4D4GG5YP iPad |
| Computer Equipment | 06/05/2015 | Monitors T1Y144461788, T1Y144461791 |
| Computer Equipment | 03/23/2016 | Comcast New Service for Building |
| Computer Equipment | 06/17/2016 | Small Dog - 3 15" Mackbook Pro |
| Computer Equipment | 09/01/2016 | PC - Connection |
| Computer Equipment | 09/30/2016 | IT Cell boost Tower |
| Computer Equipment | 10/10/2016 | PC Connection - IT supplies |
| Computer Equipment | 11/29/2016 | Small Dog - Ipad Pro |
| Computer Equipment | 11/30/2016 | All Links - Warehouse Camera's |
| Computer Equipment | 01/19/2017 | 2 new MacBooks with AppleCare |
| Computer Equipment | 02/14/2017 | Fork lift charger & garage door openers |
| Computer Equipment | 02/27/2017 | MacBook Pro x2 |
| Computer Equipment | 03/14/2017 | MacBook Pro x2, Ipad x2 |
| Computer Equipment | 05/05/2017 | MacBook Pro, AppleCare |
| Computer Equipment | 05/22/2017 | MacBook Pro x3, Applecare |
| Computer Equipment | 06/14/2017 | MacBook Pro @5 |
| Computer Equipment | 07/11/2017 | MacBook Pro & Office for Mac |
| Computer Equipment | 11/15/2017 | 2 MacBook Pro, Office '16 x5 |
| Computer Equipment | 12/18/2017 | MacBook Pro 15in + AppleCare |
| Computer Equipment | 01/08/2018 | (2) Macbooks & applecare w/power adaptors |
| Computer Equipment | 05/01/2018 | Macbook Pro & applecare |
| Computer Equipment | 06/13/2018 | (5) Microsoft Office Home & Student software |
| Computer Equipment | 06/13/2018 | (2) Macbook Pro, Microsoft office & Applecare |
| Computer Equipment | 06/13/2018 | MacBook Pro 15in Retina Ser#SC02WM542G8WN & Applecare S |
| Computer Equipment | 06/13/2018 | (2) MacBook Pro 15in Retina & Applecare Ser#C02WP214G8WN & C02WR3J4G8WN |
| Computer Equipment | 07/12/2018 | MacBook Pro 15in Retina Ser#SC02WX0P4G8WN & Applecare S |
| Computer Equipment | 07/12/2018 | MacBook Pro 15in Retina Ser#SC02WX0P2G8WN & Applecare S |
| Computer Equipment | 07/12/2018 | MacBook Pro 15in Retina Ser#SC02WX12PG8WN & Applecare S |
| Computer Equipment | 07/16/2018 | MacBook Pro 15" Ser#SC02WW0DMG8WN w/Applecare |
| Computer Equipment | 07/16/2018 | MacBook Pro 15" Ser#SC02WW0JBG8WN w/Applecare |
| Computer Equipment | 07/16/2018 | MacBook Pro 15" Ser#SC02WV24ZG8WN w/Applecare |
| Computer Equipment | 07/16/2018 | MacBook Pro 15" Ser#SC02WW0A6G8WN w/Applecare |
| Computer Equipment | 07/16/2018 | DP DesignJet T120 24" Printer w. Ink Cartridges |
| Computer Equipment | 07/31/2018 | MacBook Pro 15in Ser#SC02WW0A1G8WN |
| Computer Equipment | 07/31/2018 | MacBook Pro 15in Ser#SC02WX0YCG8WN |
| Computer Equipment | 09/19/2018 | Macbook Pro 15In Retina Ser#SC02WX110G8WN w/Applecare |
| Computer Equipment | 09/19/2018 | Macbook Pro 15in Retina Ser#SC02WT1J2G8WN w/Applecare |
| Computer Equipment | 09/19/2018 | Macbook Pro 15In Retina Ser#SC02WT4SCG8WN w/Applecare |
| Computer Equipment | 10/01/2018 | MacBook Pro 13in Ser#SFVFX827HHV2H w/Applecare |
| Computer Equipment | 10/01/2018 | MacBook Pro 13in Ser#SFVFX8299HV2H w/Applecare |
| Computer Equipment | 10/31/2018 | (2) Macbook Pros & applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 15in Retina Ser#SC02WX15KG8WN & Applecare S |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in 2.3GHz Ser#FVFX32XAHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in 2.3GHz Ser#SFVFX32TQHV2H w/Applecare |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Computer Equipment | 10/31/2018 | MacBook Pro 13in 2.3GHz Ser#SFVFX32XEHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in 2.3GHz Ser#SFVFX32XKHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | Macbook Pro 15In Retina Ser#SC02WR3PCG8WN w/Applecare |
| Computer Equipment | 10/31/2018 | Macbook Pro 15In Retina Ser#SC02WX148G8WN w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in Ser#FVFXF1ADHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in Ser#FVFXF19MHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in Ser#FVFXF19WHV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in Ser#FVFXF191HV2H w/Applecare |
| Computer Equipment | 10/31/2018 | MacBook Pro 13in Ser#SFVFX829FHV2H w/Applecare |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYT2FTHV2H |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYT2FEHV2H |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYT2DWHV2H |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYR2TTHV2H |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYT2E4HV2H |
| Computer Equipment | 06/11/2019 | MacBook Pro 13in w/Applecare Ser#FVFYT2FUHV2H |
| Computer Equipment | 09/11/2019 | Macbook Pro 13" Lap #FVFZ92R8L414 plus apple care |
| Computer Equipment | 09/11/2019 | MacBook Pro 13" Lap #FVFZ92R6L414 plus apple care |
| Computer Equipment | 09/11/2019 | Macbook Pro 13" Lap #FVFZ92TAL414 plus apple care |
| Computer Equipment | 09/11/2019 | Macbook Pro 13" Lap #FVFZ92S6L414 plus apple care |
| Computer Equipment | 09/18/2019 | MacBook Pro 13in w/Applecare Ser#FVFZF0CQL414 |
| Computer Equipment | 09/18/2019 | MacBook Pro 13in w/Applecare Ser#FVFZD2STL414 |
| Computer Equipment | 09/18/2019 | MacBook Pro 13in w/Applecare Ser#FVFZF058L414 |
| Computer Equipment | 09/18/2019 | MacBook Pro 13in w/Applecare Ser#FVFZD2WRL414 |
| Computer Equipment | 12/10/2019 | MacBook Pro 16in w/Applecare Ser#C02ZT9JHMD6R |
| Computer Equipment | 12/10/2019 | MacBook Pro 16in w/Applecare Ser#C02ZT9MXMD6R |
| Computer Equipment | 12/13/2019 | Macbook Pro 16" Lap C02ZT9JHMD6R plus apple care |
| Computer Equipment | 12/13/2019 | Macbook Pro 16" Lap C02ZT9MXMD6R plus apple care |
| Computer Equipment | 01/03/2020 | Vonage Phone system |
| Computer Equipment | 02/11/2020 | 16" MBP 2.6GHz 6-core 9th-generation Intel Core i7 processor AMD Radeon Pro 5300M with 4GB of GDDR6 memory 16GB |
| Computer Equipment | 02/24/2020 | 5x Macbooks |
| Computer Equipment | 02/25/2020 | 2 x MacBook Pro 16in w/Touch Bar 2.6GHz i7 6-core or 2.4GHz 8-Core i9 - Space Gray CTO 2.6GHz 6-core Intel Core i7, Turbo |
| Computer Equipment | 02/29/2020 | To record new macbook for RBK paid by WBY |
| Computer Equipment | 08/10/2020 | 2 Macbooks Pro |
| Computer Equipment | 08/12/2020 | AppleCare x 2 |
| Computer Equipment | 08/20/2020 | MacBook Pro for RBK |
| Computer Equipment | 09/15/2020 | Fixed Asset >1000: Best Buy - PC laptop and Excel 2019 for Windows to process Tesla solar roof design software and run SEL |
| Computer Equipment | 02/23/2021 | 4 MBP 13" and Apple Care+ |
| Computer Equipment | 02/23/2021 | 2 MBP 13" and AppleCare+ |
| Computer Equipment | 03/05/2021 | 16" MacBook Pro |
| Computer Equipment | 03/05/2021 | 16" MacBook Pro |
| Computer Equipment | 03/05/2021 | 16" MacBook Pro |
| Computer Equipment | 03/05/2021 | Two (2) 16" MacBook Pro |
| Computer Equipment | 03/05/2021 | Two (2) 16" MacBook Pro |
| Computer Equipment | 03/06/2021 | AppleCare+ |
| Computer Equipment | 03/06/2021 | AppleCare+ |
| Computer Equipment | 03/06/2021 | AppleCare+ |
| Computer Equipment | 03/06/2021 | Two (2) AppleCare+ |
| Computer Equipment | 03/06/2021 | Two (2) AppleCare+ |
| Computer Equipment | 03/25/2021 | 16inch Macbook |
| Computer Equipment | 05/13/2021 | MBP 16" w/AppleCare |
| Computer Equipment | 05/21/2021 | MBP 16" w/AppleCare |
| Computer Equipment | 05/24/2021 | MacBook Pro 16" 2019 16 GB 512GB w/AppleCare+ |
| Computer Equipment | 05/25/2021 | Apple MacBook Pro for Tyler Latham Resi Designer |
| Computer Equipment | 05/26/2021 | 1x Macbooks Pro |
| Computer Equipment | 05/27/2021 | 2x Macbooks Pro |

## SunCommon FF&E (con't)

| Asset A/C# Description | Date Acq | Description |
|---|---|---|
| Computer Equipment | 06/04/2021 | Meraki MX84 |
| Computer Equipment | 06/09/2021 | MacBook Pro + AppleCare+ x 2 units |
| Computer Equipment | 06/21/2021 | 3 x MacBook Pro 13in w/ AppleCare |
| Computer Equipment | 06/23/2021 | 2 x 13" MacBook Pro w/AppleCare+ |
| Computer Equipment | 06/23/2021 | 1 x 13" MacBook Pro with AppleCare+ |
| Computer Equipment | 06/24/2021 | 1 x 16" MacBook Pro with AppleCare+ |
| Computer Equipment | 07/14/2021 | 1 x MacBook Pro 13" w/ AppleCare+ |
| Computer Equipment | 09/01/2021 | 1 x 16" MacBook Pro w/AppleCare+ |
| Computer Equipment | 09/07/2021 | 1 x 13" MacBook Pro with AppleCare+ |
| Computer Equipment | 09/07/2021 | Rack for Kingston Office |
| Computer Equipment | 09/20/2021 | 1 x 16" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 09/21/2021 | 1 x 13" MacBook Pro with AppleCare+ |
| Computer Equipment | 09/29/2021 | 1 x 13" MacBook Pro with AppleCare+ |
| Computer Equipment | 09/29/2021 | 1 x 13" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 10/01/2021 | 3-13" MacBook PZro w/AppleCare+ for VT Office |
| Computer Equipment | 10/01/2021 | 2- 13" MacBook PZro w/AppleCare+ for |
| Computer Equipment | 11/03/2021 | 1 -16" MacBook Pro base model & 1 -16" MackBook Pro MAX model, both w/AppleCare+ |
| Computer Equipment | 01/17/2022 | 1 x 16" MacBook Pro with 32GB unified memory (RAM) and 512GB SSD storage (ROM) w/ AppleCare+ |
| Computer Equipment | 01/18/2022 | 1 x 16" MacBook Pro base model w/ AppleCare+ |
| Computer Equipment | 01/31/2022 | 3x 515 Aruba Access Points - Kingston Office |
| Computer Equipment | 02/18/2022 | Hardware and installation, VT |
| Computer Equipment | 02/18/2022 | Hardware and installation, NY |
| Computer Equipment | 02/21/2022 | 1 x 13" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 02/23/2022 | Google Meet Hardware and License |
| Computer Equipment | 03/01/2022 | One - 13" MacBook Pro w/ Apple Care+ |
| Computer Equipment | 03/04/2022 | One - 13" MacBook Pro w/ Apple Care+ |
| Computer Equipment | 03/18/2022 | Cameras for VT Security System |
| Computer Equipment | 04/28/2022 | One 13" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 05/03/2022 | One 13" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 05/13/2022 | One 14" MacBook Pro w/ AppleCare+ |
| Computer Equipment | 05/23/2022 | Kingston Installation: AVA Surveillance System Upgrade |
| Computer Equipment | 05/23/2022 | Kingston Cameras |
| Computer Equipment | 10/04/2022 | 14" MacBook Pro M1 Max chip |
| Computer Equipment | 11/21/2022 | 5x Computers |
| Computer Equipment | 11/22/2022 | applecare |
| Computer Equipment | 12/02/2022 | 3x Computers |
| Computer Equipment | 12/12/2022 | 16in Macbook Pro |
| Computer Equipment | 04/26/2023 | 4 MacBook Pros |
| Computer Equipment | 05/15/2023 | 3X MACBOOKS PRO |
| Computer Equipment | 05/30/2023 | 2 Macbook Pros |

**Grand totals:  15400 ( 207 assets )**

**Grand totals for all assets:  ( 530 assets )**

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## 5. Vehicle Assets

| Year | Make/Model | Vehicle/Trailer Type | VIN # |
|------|-----------|---------------------|-------|
| 2019 | Dodge Ram 1500 | Pickup | 1CGRR7FT8KS673401 |
| 2018 | Chevy 1500 | Pickup | 1GCVKPEC2JZ267813 |
| 2019 | DODGE RAM | Pickup | 1CGRR7FG5KS519117 |
| 2015 | GMC 1500 | Pickup | 3GTU2VEC3FG190571 |
| 2015 | GMC 1500 | Pickup | 1GTN2TECH3FZ263765 |
| 2013 | Chevy 3500 Stakebody | Stake Body | 1GB3CZCG2DF177352 |
| 2021 | DODGE RAM 1500 | Pickup | 1C6SRFFTXMN747687 |
| 2021 | Dodge Ram 1500 | Pickup | 1C6RRFBG9MN734940 |
| 2015 | FORD TRANS | Van | NMOLS7E77F1218894 |
| 2018 | TOYOTA TACOMA | Pickup | 5TFSX5ENXJX061421 |
| 2020 | DODGE RAM 2500 Crew | Pickup | 3C6UR5CJ1LG208369 |
| 2019 | Dodge Ram 1500-Limited | Pickup | 1C6SRFPT3KP682824 |
| 2018 | Tesla Model 3 | Sedan | 5YJ3E1EB6JF151507 |
| 2008 | International Bucket Truck | Truck | 1HTWBAAN78J578304 |
| 2012 | Ford E250 Van | Van | 1FTNE2EL6CDA17386 |
| 2014 | Ford E250 Van | Van | 1FTNE2EW8EDA01882 |
| 2014 | Ford E250 Van | Van | 1FTNE2EW7EDA13862 |
| 2014 | Ford E250 Van | Van | 1FTNE2EW9EDA30274 |
| 2015 | Ford Transit 250 | Van | 1FTNR1ZM3FKA34888 |
| 2015 | Ford F-150 | Pickup | 1FTFX1EG1FKE07081 |
| 2018 | Ford Transit 250 | Van | 1FTYR1YMXJKB38415 |
| 2021 | Ford T-250 Van | Van | 1FTBR1Y85MKA86818 |
| 2022 | Ford T-250 Van | Van | 1FTBR1Y80NKA15253 |
| 2023 | Ford F-150 | Pickup | 1FTFX1E56PFB49262 |
| 2023 | Ford F-150 | Pickup | 1FTFX1E55PFB37149 |
| 2024 | Ford F-150 | Pickup | 1FTEX1EP6PKF91852 |
| 2014 | Chevy C3500 DES | Pickup | 1GC3KZC8XEF159142 |
| 2019 | Dodge Ram 1500 | Shop | 1C6RR7FGXKS612697 |
| 2017 | Chevy Silverado | Pickup | 3GCUKREC1HG220161 |
| 2021 | DODGE RAM | Pickup | 3C6JR7DG7MG521333 |
| 2019 | Dodge Ram Promaster | Van | ZFBHRFAB8K6N69130 |
| 2014 | CHEVY 3500 | Pickup | 1GB3CZCG2DF177352 |
| 1990 | Daihatsu Mini Truck | Off-Road Utility Vehicle | S83P-009272 |
| 1992 | Nissan Vanette Mini Truck | Off-Road Utility Vehicle | FJNC22-001553 |
|  | Suzuki Scarry Mini Truck | Off-Road Utility Vehicle |  |
|  | Suzuki Scarry Mini Truck | Off-Road Utility Vehicle |  |
|  | Suzuki  Mini Truck | Off-Road Utility Vehicle |  |
| 2021 | TOYOTA TACOMA | Pickup | 3TY5X5EN8MT009056 |
| 2021 | TOYOTA TACOMA | Pickup | 3TYCZ5AN8MT050937 |
| 2023 | FORD F-250 | Pickup | 1FTBF2BA3PEC75707 |

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

## Schedule 1.1(b)- Seller's Obligations

1.      Any and all claims and liabilities, whether asserted or incurred but not reported (IBNR), against Sellers pursuant to that certain captive insurance policy by and between Sellers and Navigator Casualty, Ltd., as of the date of Closing.

2.      Any and all contractual warranties provided by Sellers to customers in connection with completed projects, and obligations of the Sellers arising thereunder.

## Schedule 1.1(c)- Assumed Indebtedness

1.      Tranche 4 DIP Obligations

2.      Any and all claims, liabilities and obligations relating to Project Debt, not to exceed the amount identified herein, owed to the below Projects Lender that is the subject of a fully executed Novation Agreement by and between Sellers, Purchaser and the applicable Project Lender as follows:

- NBT Bank, N.A. in an amount not to exceed $975,000. Details below
  - Loan X7687 – Gervais Solar Assets
  - Loan X7695 – Case St. Solar Assets
  - Loan X7709 – Newfane Solar Assets

- Vermont Community Loan Fund, Inc. pursuant to certain assets related to Sun CSA 36, LLC, in an amount not to exceed $125,000.

- Vermont Economic Development Authority pursuant to certain assets related to Sun CSA 36, LLC in an amount not to exceed $85,000.

3.      Any and all claims, liabilities and obligations relating to that indebtedness secured by certain vehicles but solely to the extent that such vehicles are Acquired Assets, as follows:

- Indebtedness owed to NBT Bank, N.A. relating to Loan X8506 and secured by the following vehicles:
  - 2021 Ram VIN#7687
  - 2021 Ram Vin#1333
  - 2021 Ram Vin#4940
  - Toyota Tacoma Vin#A142

- Indebtedness owed to Citizens Bank, N.A. and secured by the following vehicles:
  - 2019 Dodge RAM 1500 Quad (VIN # ending in 12697)
- Indebtedness owed on the following additional vehicles:

| Year | Make/Model | Vehicle/Trailer Type | VIN # | Balance |
|------|------------|----------------------|-------|---------|
| 2019 | Dodge Ram 1500 | Pickup | 1CGRR7FT8KS673401 | $9,852.00 |
| 2019 | DODGE RAM | Pickup | 1CGRR7FG5KS519117 | $2,484.00 |
| 2020 | DODGE RAM 2500 Crew | Pickup | 3C6UR5CJ1LG208369 | $3,326.00 |
| 2023 | Ford F-150 | Pickup | 1FTFX1E56PFB49262 | $32,647.92 |
| 2023 | Ford F-150 | Pickup | 1FTFX1E55PFB37149 | $32,823.96 |
| 2024 | Ford F-150 | Pickup | 1FTEX1EP6PKF91852 | $48,060.27 |
| 2019 | Dodge Ram 1500 | Shop | 1C6RR7FGXKS612697 | $3,301.17 |
| 2019 | Dodge Ram Promaster | Van | ZFBHRFAB8K6N69130 | $5,700.00 |
| 2023 | FORD F-250 | Pickup | 1FTBF2BA3PEC75707 | $47,401.00 |

## Schedule 1.1(d)- Sellers' Permits

1.    Liberty Electric, Inc., MA Registered Electrical Business License No: 3388 A1

2.    Liberty Electric Inc. NH #5820

3.    Sales tax numbers in all states for all entities

4.    All Permits identified on Schedule 1.l(a) under the heading "Owned Solar Asset"

## <u>Schedule 4.6 – Cure Payments</u>

1.      All Cure Payments for Assumed Contracts set forth on the "Assumption Notices" filed by Sellers, Docket Nos. 186, 226, 230, 321,

## <u>Schedule 4.8 - Intellectual Property Used by Third Parties</u>

None.

**Schedule 4.9 – Tax Matters**

1. As part of iSun, Inc.'s ("iSun") acquisition of SolarCommunities, Inc. ("SunCommon") in September 2021, approximately $1.14 million worth of iSun's stock was issued to 173 employees of SunCommon during the fiscal year 2022. iSun agreed to pay the employees' tax liability resulting from the stock issuance (the "Stock Tax Liability"). As of the date of this Agreement, the Stock Tax Liability has not been paid.

**<u>Schedule 4.10- Labor Matters</u>**

2. IBEW Local Union 567 – Mechanics' lien for delinquent benefits – Notice of Mechanics' Lien Recorded in the Aroostook County (South) Registry of Deeds.
3. IBEW Local 300 – Union Benefit funds settlement payments.
4. United States Department of Labor audit of 401(k) Retirement Plan

## Schedule 4.11- Environmental Matters

None.

## Schedule 4.12 – Pending Litigation/Proceedings

1.    The following demand letters:

| Date | Adverse Party | Opposing Counsel | iSun Entity | Subject/Notes |
|------|---------------|------------------|-------------|----------------|
| 2/15/2024 | Interactive Maintenance Services, Inc. d/b/a IMS | Daly & Daly, P.C.; Matthew T. Daly | iSun Energy LLC | Notice of Default and Past Due Amount |
| 2/16/2024 | Madison Energy Holdings, LLC | Kenney & Sams; J. Nathan Cole | iSun Energy LLC | Demand for Return of MIPA Execution Payment |
| 3/1/2024 | Power Engineers LLC | Beveridge & Diamond; C. Dylan Sanders | iSun, Inc. | Final Demand for Payment |
| 3/5/2024 | Ken Allen Company, LLC | Swanson Law, P.A.; Adam P. Swanson | iSun Industrial, LLC | Demand for Payment |
| 3/6/2024 | Endeavor Business Media | McCarthy, Burgess & Wolff; Malinda Wilkins | iSun Utility, LLC | Demand for Proof of Payment |
| 4/3/2024 | IBEW Local 567 | Creswell Law; Randy J. Creswell | Peck Electric Co. | Notice of Mechanics Lien against Peck Electric, Portland, ME |
| 4/3/2024 | IBEW Local 300 (Union Benefit Funds) | Krakow, Souris & Landry, LLC; Carey D. Shockey | iSun, Inc./Peck Electric Co. | Settlement Agreement executed 4/19/2024 |
| 4/4/2024 | Interactive Maintenance Services, Inc. d/b/a IMS | Daly & Daly, P.C.; Matthew T. Daly | iSun Energy LLC | Follow-up Notice; Response required by 4/15/24 |
| 4/9/2024 | CH Robinson Worldwide, Inc. | Corporate Counsel, PA; Timothy W. Fafinski | iSun, Inc. | Proposed Payment Plan |
| 4/29/2024 | Robert Zulkoski | Sanford Heisler Sharp, LLP; H. Vincent McKnight, Jr. | iSun, Inc. | Whistleblower Action |
| 5/9/2024 | Decathlon Growth Credit, LLC | Fredrikson & Byron, P.A.; Clinton E. Cutler | iSun, Inc.; Hudson Solar Service, LLC; Hudson Valley Clean Energy, Inc.; iSun Corporate, LLC; iSun Energy LLC; iSun Industrial, LLC; iSun Residential, Inc.; iSun Utility, LLC; Liberty Electric, Inc.; Peck Electric Co.; SolarCommunities, Inc.; Sun CSA 36, LLC | Notice of Default, Acceleration, and Demand for Payment |
| 5/21/2024 | LEAF | LEAF, Senior Collector Denise Briscoe | The Peck Company | Demand to The Peck Company re Contract Number 100-5376641-001 |

2.    The following pending litigation:

**ALPHA ENGINEERING SERVICES, PA d/b/a ALPHA ENVIRONMENTAL v. iSun Corporate, LLC**
State of North Carolina
Docket No. 24-CV-069
Notice of Automatic Stay and Bankruptcy Filing filed 06/05/2024

**BEACON SALES ACQUISITION, INC. dba BEACON BUILDING PRODUCTS v. Peck Electric Co. and Jeffrey Peck**
State of Vermont
Docket No. 24-CV-02441
Suggestion of Bankruptcy filed 7/25/2024
Dismissal without Prejudice granted 8/5/2024

**GREEN MOUNTAIN ELECTRIC SUPPLY v. THE UNIVERSITY OF VERMONT; iSun Industrial, LLC**
State of Vermont

Docket No. 24-CV-02030
Suggestion of Bankruptcy filed 7/18/2024
Dismissal without Prejudice granted 7/23/2024

**KEN ALLEN COMPANY, LLC v. iSun Industrial, LLC**
State of Maine
Docket No. PREDC-SC-2024-0021
Dismissal without Prejudice granted 7/31/2024

**LAKEVIEW LOAN SERVICING LCC v. Hudson Valley Clean Energy, Inc. d/b/a SunCommon**
State of New York
Docket No. 2023-54677
Hudson Valley Clean Energy, Inc. d/b/a SunCommon is judgment creditor against property owners in foreclosure action

**MADISON ENERGY HOLDINGS, LLC v. iSun Energy LLC**
State of Vermont
Docket No. 24-CV-01941
Notice of Bankruptcy filed 6/29/2024
Dismissal without Prejudice granted 7/3/2024

**PECK INVESTMENT PROPERTIES, LLC v. iSun Industrial, LLC**
State of Maine
Docket No. CARSC-RE-2024
Suggestion of Bankruptcy filed 6/12/2024

**SASSOON PERESS and RENEWZ SUSTAINABLE SOLUTIONS, INC. v. iSun, Inc.**
US District Court – District of Vermont
Docket No. 2:22-CV-00018
Dismissal with Prejudice granted 3/13/2023

**SASSOON PERESS and RENEWZ SUSTAINABLE SOLUTIONS, INC. v. iSun Inc.**
State of Vermont
Docket No: 23-CV-03701
Suggestion of Bankruptcy filed 7/18/2024
Dismissal without Prejudice granted 7/29/2024

**DUANE PETERSON, JAMES MOORE, and JEFFREY IRISH, solely in their capacity as the Shareholder Representative Group v. iSun, Inc.**
State of Vermont
Docket No. 24-CV-00565
Suggestion of Bankruptcy filed 6/28/2024

Schedules to Asset Purchase Agreement- Clean Royalties, LLC

Dismissal without Prejudice granted 6/28/2024

**RUSTY RENDON v iSun, Inc.**
Superior Court of California
Case No. 22STCV13102
Dismissal without Prejudice granted 11/8/2022

**ROBERT ZULKOSKI, ANDY CHILDS, and MELISSA OBEGI v. iSun, Inc., Andy Matthy, Stewart Martin, and Claudia Meer**
State of Vermont
Docket No. 24-CV-02097
Suggestion of Bankruptcy filed 6/12/2024
Dismissal without Prejudice granted 6/24/2024

**EXHIBIT A- Bill of Sale**

**FORM BILL OF SALE**

This Bill of Sale (this "**Bill of Sale**") is made and entered into as of _____, 2024, by and among Clean Royalties, LLC ("**Purchaser**"), iSun, Inc., a Delaware corporation ("**Parent Seller**") and its subsidiaries Solar Communities, Inc. d/b/a Sun Common and Liberty Electric, Inc. (together with Seller Parent, "Sellers" and each of them individually, a "**Seller**").

**WHEREAS,** Sellers and Purchaser are parties to that certain Asset Purchase Agreement, dated as of May 30, 2024, by and among Sellers and Purchaser (the "Purchase Agreement");

**WHEREAS,** pursuant to the Purchase Agreement, each Seller has agreed to (a) sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed, and delivered, certain rights, titles, interests, agreements and other assets of such Seller to Purchaser and (b) assign and delegate to Purchaser, certain liabilities of such Seller, and Purchaser has agreed to purchase from such Seller such rights, titles, interests, agreements, and other assets and assume such liabilities; and

**WHEREAS**, in connection with the foregoing, this Bill of Sale is contemplated by Section 3.2(a) of the Purchase Agreement.

**NOW, THEREFORE,** intending to be legally bound and in consideration of the foregoing and the mutual covenants contained herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.      **Capitalized Terms**. Capitalized terms used but otherwise not defined herein shall have the meaning for such terms that are set forth in the Purchase Agreement.

2.      **Sale and Transfer of Acquired Assets**. As contemplated by Section 2.1 of the Purchase Agreement and subject to the terms and conditions of the Purchase Agreement, each Seller, for the sum of $10.00 and other good and valuable consideration, hereby sells, assigns, transfers, conveys and delivers to Purchaser, effective as of the Closing, all of such Seller's right, title and interest in, to and under each of the Acquired Assets owned or otherwise transferrable by such Seller, free and clear of all Encumbrances of any and every kind, nature and description, other than Permitted Post-Closing Encumbrances; provided, however, that any Acquired Assets to be sold, assigned, transferred, conveyed, or delivered to Purchaser pursuant to the Intellectual Property Assignment Agreements shall be so sold, assigned, transferred, conveyed or delivered to Purchaser in accordance with the terms thereof.

3.      **Terms of the Purchase Agreement.** This Bill of Sale (a) is irrevocable and effective upon the Parties' delivery of executed copies of this Agreement in connection with and contingent upon, the Closing, (b) is an instrument of transfer contemplated by, and executed pursuant to, the Purchase Agreement, and references in this Bill of Sale to the Purchase Agreement are to the Purchase Agreement as it may be amended, modified or amended and restated from time to time in accordance with the terms thereof, and (c) benefits and binds the parties to the Purchase Agreement and their respective successors and assigns.  Nothing in this Bill of Sale shall, or shall be deemed to modify, expand, or supersede any provisions of the Purchase Agreement (including any representations or warranties) or modify, expand, or superseded any of the rights, obligations or remedies of the parties. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms of this Bill of Sale, the terms of the Purchase Agreement shall govern.

5.      **Miscellaneous.**  The terms of the Purchase Agreement are incorporated herein by reference and apply to the parties hereto with respect to this Bill of Sale *mutatis mutandis*, and each such terms will be fully binding on the parties hereto as if fully set forth in this Bill of Sale.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF**, the undersigned have executed this Bill of Sale as of the date first written above.

**SELLERS:**

**ISUN, INC.**

By: _____

Name: _____

Title: _____

**SOLAR COMMUNITIES, INC., d/b/a**

**SUN COMMON**

By: _____

Name: _____

Title: _____

**LIBERTY ELECTRIC, INC.**

By: _____

Name: _____

Title: _____

**EXHIBIT B- Assumption and Assignment Agreement**

## FORM ASSUMPTION AND ASSIGNMENT AGREEMENT

This Assumption and Assignment Agreement (this "**Assignment Agreement**") is made and entered into as of _____, 2024, by and among Clean Royalties, LLC ("**Purchaser**"), iSun, Inc., a Delaware corporation ("**Parent Seller**") and its subsidiaries Solar Communities, Inc. d/b/a Sun Common and Liberty Electric, Inc. (together with Seller Parent, "Sellers" and each of them individually, a "**Seller**").

**WHEREAS,** Sellers and Purchaser are parties to that certain Asset Purchase Agreement, dated as of May 30, 2024, by and among Sellers and Purchaser (the "Purchase Agreement");

**WHEREAS,** pursuant to the Purchase Agreement, each Seller has agreed to (a) sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed, and delivered, certain rights, titles, interests, agreements and other assets of such Seller to Purchaser and (b) assign and delegate to Purchaser, certain liabilities of such Seller, and Purchaser has agreed to purchase from such Seller such rights, titles, interests, agreements, and other assets and assume such liabilities; and

**WHEREAS**, in connection with the foregoing, this Assignment Agreement is contemplated by Section 3.2(b) of the Purchase Agreement.

**NOW, THEREFORE,** intending to be legally bound and in consideration of the foregoing and the mutual covenants contained herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.      **Capitalized Terms**. Capitalized terms used but otherwise not defined herein shall have the meaning for such terms that are set forth in the Purchase Agreement.

2.      **Transfer of Acquired Assets**. As contemplated by Section 2.1 of the Purchase Agreement and subject to the terms and conditions of the Purchase Agreement, each Seller, to the extent permitted by law, hereby assigns, transfers, conveys, delivers and sets over to Purchaser, effective as of the Closing, all of such Seller's right, title and interest in, to and under each of the Acquired Assets owned or otherwise transferrable by such Seller, free and clear of all Encumbrances of any and every kind, nature and description, other than Permitted Post-Closing Encumbrances; provided, however, that any Acquired Assets to be sold, assigned, transferred, conveyed, or delivered to Purchaser pursuant to the Intellectual Property Assignment Agreements shall be so sold, assigned, transferred, conveyed or delivered to Purchaser in accordance with the terms thereof.

3.      **Assumption**.  Purchaser hereby accepts the foregoing assignment set forth in sections 1 and 2 hereof, and assumes all obligations attendant to such asset being assigned, and all Assumed Liabilities in connection therewith; provided that said assumption and assignment shall in all respects be subject to the terms of the Purchase Agreement with regard to the rights and obligations of each of the parties hereto with respect to the items assigned hereunder, and in the event that any term of this Assignment Agreement conflicts or is inconsistent with the Purchase Agreement, the terms of the Purchase Agreement shall control.

4.      **Terms of the Purchase Agreement.** This Assignment Agreement (a) is irrevocable and effective upon the Parties' delivery of executed copies of this Assignment Agreement in connection with and contingent upon, the Closing, (b) is an instrument of transfer contemplated by, and executed pursuant

to, the Purchase Agreement, and references in this Assignment Agreement to the Purchase Agreement are to the Purchase Agreement as it may be amended, modified or amended and restated from time to time in accordance with the terms thereof, and (c) benefits and binds the parties to the Purchase Agreement and their respective successors and assigns.  Nothing in this Assignment Agreement shall, or shall be deemed to modify, expand, or supersede any provisions of the Purchase Agreement (including any representations or warranties) or modify, expand, or superseded any of the rights, obligations or remedies of the parties.

5.      **Miscellaneous.**  The terms of the Purchase Agreement are incorporated herein by reference and apply to the parties hereto with respect to this Assignment Agreement *mutatis mutandis*, and each such terms will be fully binding on the parties hereto as if fully set forth in this Assignment Agreement.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF**, the undersigned have executed this Assignment Agreement as of the date first written above.

SELLERS:

**ISUN, INC.**

By: _____

Name: _____

Title: _____

**SOLAR COMMUNITIES, INC., d/b/a**
**SUN COMMON**

By: _____

Name: _____

Title: _____

**LIBERTY ELECTRIC, INC.**

By: _____

Name: _____

Title: _____

**PURCHASER:**

**CLEAN ROYALTIES, LLC**


By: _____

Name: _____

Title: _____

**EXHIBIT C- Bid Procedures Order**

**See Docket No. 183, which is incorporated herein by reference**