IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iSun, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11144 (TMH)<br>(Jointly Administered)<br><br>Re: Docket Nos. 65, 393 |

## MAPLE SETF, LLC'S OBJECTION TO THE
## SALE OF THE DEBTOR'S ENCORE UNITS

Maple SETF, LLC ("Maple") by and through its undersigned counsel, files this objection (the "Objection")[2] to the Debtors' sale of the Encore Units (defined below). In support of this Objection, Maple states as follows:

### BACKGROUND

1. On June 3, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors remain in possession of their assets and continue to manage their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. Through the *Debtors' Motion For Entry Of Orders (A) (I) Approving Bid Procedures In Connection With The Sale Of Substantially All Of The Debtors Assets, (II)*

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

[2] In further support of this Objection, Maple incorporates and adopts the arguments made in the *Encore Redevelopment, LLC'S Limited Objection to Debtors' Sale Motion and Reservation of Rights* [Docket No. 263] and *Encore Redevelopment, LLC'S Supplement to Limited Objection to Debtors' Sale Motion and Reservation of Rights* [Docket No. 296].

*Scheduling An Auction And A Sale Hearing, (III) Approving The Form And Manner Of Notice Thereof, (IV) Authorizing The Debtors To Enter Into The Stalking Horse Agreement, (V) Approving Procedures For The Assumption And Assignment Of Contracts And Leases, And (VI)Granting Related Relief; And (B) (I) Approving The Purchase Agreement; (II)) Approving The Sale Of Substantially All Of The Debtors Assets Free And Clear; (III)Approving The Assumption And Assignment Of Contracts And Leases; And (IV) Granting Related Relief* [D.I. 65] (the "Sale Motion"), the Debtors sought to sell certain assets to Clean Royalties for a purchase price of $10,000,000.

4. Among the assets proposed to be sold to Clean Royalties are 179,298 Class B membership interests in Encore Redevelopment LLC ("Encore") (representing 3.28407% of the total membership interests at the time of purchase, which are now representative of 1.65% of the total membership interests) which were purchased by iSun on November 24, 2021, pursuant to that certain Membership Unit Purchase agreement (the "MUPA"). A true and correct copy of the MUPA is attached hereto and incorporated by reference as **Exhibit A**. The purchase price $5,000,000, which works out to $27.88 per unit (179,298 units at $5,000,000).

5. Those membership interests (the "Encore Units")[3] are governed by that certain Seventh Amended and Restated Operating Agreement of Encore Redevelopment, Inc, dated May 17, 2023 (the "LLC Agreement" and collectively with the MUPA, the "Encore Membership Interest Documents") which came into force following Maple's capital injection into the business. A true and correct copy of the LLC Agreement is attached hereto and incorporated by reference as **Exhibit B**.

---

[3] Although it is Maple's understanding that iSun is the owner of the Encore Units, iSun's Schedules of Assets and Liabilities [Docket No. 216] do not identify the Encore Units as assets of iSun. In fact, the Encore Units are listed as an asset of Peck Electric Co. in its Schedules of Assets and Liabilities. *See* Docket No. 218, Schedule A/B, paragraph 15.1.

6. Maple is the majority membership unit holder in Encore and is a signatory to the company's LLC Agreement, as is iSun.

7. Within the LLC Agreement, it should be noted that when Maple invested into Encore in May 2023, Encore's membership units were valued at $12.00 per unit, and the LLC Agreement granted exclusive rights to Maple to continue to contribute capital within Encore at the price of $12.00 per unit. *See* LLC Agreement at Section 6.2. And therefore, at a significant discount to iSun's value under the MUPA.

8. Section 10.1(a) of the LLC Agreement, entitled "Prohibited Transfers," provides that no Member may sell their membership interests "without the prior written consent of [Maple], which consent may be granted or withheld in the reasonable discretion of [Maple]." Maple does not consent to the sale of the Encore Units or the assumption and assignment of the Encore Membership Interest Documents to Clean Royalties. Encore, since being formed in 2007, has been very selective about its partners, including the additions of iSun and Maple. This selective authority was carefully passed to Maple via the implementation of the current LLC Agreement, which was signed when Maple invested. In investing into Encore, Maple was very careful in choosing its business partners, including iSun, and this is reflected in the protections that are afforded to Maple in the LLC Agreement (of which iSun is a signatory). Maple only wants to work with other parties that it knows and trusts. Maple is concerned that Clean Royalties will not be a suitable business partner and does not trust that Clean Royalties will be able to provide the services that iSun provided to Encore.

9. Further, the LLC Agreement, at section 10.3, allows for Maple to have the right of first refusal to purchase any Encore Units that a member seeks to sell. Section 10.3 reads in relevant part (emphasis in original):

(a) **Notice of Right**. If a Member proposes to Transfer any Units (the "**Transferring Member**"), then the Transferring Member shall promptly give written notice (the "**Transfer Notice**") of such proposed Transfer simultaneously to the Company and to the SUSI Member. The Transfer Notice shall describe in reasonable detail the proposed Transfer, including, without limitation, the amount of Units to be transferred (the "**Transfer Units**"), the nature of such Transfer, the material terms of such transfer, the cash consideration to be paid per Transfer Unit (or, in the event that the consideration is other than cash, the value of the consideration shall be determined in good faith by the Transferring Member and the Company) (the "**Transfer Purchase Price Per Unit**"), and the name and address of each prospective purchaser or Transferee (each, in such context, a "**Proposed Transferee**"). The Transferring Member shall enclose with the Transfer Notice a copy of a written offer, letter of intent or other written document signed by the Proposed Transferee(s) setting forth the proposed terms and conditions of the Transfer.

(b) **Exercise of Right**. For a period of 30 days following the date (the "**Transfer Notice Date**") on which the Transfer Notice is given by the Transferring Member to the Company and the SUSI Member (the "**Acceptance Period**"), the SUSI Member shall have the right to purchase all, and not less than all, of the Transfer Units on the same terms and conditions as set forth in the Transfer Notice. If the SUSI Member desires to exercise its right to purchase the Transfer Units, it shall give written notice (in such context, "**Purchase Notice**") to the Transferring Member no later than the expiration of the Acceptance Period.

10. This right of first refusal should be on the price Clean Royalties allocated towards the Encore Units as of the time that it submitted its $10,000,000 bid for substantially all of iSun's assets on June [7], 2024.

11. On August 23, 2024, the Court entered its *Order (I) Approving the Sale of the Debtors' Assets Free and Clear; (II) Approving the Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* [Docket No. 393] (the "Sale Order"). The Sale Order carved out the sale of the Encore Units subject to Maple's ROFR rights. The Sale Order provided that the Debtors would issue a Transfer Notice (as defined in section 10.3 of the LLC Agreement) to Maple and then Maple would have an opportunity to match the price allocated to the Encore Units. If Maple was not willing to match the price and exercise its ROFR rights by the relevant

deadline, then it would either have to consent to the sale of the Encore Units to Clean Royalties or file an objection with the Court indicating that it does not consent to such sale of the Encore Units.

12. On August 27, 2024, iSun issued a letter (the "Transfer Notice")[4] to Maple indicating its intent to transfer the Encore Units to Clean Royalties for $3,200,000.00, specifically stating that "$3,200,000 [of the $10,000,000 total purchase price] shall be allocated to the purchase of iSun's membership interests in Encore Redevelopment, LLC: 179,298 Class B membership interests in Encore." A copy of the Transfer Notice is attached hereto and incorporated by reference as **Exhibit C**.

13. While iSun did initially purchase the Encore Units for $5,000,000, Clean Royalties' allocation is wholly inflated and unreasonable, and Clean Royalties has failed to provide evidence of its valuation of the Encore Units under its $10,000,000 total offer for substantially all of the Debtors' assets. The Transfer Notice did not provide any indication as to how Clean Royalties calculated its allocation or any justification or support for the amount allocated. It is clear that Clean Royalties is experiencing buyer's remorse over its purchase of the Debtors' assets and the $3,200,000 allocation is simply a way for Clean Royalties to recoup some of its investment by trying to squeeze money out of Maple. If Maple were to exercise its ROFR at the $3,200,000 price tag, that would allow Clean Royalties a major discount on the other assets that it overpaid for, and cheat the Debtors' creditors of value from the bankruptcy process.

14. It is Maple's understanding that Clean Royalties did not allocate its $10,000,000 purchase price among the assets that it was purchasing from the Debtors when it made its initial offer. It is also Maple's understanding that, when faced with Encore and Maple's objections to the Sale Motion, Clean Royalties, ex post, then calculated the allocation by taking iSun's $5

---

[4] To the extent that the Encore Units are not actually owned by iSun, then the Transfer Notice is defective.

million initial investment, arbitrarily dividing it in half, and then added a $700,000 receivable that is purportedly owed by Encore to the Debtors. This receivable, even if it is owed, should not be used to value the Encore Units.

15. At year end 2023, the balance sheet of iSun was over $66 million. Thus, Clean Royalties' $10 million offer represents an approximate 85% discount on the total value of iSun's assets. However, without any known basis, Clean Royalties' now asserts that it only discounted the value of the Encore Units by 50%. Extrapolating from there, that would mean that Clean Royalties has discounted the other assets that it is purchasing from the Debtors by over 90%, some of which, like the SunCommon business, are quite valuable.

16. Removing the $700,000 receivable, which should not be counted towards the value of the Encore Units, would make Clean Royalties' allocation for the Encore Units $2,500,000 (i.e. a 50% discount on iSun's purported $5 million book value), based on the arbitrary valuation that Clean Royalties invented ex post. However, if the 85% discount that was applied to all assets were applied to the book value, the maximum amount that would be allocated to the Encore Units is just $750,000 (which is considerably less than the $900,000 offer that Encore made to repurchase the Encore Units from the Debtors).

17. Further, although Maple does not believe it to be relevant to the Court's analysis of these issues, should the Court wish to evaluate the actual book value of the Encore Units, as outlined above, the $5 million book value reported by iSun reported is not an accurate valuation of the Encore Units. While the initial $5 million investment bought iSun a 3.28407% of the total membership interests at the time of purchase, iSun's interest has been diluted so that the Encore Units are now representative of only 1.65% of the total membership interests in Encore. When iSun purchased the Encore Units in November 2021, it purchased them at $27.88 per unit (179,298 units at $5,000,000). However, when Maple bought into iSun in May 2023, Encore's membership

units were valued at $12.00 per unit. The $12.00 unit value is clearly stated in the LLC Agreement – a document that should have been in the data room and available to Clean Royalties during due diligence – and controls the per unit value for the transfer of units as any further capital contributions are to be valued at $12.00 per unit. *See* LLC Agreement at Section 6.2. Thus, in May of 2023, the value of the Encore Units was $2,151,576. Applying the above-discussed 85% discount to this value would result in an allocation of just $322,736.40 to the Encore Units. Even applying Clean Royalties arbitrary 50% discount would result in an allocation of $1,075,788 – far less than the $3,200,000 that Clean Royalties now claims the Encore Units to be worth.

18.    In summary, (i) Maple invested into Encore at a discount to what iSun reported ($12.00 per unit vs. $27.88 per unit), (ii) under the most recent LLC Agreement, to which iSun is a signatory, Maple has certain rights to (a) ensure that the partners within the business are reasonable and trustworthy, and to (b) exercise a pre-emption right to acquire any change of shares under the ROFR, (iii) this ROFR is on the value Clean Royalties ascribed to the Encore Units at the time of their bid submission, (iv) Clean Royalties has admitted to not allocating specific value to the Encore Units, and ex post arbitrarily invented a value which is (a) not aligned with the intention of the ROFR: it needs to be the value which Clean Royalties ascribed to their bid submission, is (b) inconsistent with material which Clean Royalties should have had access to during the bankruptcy process and point to a much lower value, and is (c) cheating the Debtor's creditors, (v) given the bankruptcy process and uncertainty of situation, Encore submitted a valid bid to acquire the Encore Units at $900,000 – which, considering iSun's insignificant stake and urgency under the bankruptcy procedure, represents the only real fair market value for the shares, and, finally, (vi) in the absence of any evidence, the Court should (a) see the Transfer Notice for what is it – Clean Royalties' attempt to unfairly play games, to mock the Court's fair and balanced bankruptcy procedures, and to destroy Maple's legal rights ascribed under the LLC Agreement

and (b) consider that the value of the Encore Units should be $750,000 (i.e. at an 85% discount of the whole iSun business, linked to Clean Royalties valuation of the whole business). The Transfer is just a bald attempt to destroy Maple's bargained for rights and bully Maple into overpaying for the Encore Units.

WHEREFORE, Maple respectfully requests that this Court deny the sale of the Encore Units, and grant such other and further relief as it deems just and proper.

Dated: September 25, 2024	**CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
(302) 777-4200
kmann@crosslaw.com

*Counsel to Maple SETF, LLC*