# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iSun, Inc., *et al.*,[1] | Case No. 24-11144 (TMH) |
| Debtors. | (Jointly Administered) |

## MODIFIED JOINT CHAPTER 11 PLAN OF LIQUIDATION
## OF ISUN, INC., AND ITS DEBTOR AFFILIATES

THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

**GELLERT SEITZ BUSENKELL**
**& BROWN, LLC**
Michael Busenkell (DE 3933)
Amy D. Brown (DE 4077)
Michael Van Gorder (DE 6214)
1201 N. Orange St., 3rd Floor
Wilmington, Delaware 19801
Telephone: (302) 425-5812
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
          abrown@gsbblaw.com
          mvangorder@gsbblaw.com

*Counsel for the Debtors and Debtors-in-Possession*

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**
Jennifer R. Hoover (DE 5111)
Kevin M. Capuzzi (DE 5462)
Steven L. Walsh (DE 6499)
Juan E. Martinez (DE 6863)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: jhoover@beneschlaw.com
          kcapuzzi@beneschlaw.com
          swalsh@beneschlaw.com
          jmartinez@beneschlaw.com

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

-and-

**SEWARD & KISSEL LLP**
Robert J. Gayda (*pro hac vice*)
Catherine V. LoTempio (*pro hac vice*)
Andrew J. Matott (*pro hac vice*)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 450-8421
Email: gayda@sewkis.com
        lotempio@sewkis.com
        matott@sewkis.com

*Counsel to the Official Committee of
Unsecured Creditors*

## INTRODUCTION

iSun, Inc. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases, along with the Official Committee of Unsecured Creditors, hereby propose the following modified joint plan of liquidation pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtors' history, businesses, properties, key contracts, and a summary and analysis of the Plan, stakeholders of the Debtors should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached.  ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the wind down of the Debtors' affairs, continued liquidation of the Debtors' remaining assets to Cash and the distribution of the net proceeds realized therefrom, in addition to Cash on hand on the Effective Date of the Plan, to creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of Intercompany Claims, Subordinated Claims, or Interests, and their votes are not being solicited.  The Plan contemplates the appointment of a Liquidation Trustee to, among other things, finalize the wind down of the Debtors' affairs, liquidate remaining assets of the Debtors, resolve Disputed Claims, implement the terms of the Plan, and make Distributions to holders of Allowed Claims.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a Claimholder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders.

The Debtors expressly reserve their right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A. *Scope of Definitions and Rules of Interpretation, Application of Definitions, Rules of Construction, and Computation of Time.*

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(a)     all Defined Terms shall have the meanings ascribed to them in Article I.B. of the Plan;

(b)     any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise;

(c)     whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

(d)     any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(e)     any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may be amended, modified, or supplemented from time to time;

(f)     any reference to a specific Person includes any successors or assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or assign of such Person;

(g)     unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(h)     unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

(i)     the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(j)     captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(k)      whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

(l)      the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document;

(m)      all other rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(n)      headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan;

(o)      unless otherwise indicated herein, all references to dollars are to United States dollars; and

(p)      unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

The following Defined Terms shall have the respective meanings specified below.

B.  *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.  "***Additional Cash Contribution***" means $300,000 carve out from Sale Proceeds otherwise distributable to Decathlon on account of the Decathlon Secured Claim to be used by the Debtors for the payment of Allowed Administrative Expenses.

2.  **"*Administrative Claim"*** means any Claim against the Debtors or their Estates for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim.

3.  ***"Administrative Claims Bar Dates"*** means either (a) October 17, 2024 at 5:00 p.m. (prevailing Eastern Time) for all Administrative Claims arising, accruing or otherwise due and payable any time subsequent to the Petition Date but on or before August 16, 2024, or (b) the date that is thirty (30) days from service of the notice of Effective Date for all of the Administrative Claims arising, accruing or otherwise due and payable any time during the period from August 17, 2024 through the Effective Date.

4.  ***"Affiliate"*** means, with respect to any specified Entity, any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common

control with, such specified Entity.  For purposes of this definition, "control" (and any similar term) means the power of one or more Entities to direct, or cause the direction of, the affairs of another Entity by reason of ownership of voting stock or by contract or otherwise.

5. ***"Allowed"*** means with respect to any Claim against the Debtors or their Estates (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Liquidation Trustee following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and such person or entity shall not be treated as a creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

6. ***"Assets"*** means any and all of the right, title and interest of the Debtors in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any other general intangibles of the Debtors, as the case may be, including, without limitation, the Debtors' Estates.

7. ***"Avoidance Actions"*** means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

8. ***"Bankruptcy Code"*** means title 11 of the United States Code.

9. ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

10. ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

11. *"Beneficial Trust Interests"* means collectively, the Class A Beneficial Trust Interests and the Class B Beneficial Trust Interests.

12. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

13. *"Cash"* means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

14. "*Cash Collateral Stipulation*" means the *Stipulation by and Between the Debtors, the Official Committee of Unsecured Creditors and Decathlon Growth Credit, LLC, for Continuing use of Cash Collateral in Accordance With The Committee DIP and Bid Procedures Settlement* (Docket No. __).

15. *"Causes of Action"* means any of the Debtors' actions, Claims, causes of action, controversies, demands, rights, actions, liens, indemnities, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any state law fraudulent transfer claim.

16. **"*Cedar Advance"*** means Cedar Advance, LLC

17. *"Cedar Advance Settlement"* means that certain Settlement Agreement between the Debtors, Decathlon, Cedar Advance, and the Creditors' Committee, dated August 23, 2024, and approved by the *Order Approving Settlement Agreement Between the Debtors, Decathlon, Cedar Advance and the Committee Pursuant to Bankruptcy Rule 9019* [Docket No. 448].

18. *"Cedar Advance Settlement Amount"* means $100,000 carve out from Sale Proceeds to be paid to Cedar Advance in accordance with the Cedar Advance Settlement.

19. *"Chapter 11 Cases"* means the cases pending for the Debtors under chapter 11 of the Bankruptcy Code jointly administered under case number 24-11144 (TMH).

20. *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code.

21. *"Claims Bar Date"* means the date or dates established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

22. **"*Claims Bar Date Order*"** means the *Order (I) Establishing Deadlines For Submitting Proofs of Claim, Including Requests For Payment Under Section 503(b)(9), (II) Approving The*

*Form and Manner For Submitting Such Proofs of Claim, (III) Establishing Deadline For Submitting Administrative Claims and (IV) Approving Notice Thereof* [Docket No. 434].

23. ***"Claims Objection Deadline"*** means the later of (a) one hundred and eighty (180) days after the Effective Date, or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court; *provided* that the Claims Objection Deadline may be extended by the Liquidation Trustee.

24. ***"Class"*** means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtors as set forth in Article III.

25. "***Class A Beneficial Trust Interests***" means a Class A beneficial interest in the Liquidation Trust, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Liquidation Trust Agreement.

26. "***Class B Beneficial Trust Interests***" means a Class B beneficial interest in the Liquidation Trust, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Liquidation Trust Agreement.

27. ***"Clean Royalties"*** means Clean Royalties, LLC, together with its permitted successors, designees and assigns.

28. ***"Collateral"*** means any property or interest in property in the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

29. "***Committee Budget Supplement***" means $100,000 carve out from Sale Proceeds otherwise distributable to Decathlon on account of the Decathlon Secured Claim in accordance with the Committee DIP and Bid Procedures Settlement and CR Term Sheet.

30. "***Committee DIP and Bid Procedures Settlement***" means the settlement among the Debtors, Clean Royalties, Decathlon and the Creditors' Committee, dated July 3, 2024 and approved by the bankruptcy court by order dated July 3, 2024 [Docket No. 158].

31. **"*Confirmation*"** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32. ***"Confirmation Date"*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

33. ***"Confirmation Hearing"*** means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

34. ***"Confirmation Order"*** means the order of the Bankruptcy Court, in form and substance acceptable to the Debtors and the Creditors' Committee, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35. *"Consummation"* means the occurrence of the Effective Date.

36. *CR Term Sheet*" shall have the meaning set forth in the Order approving the Committee DIP and Bid Procedures Settlement [Docket No. 158].

37. *"Creditors"* shall have the meaning set forth in section 101(10) of the Bankruptcy Code.

38. **"*Creditors' Committee*"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee [Docket No. 77].

39. *"Debtors"* means iSun, Inc., iSun Corporate, LLC, iSun Energy LLC, iSun Industrial, LLC, iSun Residential, Inc., iSun Utility, LLC, Liberty Electric, Inc., Peck Electric Co., SolarCommunities, Inc., Hudson Solar Service, LLC, Hudson Valley Clean Energy, Inc., and Sun CSA 36, LLC, each as a debtor and debtor-in-possession in the Chapter 11 Cases.

40. *"Decathlon"* means Decathlon Growth Credit, LLC, together with its affiliates, successors, designees and assigns.

41. "*Decathlon Causes of Action*" means personal causes of action belonging to Decathlon as disclosed in the Plan Supplement.

42. "*Decathlon's Liens*" means any and all liens and security interests conveyed by the Debtors to Decathlon under the Loan and Security Agreement, the Final DIP Order or the Cash Collateral Stipulation.

43. *"Decathlon Trust Funding Amount*" means $350,000 carve out from Sale Proceeds otherwise distributable to Decathlon on account of the Decathlon Secured Claim to be held in express trust in accordance with the Wind-Down Term Sheet, the Sale Order and the Cash Collateral Stipulation.

44. "*DIP Facility Claims*" means any Claims arising under the DIP Facility (as such term is defined in the Final DIP Order).

45. "*DIP Lender*" means Clean Royalties.

46. **"*Disclosure Statement*"** means the Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iSun, Inc. and its Debtor Affiliates, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

47. *"Disputed"* means, any Claim against or Interest in any Debtor that is (a) listed in the Schedules as disputed, contingent or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtors in any litigation or contested matter and as to which no Final Order resolving such

litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the Bankruptcy Code. A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

48. *"Distribution Agent"* means, from the Effective Date, any Person(s) selected by the Liquidation Trustee to make or to facilitate distributions required by this Plan (if any).

49. *"Distribution Date"* means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable thereafter.

50. *"Effective Date"* means, with respect to the Plan, the date that is a Business Day selected by the Debtors, in consultation with the Creditors' Committee, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

51. *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

52. *"Estates"* means the estates created for the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

53. *"Exculpated Claim"* means any Cause of Action, arising after the Petition Date and on or before the closing of the Chapter 11 Cases, related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the subsection (a) or (b); (d) the pursuit of Consummation; and/or (e) the filing, administration, and/or implementation of the Chapter 11 Cases, the Plan or the distribution of property in connection therewith or thereunder.

54. *"Exculpated Party"* means each of: (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as such; (d) the Liquidation Trustee; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys and each of their predecessors, successors and assigns, but only to the extent that such party served in such a capacity during the Chapter 11 Cases.

55. *"Executory Contract"* means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

56. *"File" or "Filed"* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

57. *"Final DIP Order"* means *the Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing The Debtors To Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing The Use Of Cash Collateral; (IV) Granting Adequate Protection To Prepetition Secured Parties; (V) Modifying The Automatic Stay; and (VI) Granting Related Relief* [Docket No. 117].

58. *"Final Distribution"* means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets held by such Liquidation Trust, including cash, of a value of less than $500 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

59. *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal or seek certiorari has expired and no request for reconsideration or relief from judgment, appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

60. *"General Unsecured Claim"* means any Claim against a Debtor that (i) is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Non-Tax Claim, Loan and Security Agreement Claim, Other Secured Claim, Intercompany Claim, Subordinated Claim or Interest.

61. *"Governmental Claim"* means any Claim against any Debtor Filed by a Governmental Unit.

62. *"Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

63. *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

64. *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

65. *"Interim Compensation Order"* means the *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 122].

66. **"*Intercompany Claim*"** means any Claim against a Debtor held by another Debtor.

67. *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

68. *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

69. "*Liquidation Trust*" means the trust, of which the Liquidation Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order.

70. "*Liquidation Trust Advisory Board*" means the three (3) member advisory board selected by the Creditors' Committee and Decathlon and established on the Effective Date in accordance with the Liquidation Trust Agreement, with one member of the Liquidation Trust Advisory Board appointed by Decathlon and two members of the Liquidation Trust Advisory Board appointed by the Committee.

71. *"Liquidation Trust Agreement"* means the agreement included in the Plan Supplement, as may be amended, established as of the Effective Date, setting forth the terms and conditions of the Liquidation Trust, as may be modified from time to time, which agreement shall be in a form reasonably acceptable to the Creditors' Committee.

72. *"Liquidation Trust Assets"* means the amount of the Decathlon Trust Funding Amount remaining on the Effective Date, the Decathlon Causes of Action, the Retained Causes of Action, any other Assets of the Estates that are not encumbered by Decathlon's Liens and any proceeds therefrom, and the Debtors' equity interests, solely for the purpose of conferring derivative standing upon the Liquidation Trustee to institute any Retained Causes of Action pursuant to the provisions of the Delaware Revised Uniform Partnership Act or the Delaware Limited Liability Company Act to the extent that the Liquidation Trustee is found not to have direct standing to pursue such Claims as an estate representative pursuant to section 1123(b) of the Bankruptcy Code, except that the Liquidation Trust Assets shall expressly exclude: (i) the Liquidation Trust Claims Reserve, except that any excess amounts in the Liquidation Trust Claims Reserve after the payment in full or other satisfaction of all Allowed Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims shall become Liquidation Trust Assets; (ii) the Professional Fee Claim Reserve, except that any excess amounts in the Professional Fee Claim Reserve after payment in full or other satisfaction of Allowed Professional Fee Claims, shall become Liquidation Trust Assets; and (iii) any Cash that consists of proceeds of assets encumbered by Decathlon's Liens that have not been contributed by Decathlon to the Liquidation Trust.

73. *"Liquidation Trust Claims Reserve"* shall mean the reserve established by the Debtors to satisfy in full all Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims.

74. *"Liquidation Trustee"* means the trustee selected by the Creditors' Committee in consultation with Decathlon, and identified in the Plan Supplement, to serve as the liquidation trustee under the Liquidation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and Liquidation Trust Agreement.

75. "*Loan and Security Agreement*" means that certain Revenue Loan and Security Agreement, dated as of December 12, 2023, by and among (a) iSun, Inc., (b) the Debtor guarantors

listed therein, and (c) Decathlon, as assignee of Decathlon Specialty Finance, LLC, as amended, restated, supplemented or otherwise modified from time to time, together with all other documents and agreements executed in connection therewith.

76. ***"Notice, Claims and Balloting Agent"*** means Epiq Corporate Restructuring, LLC.

77. "***Notice of Effective Date***" means a notice to be Filed with the Bankruptcy Court by the Debtors upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article X of the Plan.

78. ***"Other Priority Claims"*** means any Claim against the Debtors, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

79. ***"Other Secured Claims"*** means any Secured Claim that is not a Loan and Security Agreement Claim or Secured Tax Claim.

80. ***"Person"*** means a person as such term is defined in section 101(41) of the Bankruptcy Code.

81. ***"Petition Date"*** means June 3, 2024, the date on which the Debtors commenced the Chapter 11 Cases.

82. ***"Plan"*** means this Joint Chapter 11 Plan of Liquidation of iSun, Inc. and its Debtor Affiliates (as modified, amended or supplemented from time to time).

83. ***"Plan Supplement"*** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan.

84. "***Prepetition Loan Claims***" means all Claims on account of, arising under, or related to the Loan and Security Agreement, including without limitation any accrued and unpaid principal, interest and fees as of the Petition Date.

85. "***Prepetition Loan Deficiency Claim***" means the unsecured portion of any Allowed Prepetition Loan Claims that is not Secured Claim.

86. ***"Prepetition Loan Secured Claim"*** means the portion of any Allowed Prepetition Loan Claims that is a Secured Claim.

87. ***"Priority Tax Claim"*** means any Claim against the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

88. ***"Professional"*** means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

89. *"Professional Fee Claim"* means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103 or 503 of the Bankruptcy Code; provided that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

90. *"Professional Fee Claim Reserve"* means the reserve established by the Debtors and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims.

91. *"Proof of Claim"* means a written proof of Claim Filed against the Debtors in the Chapter 11 Cases.

92. *"Proof of Interest"* means a written proof of Interest Filed against the Debtors in the Chapter 11 Cases.

93. "*Purchaser*" shall have the meaning set forth in the Sale Order.

94. *"Rejection Claim"* means a Claim against the Debtors arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

95. *"Retained Causes of Action"* means any Cause of Action other than any Cause of Action that (i) was transferred to the Purchaser as part of the Sale Transaction pursuant to the Stalking Horse Agreement and the Sale Order, (ii) is expressly subject to the exculpation provisions of this Plan, or (iii) is expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to the Confirmation Order, or pursuant to any other order of the Bankruptcy Court.

96. "*Sale Order*" means the *Order (I) Approving the Sale of the Debtors' Assets Free and Clear; (II) Approving the Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* [Docket No. 393].

97. "*Sale Proceeds*" means the proceeds of the Sale Transaction.

98. "*Sale Transaction*" shall have the meaning set forth in the Sale Order.

99. *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

100.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estates' interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

101.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

102.    "*Stalking Horse Agreement*" shall have the meaning set forth in the Sale Order.

103.    "*Subordinated Claim*" means any Claim that is subordinated, pursuant to section 510(b) of the Bankruptcy Code or otherwise, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

104.    "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

105.    "*Unclaimed Property*" means any distribution to Creditors under this Plan that are unclaimed thirty (30) days following the date of such distribution under this Plan.

106.    "*Unclaimed Property Reserve*" means any Unclaimed Property reserved for a period of thirty (30) days by the Liquidation Trustee on behalf of holders of Unclaimed Property.

107.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

108.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

109.    "*U.S. Trustee*" means the United States Trustee for Region 3.

110.    "*Voting Deadline*" means 11:59 p.m. (Eastern Time) on [•] [•], 2024.

111.    "*Wind-Down Term Sheet*" shall have the meaning set forth in the Order approving the Committee DIP and Bid Procedures Settlement [Docket No. 158].

C.  *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.  *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

13

E. *Exhibits*

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. *Administrative Claims.*

1. Administrative Claims

Except to the extent that a holder of an Allowed Administrative Claim and the Debtors or the Liquidation Trustee, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in full in Cash from the Debtors or the Liquidation Trust, as applicable, on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

2. Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered on or before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days after the Effective Date (with an objection period of at least twenty one days for objections, if any, to such applications); provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to any ordinary course professional order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the applicable ordinary course professional order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Geller Seitz Busenkell & Brown, LLC's escrow account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, Geller Seitz Busenkell & Brown, LLC shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Geller Seitz Busenkell & Brown, LLC shall promptly transfer any such Cash to the Liquidation Trust and such Cash shall become

Liquidation Trust Assets and be treated in accordance with the Liquidation Trust Agreement, the Plan and the Confirmation Order.

 3. Satisfaction of DIP Facility Claims

The DIP Facility Claims have been satisfied pursuant to the terms of the Sale Order.  Upon satisfaction of the DIP Facility Claims, all Liens and security interests granted to secure the DIP Facility Claims were automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

 4. Administrative Claim Bar Dates

Requests for payment of Administrative Claims must be Filed on or before the applicable Administrative Claims Bar Dates.  Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or its property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date.

B. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Liquidation Trustee, as applicable, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Debtors or the Liquidation Trustee, as applicable, or otherwise determined upon an order of the Bankruptcy Court.  Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (a) the Effective Date, (b) the date on which such Priority Tax Claim against the Debtors becomes an Allowed Priority Tax Claim, or (c) such other date as may be ordered by the Bankruptcy Court.

C. *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code and any interest thereon pursuant to 31 U.S.C. §3717 ("Quarterly Fees") prior to the Effective Date shall be paid in full in cash by the Debtors on the Effective Date.  On and after the Effective Date, the Liquidation Trust shall be responsible for (i) filing post-Confirmation quarterly reports and (ii) all Quarterly Fees for any operative Chapter 11 Cases until the entry of a final decree or until such Chapter 11 Cases are closed or dismissed.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A. *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  All Claims and Interests, except for Administrative Claims, Professional Fee Claims, DIP Claims and Priority Tax Claims are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as set forth below.  The Plan shall apply as a substantively consolidated Plan for all of the Debtors.  All of the potential Classes for the Debtors are set forth herein

B. *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Impairment Status | Voting Rights |
|-------|----------------|-------------------|---------------|
| Class 1 | Secured Tax Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 3 | Other Priority Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 4 | Prepetition Loan Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 6 | Intercompany Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 7 | Subordinated Claims | Impaired | Not entitled to vote (deemed to reject) |
| Class 8 | Interests | Impaired | Not entitled to vote (deemed to reject) |

C. *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

1. Class 1 – Secured Tax Claims

    i.    *Classification*: Class 1 consists of all Secured Tax Claims.

    ii.    *Treatment*: Each holder of an Allowed Secured Tax Claim shall receive, at the option of the Liquidation Trustee:

a.   payment in full in Cash from the Liquidation Trustee of such holder's Allowed Secured Tax Claim as soon as reasonably practicable after the Effective Date; or

b.   equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

iii.   *Voting*: Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Secured Claims

i.   *Classification*: Class 2 consists of all Other Secured Claims.

ii.   *Treatment*: Each holder of an Allowed Other Secured Claim shall receive, at the option of the Liquidation Trustee, (a) payment in full in Cash from the Liquidation Trustee, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter or (b) delivery of the collateral securing any such Claim.

iii.   *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.   Class 3 – Other Priority Claims

i.   *Classification*: Class 3 consists of all Other Priority Claims.

ii.   *Treatment*: Each holder of an Allowed Other Priority Claim (other than Allowed Other Priority Claims for customer deposits) shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

iii.   *Voting*: Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.  Class 4 – Prepetition Loan Claims

    i.  *Classification*: Class 4 consists of all Prepetition Loan Claims.

    ii.  *Treatment*: Consistent with the terms of the Sale Order and the Wind-Down Term Sheet, holders of Allowed Class 4 Prepetition Loan Claims shall receive, to the extent not yet distributed, (i) Sale Proceeds up to the amount of the Prepetition Loan Secured Claim, *less* the Decathlon Trust Funding Amount, the Committee Budget Supplement, the Cedar Advance Settlement Amount and the Additional Cash Contribution; (ii) proceeds of any of Decathlon's Liens that are not Sale Proceeds or Liquidation Trust Assets up to the remaining amount of the Prepetition Loan Secured Claim, and (iii) Class A Beneficial Trust Interests on account of any Prepetition Loan Deficiency Claim, *<u>provided</u>* that the Liquidation Trust Agreement shall provide that the Class A Beneficial Trust Interests shall be entitled to (i) 25% of all distributions of Liquidation Trust Assets until such time as the Decathlon Trust Funding Amount is repaid in full, and (ii) thereafter, their *pro rata* share of all distributions of Liquidation Trust Assets along with the Class B Beneficial Trust Interests.

    iii.  *Voting*: Class 4 is Impaired by the Plan.  Holders of Prepetition Loan Claims are entitled to vote to accept or reject the Plan.

5.  Class 5—General Unsecured Claims.

    i.  *Classification*: Class 5 consists of all General Unsecured Claims.

    ii.  *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its *pro rata* share of Class B Beneficial Trust Interests, which Class B Beneficial Trust Interests shall entitle the holders thereof to receive (i) their *pro rata* share of 75% of distributions of the Liquidation Trust Assets until such time as the Decathlon Trust Funding Amount is repaid in full, and (ii) thereafter, their *pro rata* share of all distributions of the Liquidation Trust Assets along with the holders of Class A Beneficial Trust Interests.

    iii.  *Voting*: Class 5 is Impaired by the Plan, and each holder of a Class 5 General Unsecured Claims is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 5 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

6.  Class 6—Intercompany Claims

    i.  *Classification*: Class 6 consists of consists of all Intercompany Claims.

    ii.  *Treatment*: On the Effective Date, all Class 6 Intercompany Claims shall be cancelled without any distribution on account of such Claims.

      iii.    *Voting*: Class 6 is Impaired by the Plan, and each holder of a Class 6 Intercompany Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7. Class 7—Subordinated Claims

      i.    *Classification*: Class 7 consists of all Subordinated Claims.

      ii.    *Treatment*: On the Effective Date, all Class 7 Subordinated Claims shall be cancelled without any distribution on account of such Claims.

      iii.    *Voting*: Class 7 is Impaired by the Plan, and each holder of a Class 7 Subordinated Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 7Subordinated Claims are not entitled to vote to accept or reject the Plan.

8. Class 8—Interests

      i.    *Classification*: Class 8 consists of all Interests in the Debtors.

      ii.    *Treatment*: Holders of Interests in the Debtors will receive no distribution under the Plan.

      iii.    *Voting*: Class 8 is Impaired by the Plan, and each holder of Class 8 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

D. *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims or Interests that are not Impaired, including all rights of the Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserves the right to modify the Plan in accordance with Article XI of the Plan and section 1127 of the Bankruptcy Code to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F. *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Liquidation Trust reserves the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G. *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

H. *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I. *Acceptance or Rejection of the Plan.*

1. Voting Classes

Class 4 is entitled to vote on the Plan.

2. Presumed Acceptance of the Plan

Pursuant the Bankruptcy Code, Classes 1, 2, and 3 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3. Presumed Rejection of the Plan

Classes 5, 6, 7, and 8 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, all of the Liquidation Trust Assets shall immediately vest in the Liquidation Trust.

B. *Sources of Consideration for Plan Distributions.*

Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Liquidation Trust Assets. All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by the Liquidation Trust Claims Reserve or the Professional Fee Claim Reserve. On the Effective Date, the Debtors shall fund the Liquidation Trust Claims Reserve, and Professional Fee Claim Reserve in full in Cash.

C. *Liquidation Trust.*

1. Creation of Liquidation Trust. On the Effective Date, the Liquidation Trust shall be created in accordance with the Liquidation Trust Agreement for the benefit of holders of Beneficial Trust Interests. The Liquidation Trust Agreement shall (i) be in form and substance consistent in all respects with this Plan and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes. All relevant parties (including, the Debtors, the Committee, the Liquidation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust. The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trustee are set forth and will be governed by the Liquidation Trust Agreement, the Plan and Confirmation Order.

2. Transfers to the Liquidation Trust. On the Effective Date, the Debtors and their Estates and Decathlon, as applicable, shall transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust, the Liquidation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

3. Purpose of the Liquidation Trust. The Liquidation Trust shall be established for the primary purpose of liquidating its assets and making distributions in accordance with the Plan, Confirmation Order and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust. The Liquidation Trust, acting through the Liquidation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or

21

liquidate the Debtors, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

4. <u>Administration of the Liquidation Trust</u>.  The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Plan.  In the event of any inconsistency between the Plan or the Confirmation Order and the Liquidation Trust Agreement as such conflict relates to anything other than the establishment of a Liquidation Trust, the Plan or Confirmation Order shall control.

5. <u>Appointment of Liquidation Trustee</u>.  As of the Effective Date, the Liquidation Trustee shall be appointed as trustee of the Liquidation Trust pursuant to the Liquidation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Liquidation Trust Agreement, the Plan, the Confirmation Order and the Bankruptcy Code.  The Liquidation Trustee shall be the exclusive trustee of the Estates under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

6. <u>Compensation of the Liquidation Trustee</u>.  The Liquidation Trustee shall be compensated pursuant to the terms of the Liquidation Trust Agreement.  Any professionals retained by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidation Trustee.  The payment of fees and expenses of the Liquidation Trustee and its professionals shall be made in the ordinary course of business from the Liquidation Trust Assets and shall not be subject to Bankruptcy Court approval.  The identity of the Liquidation Trustee and the proposed compensation shall be disclosed in the Plan Supplement.

7. <u>Liquidation Trust Advisory Board</u>.  On the Effective Date, the Creditors' Committee and Decathlon shall have appointed the Liquidation Trust Advisory Board to oversee the implementation of the Plan and Liquidation Trust.  The Liquidation Trustee shall consult with the Liquidation Trust Advisory Board with respect to (i) the pursuit, settlement or resolution of Retained Causes of Action; (ii) the retention of advisors; (iii) objections, compromises or settlements to any Claims; and (iv) the amount and timing of distributions to holders of Beneficial Trust Interests provided for or contemplated under the Plan or Liquidation Trust Agreement.  The identity of the members of the Liquidation Trust Advisory Board shall be disclosed in the Plan Supplement; *provided*, that the Creditors' Committee shall designate two (2) members of the Liquidation Trust Advisory Board and the Decathlon shall designate one (1) member of the Liquidation Trust Advisory Board.

8. <u>Responsibilities of the Liquidation Trustee</u>.  The responsibilities of the Liquidation Trustee under the Liquidation Trust Agreement and this Plan shall include those set forth in the Liquidation Trust Agreement, including, without limitation, the following (a) the receipt of the Liquidation Trust Assets; (b) the establishment and maintenance of such operating, reserve and trust account(s) as are necessary and appropriate to carry out the terms of the Liquidation Trust and the Plan, including the Liquidation Trust Claims Reserve; (c) the investment of Cash that is a Liquidation Trust Asset; (d) the pursuit of objections to, estimation of and settlements of all Claims, regardless of whether any such Claim is listed on the Debtors' Schedules, other than Claims that are Allowed pursuant to the Plan; (e) the prosecution, settlement or abandonment of

any Retained Causes of Action; (f) unless otherwise provided in the Plan, the calculation of all distributions to be made under this Plan; (g) authorizing and making, through the Distribution Agent, all distributions to be made under this Plan, (h) file all monthly operating reports and post-confirmation reports and payment of all quarterly fees owing to the U.S. Trustee, (i) winding down of the remaining affairs of the Debtors (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtors), (j) file any and all tax returns for the Debtors and the Estates, as applicable, provided however, the Liquidation Trustee shall have no personal liability for the signing or accuracy of the Debtors' tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, (k) take such actions as are necessary or appropriate to close or dismiss any or all of the Chapter 11 Cases, and (l) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

9. <u>Powers of Liquidation Trustee</u>.  The powers of the Liquidation Trustee, as set forth in the Liquidation Trust Agreement shall include, without limitation and without further Bankruptcy Court approval, each of the following:

    i. To act on behalf of the Liquidation Trust, including the right to effect all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtors, necessary or convenient to implement the provisions of this Plan and the Liquidation Trust Agreement;

    ii. With respect to any Liquidation Trust Asset, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued and take all actions that may be or could have been taken by any member, officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including, without limitation, the dissolution of the Debtor;

    iii. To manage, monitor and enforce all of the Debtors' and the Estates' rights, and interests under the Plan, the Confirmation Order, the Liquidation Trust Agreement, any other agreements of the Debtors, and any other Orders of the Bankruptcy Court;

    iv. To authorize and make, through the Distribution Agent, distributions to holders of Allowed Claims provided for or contemplated in the Plan;

    v. To authorize and make through the Distribution Agent, distribution to holders of Beneficial Trust Interests provided for or contemplated under the Plan or Liquidation Trust Agreement;

    vi. Except to the extent set forth in the Plan, to object to any Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Claim regardless of whether such Claim was Disputed on the

23

Effective Date, prior to objection without supervision or approval of the
Bankruptcy Court, free of any restriction of the Bankruptcy Code, the
Bankruptcy Rules, the local rules of the Bankruptcy Court, and the guidelines
and requirements of the U.S. Trustee, other than those restrictions expressly
imposed by the Plan, the Confirmation Order or the Liquidation Trust
Agreement;

vii. To make decisions, without further Bankruptcy Court approval, regarding the
retention or engagement of professionals, employees and consultants by the
Liquidation Trust and the Liquidation Trustee and to pay the fees and charges
incurred by the Liquidation Trustee on the Liquidation Trust's behalf on or after
the Effective Date for fees and expenses of professionals (including those
retained by the Liquidation Trustee), disbursements, expenses or related support
services relating to the Liquidation Trust;

viii. To (a) file, if necessary, any and all tax and information returns required with
respect to the Liquidation Trust as a grantor trust pursuant to Treas. Reg. 1.671-
4(a) or otherwise, (b) make tax elections by and on behalf of the Liquidation
Trust, and (c) pay taxes, if any, payable by the Liquidation Trust;

ix. To take all other actions not inconsistent with the provisions of the Plan that the
Liquidation Trustee deems reasonably necessary or desirable with respect to
administering the Plan;

x. To implement and/or enforce all provisions of the Plan, including entering into
any agreement or executing any document required by or consistent with the
Plan, the Confirmation Order or the Liquidation Trust Agreement;

xi. To abandon in any commercially reasonable manner, including abandonment
or donation to a charitable organization of its choice, any Liquidation Trust
Asset in the reasonable business judgment of the Liquidation Trustee;

xii. Except as otherwise set forth herein, to prosecute and/or settle any Retained
Causes of Action, with or without approval of the Bankruptcy Court, and
exercise, participate in or initiate any proceeding before the Bankruptcy Court
or any other court of appropriate jurisdiction and participate as a party or
otherwise in any administrative, arbitrative or other nonjudicial proceeding and
pursue to settlement or judgment such Retained Causes of Action;

xiii. To purchase or create and carry all insurance policies and pay all insurance
premiums and costs the Liquidation Trustee deems necessary or advisable;

xiv. To collect and liquidate and/or distribute all Liquidation Trust Assets pursuant
to the Plan, the Confirmation Order and the Liquidation Trust Agreement;

xv. To hold any legal title to any and all of the Liquidation Trust Assets;

xvi.   If any of the Liquidation Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidation Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Liquidation Trustee hereunder, subject to the conditions and limitations of the Liquidation Trust Agreement, except as modified or limited by the Liquidation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Liquidation Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and/or appoint a successor trustee at any time by the execution by the Liquidation Trustee of a written instrument declared such trustee removed from office, and specifying the effective date and time of removal;

xvii.   Retain any and all Insurance Policies of the Debtors providing coverage with respect to Retained Causes of Action; and

xviii.   Exercise such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

10. <u>Tax Treatment of the Liquidation Trust</u>.  The Liquidation Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(f) and in compliance with Revenue Procedure 94-45, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code.  Accordingly, the holders of Beneficial Trust Interests shall be treated for U.S. federal income tax purposes (i) as direct recipients of undivided interests in the Liquidation Trust Assets (other than to extent the Liquidation Trust Assets are allocable to Disputed Claims) and as having immediately contributed such assets to the Liquidation Trust, and (ii) thereafter, as the grantors and deemed owners of the Liquidation Trust and thus, the direct owners of an undivided interest in the Liquidation Trust Assets (other than such Liquidation Trust Assets that are allocable to Disputed Claims).

11. <u>Tax Reporting</u>.

i.   The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with this section of the Plan.  The Liquidation Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items allocable to any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder in accordance with their relative ownership of Beneficial Trust Interests.

ii.    [As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trust shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidation Trust that are required by any Government Unit for taxing purposes.]

iii.    The Liquidation Trust shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any "disputed ownership fund") or the Liquidation Trust Assets. In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and netted against any subsequent distribution in respect of the allowance or disallowance of such Claims.

iv.    The Liquidation Trustee (i) may timely elect to treat any Liquidation Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidation Trustee and the holders of Beneficial Trust Interests) shall report for United States federal, state and local income tax purposes consistently with the foregoing. The Liquidation Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

12. <u>Retained Causes of Action</u>. The Liquidation Trustee shall have the sole right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.

13. <u>Costs and Expenses of the Liquidation Trust</u>. The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and other professionals retained on behalf of the Liquidation Trust, shall be paid out of the Liquidation Trust Assets, subject to the terms of the Liquidation Trust Agreement.

14. <u>Effective Date</u>. On the Effective Date, the Liquidation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Liquidation Trust Agreement to carry out and implement the purposes and intent of the Plan.

D. *Dissolution of Liquidation Trust.*

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of either as a Liquidation Trust for federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the

recovery on and liquidation of the Liquidation Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such or motion or such motion is withdrawn.

E.  *Liquidation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state and local laws requiring registration of securities.  It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Liquidation Trust Agreement.

F.  *Tax Returns.*

After the Effective Date, the Liquidation Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of such Debtors' Chapter 11 Cases, as determined under applicable tax laws.

G.  *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes and purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtors shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; provided, further, however, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan.

H.  *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtors, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

I.  *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtors and their respective directors, members, trustees, officers, and managers are and, after the Effective Date, the Post-Effective Date Debtors are

authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

J.  *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.  *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors reserve and assign to the Liquidation Trust, any and all such Retained Causes of Action, whether arising before or after the Petition Date, and preserve the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date. The Liquidation Trustee, on behalf of the Liquidation Trust, may pursue such Retained Causes of Action, in their sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Liquidation Trust will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

L.  *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Liquidation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

M.  *Debtors' Directors, Officers, Members and Managers.*

On the Effective Date, all officers, directors, members and managers of the Debtors shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity. On after the Effective Date, the Liquidation Trustee shall serve as the sole officer, sole director, sole member or sole manager of the Debtors, but he or she shall retain and enforce

Retained Causes of Action as the representative of the Estates in his or her capacity as the Liquidation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, member or manager of the Debtors.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

N. *Debtors' Existence.*

From and after the Effective Date, the Debtors shall continue in existence for the purpose of winding up their affairs as expeditiously as practicable.  Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtors without any requirement of further action by any Debtor.  On and after the Effective Date, the Debtors' remaining assets and affairs shall be administered and managed by the Liquidation Trustee in accordance with the Plan.

Upon certification to be Filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtors shall be deemed to be dissolved without any further action by the Debtors or the Liquidation Trustee, including the filing of any documents in any office in any jurisdiction where the Debtors are organized. However, the Liquidation Trustee shall have the authority to take all necessary action to dissolve any Debtor.  Further, upon the aforementioned certification and entry of a Final Decree, the Liquidation Trustee shall be authorized, in his sole discretion, to discard or destroy any and all of the Debtors' books and records.  Upon the Effective Date, the Debtors shall turn over its remaining books and records to the Liquidation Trustee.

O. *Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve and its members shall be released of their respective duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan; and (b) the retention or employment of the Creditors' Committee's respective professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

P. *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtors and Liquidation Trust to take all other actions that may be necessary, useful or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A. *Distribution Agent.*

The Distribution Agent, if any, on behalf of the Debtors and/or Liquidation Trustee, shall make all distributions under the Plan on account of Allowed Claims against the Debtors pursuant to the terms of the Plan, Confirmation Order and the Liquidation Trust Agreement, underlined provided, underlined however, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee

Reserve. All distributions to holders of Beneficial Trust Interests shall be made by the Distribution Agent. The Distribution Agent shall act at the direction of the Liquidation Trustee.

B. *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidation Trustee shall determine in his or her sole discretion.

C. *Delivery of Distributions to Holders of Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Allowed Claims shall be made on the Distribution Date.

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims Filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Liquidation Trustee have been notified in writing of a change of address. If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Article V.G of the Plan.

D. *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims, unless otherwise provided herein.

E. *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidation Trustee may require, in the Liquidation Trustee's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Liquidation Trust the appropriate Form W-8 or Form W-9, as applicable to each Holder. Notwithstanding any provision in the Plan to the contrary, the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

The Liquidation Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Liquidation Trustee's reasonable

business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

F. *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidation Trust shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Liquidation Trustee shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidation Trust shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Liquidation Trust shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement.

G. *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Liquidation Trustee in the Unclaimed Property Reserve for a period of sixty (60) days. Once the distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Liquidation Trustee shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of sixty (60) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order and Liquidation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Liquidation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a *pro rata* basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Liquidation Trust.

Nothing contained in the Liquidation Trust Agreement, this Plan, or the Confirmation Order shall require the Debtors, the Liquidation Trustee, the Liquidation Trust, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

H. *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

I. *Setoffs and Recoupment.*

The Liquidation Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidation Trust of any such Claim it may have against the holder of such Claim.

J. *Distributions by Liquidation Trust.*

The Liquidation Trust shall not be obligated to make a distribution on account of the Beneficial Trust Interests that would impair the ability of the Liquidation Trust to pay the expenses incurred by the Liquidation Trust.

K. *Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.  The Liquidation Trustee shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Liquidation Trust.  To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Liquidation Trust on account of such Claim, such holder shall repay, return or deliver any distribution to the Liquidation Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The Liquidation Trust and the Debtors' Estates reserve all of their rights, remedies, claims and actions against any such holders who fail to repay or return any such distribution.

2. Claims Payable by Third Parties.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.  Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A. *Prosecution of Objections to Claims*

1.  <u>Objections to Claims</u>.  Except as otherwise provided in the Plan, all objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Deadline, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list of the Bankruptcy Cases.  If an objection has not been Filed to a Proof of Claim or request for Administrative Claims by the applicable deadline, the Claim to which the Proof of Claim or request for payment of Administrative Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

2.  <u>Authority to Prosecute Objections</u>.  After the Confirmation Date, only the Debtors (or after the Effective Date, the Liquidation Trustee on behalf of the Liquidation Trust) will have the authority to file, settle, compromise, withdraw or litigation to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.  After the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court in accordance with the Liquidation Trust Agreement.

B. *Adjustment to Claims Without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Debtors or the Liquidation Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

C. *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Liquidation Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. § 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting

the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D. *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors or the Liquidation Trustee, as applicable, shall establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Debtors or Liquidation Trustee, as applicable, consistent with the Proof of Claim Filed by the applicable holder of such Disputed Claim.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9. As such, such assets will be subject to entity-level taxation, and the Debtors or the Liquidation Trustee, as applicable, shall be required to comply with the relevant rules.

E. *Disallowance of Claims.*

Any Claims held by an Entity from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

Except as provided herein or otherwise agreed to by the Liquidation Trustee in its sole discretion, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order

F. *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

G. *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VI.A of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan.

H. *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Liquidation Trustee shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VII
## LIMITED SUBSTANTIVE CONSOLIDATION

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate solely for distribution purposes.

To promote efficient administration and effectuation of the Plan, including for purposes of distributions to be made under the Plan, the Debtors seek authority under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 to consolidate the Debtors' Estates solely for distribution purposes. As a result of such consolidation, (i) the Debtors and their Estates shall be deemed to be a single Entity and Estate for purposes of distributions and (ii) each Claim that is Allowed against more than one Debtor shall be deemed to be a single Allowed Claim against the consolidated Debtors. For the avoidance of doubt, for all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan. This limited consolidation, however, shall not effectuate a substantive consolidation of the Debtors or their Estates or affect: (A) the legal and corporate structures of the Debtors; (B) distributions from any Insurance Policies or proceeds of such policies; or (C) the vesting of assets in the Liquidation Trust. This Plan shall serve as a motion seeking entry of an order consolidating the Debtors, as described and to the limited extent set forth above. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan and Filed with the Bankruptcy Court and served in accordance with Solicitation Procedures Order, the Confirmation Order may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing. As soon as practicable after the Effective Date, the Liquidation Trustee is authorized to and shall submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases

except iSun, Inc.'s Chapter 11 Case. The Debtors' consolidated estate shall be administered through iSun, Inc.'s Chapter 11 Case. Once the Plan has been fully administered, the Liquidation Trustee shall File a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Purchaser pursuant to the terms of the Stalking Horse Agreement.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto. The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VIII.A hereof are deemed rejected as of the Effective Date. The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect to the same. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 5 of the Plan, which information shall be included in the Notice of the Effective Date.

## ARTICLE IX
## SETTLEMENT, INJUNCTION AND RELATED PROVISIONS

A. *Settlement and Compromise of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement

or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement and compromise, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Subject to the occurrence of the Effective Date, notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement agreement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

B. *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C. *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided*, *however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

D. *Injunction.*

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtors or a Claim, Cause of Action, or other debt or liability against the Debtors or against any Exculpated Party that have been treated, settled, compromised and/or exculpated under the this Plan (the "<u>Treated Claims and Interests</u>") are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Exculpated Parties or any property of the same, on account of or in connection with or with respect to such Treated Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation; and (iv) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *<u>provided</u>, <u>however</u>*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct; *<u>provided further, however</u>*, that the foregoing injunction does not apply to any actions taken with respect to any party's obligations or remedies under the Plan, the Sale Order, the Stalking Horse Agreement or any other or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

E. *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### ARTICLE X
### CONDITIONS PRECEDENT TO
### CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1. the Bankruptcy Court shall have entered the Confirmation Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2. all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3. the Liquidation Trust Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

4. the Liquidation Trust shall have been established in accordance with the Liquidation Trust Agreement and shall have been funded with the Liquidation Trust Assets; and

5. all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B. *Waiver of Conditions.*

The conditions to Consummation set forth in Article X of the Plan may be waived only by prior written consent of the Debtors, after consultation with the Creditors' Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article X of the Plan, the Debtors shall immediately declare the Effective Date and File the Notice of Effective Date.

C. *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holder of any Claim or any other Entity in any respect.

## ARTICLE XI
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A. *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, after consultation with the Creditors' Committee, reserve the right, to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors, after consultation with the Creditors' Committee, expressly reserve their rights, to revoke or withdraw, to alter, amend or modify the Plan, one or more times, after Confirmation, and before Consummation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any

inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B. *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, after consultation with the Creditors' Committee, to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any holder of a Claim or Interest or any other Entity or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, any holder or any other Entity.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases pursuant to sections 105(a) and 1142 of the Bankruptcy Code; provided, however, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors each of respective successors and assigns of the foregoing persons and Entities.

B. *Additional Documents.*

On or before the Effective Date, the Debtors, in consultation with the Creditors' Committee, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by the Debtors, with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

D. *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

E. *Notices.*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

The Debtors:

> iSun, Inc.
> 400 Avenue D, Suite 10
> Williston, Vermont 05495

with a mandated copy (which shall not constitute notice) to:

> *Counsel to Debtors and Debtors in Possession*
> Gellert Seitz Busenkell & Brown LLC
> Michael Busenkell
> 1201 N. Orange St., 3rd Floor
> Wilmington, Delaware 19801
> Telephone: (302) 425-5812
> Email: mbusenkell@gsbblaw.com

F. *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.  For the avoidance of doubt, all Final Orders previously entered by the Bankruptcy Court remain in full force and effect.

G. *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://dm.epiq11.com/case/isun/info or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H. *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

I. *Closing of Chapter 11 Cases.*

The Liquidation Trust shall promptly, after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Cases that has been fully administered.

J. *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest.  In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtors.

K. *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtors.

L. *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any manner affects the terms, provisions or interpretation of the Plan.

M. *Governing Law.*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving any effect to the principles of conflicts of law or such jurisdiction.

N. *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

Dated: October 4, 2024                        Respectfully submitted,

**GELLERT SEITZ BUSENKELL**               **BENESCH, FRIEDLANDER,**
**& BROWN, LLC**                           **COPLAN & ARONOFF LLP**
                                           Jennifer R. Hoover (DE 5111)
*/s/ Michael Busenkell*                    Kevin M. Capuzzi (DE 5462)
Michael Busenkell (DE 3933)                Steven L. Walsh (DE 6499)
Amy D. Brown (DE 4077)                     Juan E. Martinez (DE 6863)
Michael Van Gorder (DE 6214)               1313 North Market Street, Suite 1201
1201 N. Orange St., 3rd Floor              Wilmington, Delaware 19801
Wilmington, Delaware 19801                 Telephone: (302) 442-7010
Telephone: (302) 425-5812                  Facsimile: (302) 442-7012
Facsimile: (302) 425-5814                  Email: jhoover@beneschlaw.com
Email: mbusenkell@gsbblaw.com                    kcapuzzi@beneschlaw.com
       abrown@gsbblaw.com                        swalsh@beneschlaw.com
       mvangorder@gsbblaw.com                    jmartinez@beneschlaw.com

*Counsel for the Debtors and Debtors-in-*   -and-
*Possession*

**SEWARD & KISSEL LLP**
Robert J. Gayda (*pro hac vice*)
Catherine V. LoTempio (*pro hac vice*)
Andrew J. Matott (*pro hac vice*)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 450-8421
Email: gayda@sewkis.com
         lotempio@sewkis.com
         matott@sewkis.com

*Counsel to the Official Committee of
Unsecured Creditors*