IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iSun, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11144 (TMH)<br><br>(Jointly Administered)<br><br>Hearing Date: January 29, 2025, at 10:00 a.m. (ET)<br>Obj. Deadline: January 22, 2025 at 4:00 p.m. (ET) |

## DEBTORS' MOTION FOR APPROVAL OF STIPULATION AND SETTLEMENT RESOLVING DEBTORS' DEMAND FOR REIMBURSEMENT AND PAYMENT FROM PURCHASER BETWEEN THE DEBTORS AND CLEAN ROYALTIES, LLC PURSUANT TO BANKRUPTCY RULE 9019

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby file this Motion (the "Motion") for an order ("Order"), substantially in the form attached hereto as **Exhibit A**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), approving *Stipulation and Settlement Resolving Debtors' Demand for Reimbursement and Payment from Purchaser* dated January 8, 2025 (the "Settlement Agreement")[2] among the Debtors and Clean Royalties, LLC ("Clean Royalties") (together, the "Parties"). The Settlement Agreement is attached to the Order as **Exhibit 1**. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316); (collectively referred to as the "Debtors"). The Debtors' mailing address is: 400 Avenue D, Suite 10 Williston, Vermont 05495, with copies to Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Settlement Agreement or the Sale Order, as applicable.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On June 3, 2024, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their affairs as debtors in possession pursuant to §§ 1107(a) and 1009 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these cases.

3. On June 14, 2024, the United States Trustee appointed the Committee of Unsecured Creditors (the "Committee").

4. Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and regarding Debtors' business and capital structure is set forth in the *Declaration of Jeffrey Peck in Support of Debtors' Petition and First Day Motions* [D.I. 4], which is incorporated by reference herein.

5. On August 23, 2024, the Court entered the *Order (I) Approving the Sale of the Debtors' Assets Free and Clear; (II) Approving the Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* [D.I. 393] (the "Sale Order"). Paragraph 67 of the Sale Order detailed certain amounts that would be treated as Assumed Liabilities under the Stalking Horse Agreement.

6. Pursuant to the Debtors' letter to Clean Royalties, dated December 27, 2024 (the "Demand Letter"), the Debtors demanded that Clean Royalties reimburse the Debtors for the following amounts:

   a. $15,951.35 for certain severance obligations, 401(k) obligations, and paid time off obligations ("PTO") for a certain employee that was not hired by the Purchaser;

   b. $5,000 related to a lease for certain premises located in New York, for which the subject lease was not assigned to the Purchaser (the "New York Lease"); and

   c. $25,625 for certain project-related materials costs ("Materials").

7. On December 30, 2024, Clean Royalties responded to the Demand Letter as follows:

   a. Clean Royalties had no obligation under the Sale Order or Stalking Horse Agreement to satisfy any severance obligation;

   b. Clean Royalties had no obligations under the Sale Order or Stalking Horse Agreement to satisfy any 401(k) obligations;

   c. Clean Royalties agreed to assume up to $600,000 of PTO under the Sale Order but, in fact, had already assumed, and given credit through roll-over of hired employees, over $719,000 of PTO and thus no PTO amounts was required to be paid to the Debtors;

   d. At most, Clean Royalties was only responsible for $3,225 related to the New York Lease, the *per diem* rental amount from August 1 to August 5, the date that it advised the Debtors it would not seek to take assignment of the New York Lease; and

   e. While Clean Royalties agreed to pay up to fifty percent (50%) of Project Administrative Expenses for projects that were not subject of an Assumed Contract, approximately 80% of the amounts asserted to be owed for Materials were either (i) outside of the definition of Project Administrative Expenses because those amount related to projects that were suspended or terminated pre-petition or (ii) Project Administrative Expenses related to projects that the Purchaser had assumed and would be paid by the Purchaser in the course of completing the projects under the terms of the Sale Order. Thus, Clean Royalties asserted that the amounts it owed the Debtors for the Materials were no greater than $5,000.

8. Clean Royalties and the Debtors, having exchanged information in good faith and considered the merits of the parties' respective position, as well as the benefits of a prompt resolution of the disputes among them, agreed to settle the requests set forth in the Demand Letter upon the terms and conditions of the Settlement Agreement.

3

## TERMS OF THE SETTLEMENT AGREEMENT

9. The following provisions summarize the most pertinent terms of the Settlement Agreement:

   a. The Settlement Agreement shall become effective upon the Court entering the Order (the "Effective Date").

   b. Within five (5) business days of the Effective Date, Clean Royalties shall pay the estates by wire transfer the amount of $10,000 (the "Payment"). The Payment shall be paid to the iSun, Inc. estate for the administrative convenience of the Purchaser, but the Debtors and their estates shall be solely responsible for any allocation of the Payment among them.

   c. Effective as of the Effective Date, but subject to Clean Royalties making the Payment, Clean Royalties and its direct and indirect parents, subsidiaries, affiliates, members, managers, officers and professionals (the "Clean Royalties Parties") shall have no further payment obligations to the Debtors and their estates under the Sale Order and Stalking Horse Agreement, and the Debtors and their estates (and any party claiming through them or on their behalf, whether directly or derivatively) shall conclusively, absolutely, unconditionally, irrevocably, and forever release and be deemed to have released the Clean Royalties Parties from any and all claims or causes of action of any kind whatsoever, whether known or unknown, asserted or not yet asserted, arising out of the Sale Order or Stalking Horse Purchase Agreement.

## RELIEF REQUESTED

10. By this Motion, the Debtors request, pursuant to Bankruptcy Rule 9019, entry of an order in the form attached hereto as **Exhibit A** authorizing and approving the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

11. Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion and after notice and a hearing, the Court may approve a compromise or settlement. Whether to accept or reject a compromise lies within the sound discretion of the Court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise is appropriate if it is "fair, reasonable, and in the interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

12. It is well settled that compromises are favored in bankruptcy cases to minimize litigation and to expedite administration. Myers v. Martin (In re Martin), 91 F.3d 389, 392 (3d Cir. 1996); Matter of Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979); In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006). A court should "defer to the Debtors' judgment so long as there is a legitimate business justification" to support the compromise. Martin, 91 F.3d at 395 (citations omitted).

13. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." Id. Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy Court. In re Michael, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

14. Moreover, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge…is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983); In re Planned Protective Servs., Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of

reasonableness.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994); In re Tech. for Energy Corp., 56 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

15.     Entering the Order approving the Settlement Agreement is fair, reasonable, and in the best interests of the Debtors, their estates, and their creditors.  The Debtors have spent considerable time and effort analyzing amounts that they may assert are owed by Clean Royalties under the Stalking Horse Agreement, including the Debtors' likelihood of success in collecting such amounts.  That resulted in the issuance of the Demand Letter.

16.     The Debtors have also analyzed Clean Royalties' response to the Demand Letter, including Clean Royalties' acknowledgement that certain amounts are Assumed Liabilities that it will be directly responsible for paying related to assumed projects, and the likelihood of Clean Royalties prevailing in its defenses to the remaining, disputed amounts in the Demand Letter.  Ultimately, the Debtors and their professionals believe that the Settlement Agreement reflects a fair resolution of the disputes being resolved therein in that the Settlement Agreement resolves the remaining payment amounts that are owed to the estate by the Purchaser and provides for prompt payment thereof.

17.     The Debtors respectfully submit that the Settlement Agreement is fair, reasonable and in the best interests of the Debtors' estates and their creditors.  As such, Debtors believe that the settlement and compromise is found on the Debtors' sound business judgment.

**NOTICE**

18.     Notice of the Motion will be given to (a) counsel to the Committee, (b) counsel to the Debtors' DIP Lender; (c) counsel to Clean Royalties; (d) all parties who requested notice pursuant to Bankruptcy Rule 2002, and (e) the Office of the United States Trustee for the District of Delaware.

**NO PREVIOUS REQUEST**

19. No previous motion for the relief requested herein has been made to this or any other Court by the Debtors.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order in the form annexed hereto as **Exhibit A** approving the Settlement Agreement and granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 8, 2025

GELLERT SEITZ BUSENKELL & BROWN, LLC

*/s/ Michael Van Gorder*
Michael Busenkell (DE 3933)
Amy D. Brown (DE 4077)
Michael Van Gorder (DE 6214)
1201 North Orange Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5812
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
　　　　abrown@gsbblaw.com
　　　　mvangorder@gsbblaw.com

*Counsel to the Debtors and Debtors-in-Possession*