**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| iSun, Inc., et al. | Case No. 24-11144 (TMH) |
| Debtors. | Jointly Administered |

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

Before they filed for bankruptcy on June 3, 2024 (the "Petition Date"), the Debtors[2] provided a suite of solar energy services, including residential systems installation.[3] Sometime in 2018 and/or 2019, Andre Barnett ("Mr. Barnett") and Kimberly Barnett ("Mrs. Barnett") (together, the "Barnetts") contracted to have Debtor Hudson Valley install solar panels in their home (the "Installation"). As described more fully below, the Debtors later won an arbitration award after the

[1] On October 9, 2026, Mr. Barnett filed his notice of appeal [D.I. 942] (the "Notice of Appeal") of this Court's Order Denying Andre Barnett and Kimberly Barnett's Motion for Relief from Stay [D.I. 939]. This is the Court's written opinion that supplements the order and the Court's oral ruling. See Bankr. D. Del. L.R. 8003-2.
[2] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) iSun, Inc. ("iSun") (0172) (ii) Hudson Solar Service, LLC ("Hudson") (1635); (iii) Hudson Valley Clean Energy, Inc. ("Hudson Valley") (8214); (iv) iSun Corporate, LLC ("iSun Corporate") (4391); (v) iSun Energy, LLC ("iSun Energy") (1676); (vi) iSun Industrial, LLC ("iSun Industrial") (4333); (vii) iSun Residential, Inc. ("iSun Residential") (3525); (viii) iSun Utility, LLC ("iSun Utility") (4411) ; (ix) Liberty Electric, Inc. ("Liberty") (8485); (x) Peck Electric Co. ("Peck") (5229); (xi) SolarCommunities , Inc. ("SolarCommunities") (7316); and (xii) Sun CSA 36, LLC ("Sun CSA") (7316) (collectively, the "Debtors").
[3] See D.I. 4, ¶ 14.

Barnetts failed to pay the entire balance due for the Installation (the "Award"). Since then, the Barnetts have serially challenged the Award in state court, to no avail. They did so most recently on August 14, 2026. Four days later, the Barnetts moved this Court for relief from the Bankruptcy Code's automatic stay of the commencement or continuation of a judicial action that was or could have been commenced against the Debtors pre-petition (the "Motion").[4]

More specifically, the Barnetts so moved "to prosecute their pending" action to vacate the Award "in the Supreme Court of the State of New York, County of Dutchess [the "Dutchess County Court"] . . . through final judgment and any appeal therefrom[.]"[5] George L. Miller, the Debtors' Chapter 7 Trustee (the "Trustee"), responded in opposition to the Motion,[6] and the Barnetts replied (the "Reply").[7] On September 29, 2026, the Court held a hearing on the Motion ("the Hearing"), at which the Trustee and Mr. Barnett submitted oral arguments. The Court denied the Motion at the Hearing and entered an accompanying Order,[8] which this Opinion supports.

## II. JURISDICTION

The District Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). The Debtors' cases have been referred to this Court

---

[4] D.I. 912. See also 11 U.S.C. § 362(a)(1).
[5] Mot. at 1, 7.
[6] D.I. 930.
[7] D.I. 933.
[8] D.I. 939.

under 28 U.S.C. § 157(a) and the District Court's Standing Order of February 29, 2012. The Motion constitutes a core matter under 28 U.S.C. § 157(b)(2)(G).

## III. FINDINGS OF FACT[9]

In April of 2019, Mr. Barnett signed a purchase and sale agreement for the Installation (the "Agreement");[10] per this Agreement, any disputes regarding the Installation were to be "resolved by binding arbitration in accordance with Construction Industry Arbitration Rules of the American Arbitration Association ["the AAA"]."[11] And the parties agreed that "[t]he venue of any arbitration proceeding shall be Dutchess County, New York."[12] Accordingly, on March 12, 2020, Hudson Valley filed a demand for arbitration with the AAA, alleging that the Barnetts breached the Agreement by refusing to fully compensate Hudson Valley for the completed Installation.[13] In their answer, the Barnetts counterclaimed, alleging $99,000 in damages for defective design and installation.[14]

After a day-long hearing, a AAA arbitrator issued the Award on August 7, 2020, therein denying the Barnetts' counterclaims and directing them to pay $20,471.89.[15] The arbitrator reasoned that: (1) the Installation was completed as

[9] These findings are based on the Court's review of the relevant pleadings and the exhibits attached thereto.
[10] In the Motion, the Barnetts submit that they first contracted for the Installation sometime in September of 2018. See Mot. at 1–2.
[11] D.I. 930-A-1 at 5–6.
[12] Id. at 5.
[13] See id. at 1–2.
[14] D.I. 930-A-2.
[15] D.I. 930-A-4.

required under the Agreement; (2) any unfinished work was the fault of the Barnetts, who twice turned away Hudson Valley employees dispatched to the Barnetts' residence to complete punchlist items; (3) any failure to wire the Barnetts' electric boilers was a product of delay in obtaining municipal approvals, against which the Agreement specifically exculpated Hudson Valley; and (4) the Barnetts did not pay in full for the Installation.[16] The Award—which was transmitted to the parties' counsel that same day—issued "in full settlement of all claims and counterclaims submitted to [the] arbitration."[17]

On October 19, 2020, pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 7510 and 7514, Hudson Valley petitioned the Dutchess County Court for an order confirming and enforcing the Award (the "CPLR Petition").[18] The Barnetts moved to dismiss the CPLR Petition on November 23, 2020 (the "First Motion").[19] They argued that the CPLR Petition failed to state a claim because, among other things, the Installation contract was fraudulently induced by Hudson Valley, which allegedly failed to perform as promised by, for example, neglecting to wire the electric boilers.[20] Nevertheless, on December 1, 2020, the Dutchess County Court issued an Order granting the CPLR Petition (the "First Order").[21] The

---

[16] Id.
[17] Id. at 3; D.I. 930-A-5.
[18] D.I. 930-A.
[19] D.I. 930-C.
[20] See id. ¶ 6.
[21] D.I. 930-D at 2.

Dutchess County Court reasoned that the Award should stand because the Barnetts "[did] not raise any of the grounds for vacatur set forth in CPLR §7511."[22]

Unsatisfied with the First Order, Mr. Barnett moved for leave to renew and reargue the Petition and/or the First Motion (the "Third Motion").[23] By this Third Motion, Mr. Barnett also appeared to request vacatur of the Award and/or the First Order pursuant to CPLR § 7511.[24] The Dutchess County Court denied the Third Motion on January 14, 2021, again reasoning that Mr. Barnett had failed to demonstrate any grounds for vacating the Award.[25] Roughly one year later, Mr. Barnett filed a flurry of documents with the Dutchess County Court;[26] these culminated in a "Notice for Hearing for Defendant" (the "Fourth Motion"), which, on April 25, 2022, the Dutchess County Court denied as improper while noting that the Award matter was closed.[27]

More than three years later, and approximately a year-and-a-half after the Petition Date, on January 2, 2026, Mr. Barnett then moved to vacate a judgment entered on February 8, 2021 (the "February 2021 Judgment"), wherein the Dutchess County Court decreed that Hudson Valley was entitled to execute on the Award, plus interest (the "Fifth Motion").[28] This Fifth Motion was grounded in

---

[22] Id. (citing CPLR § 7510).
[23] See D.I. 930-B at 2; D.I. 930-E at 1; D.I. 930-F at 1.
[24] See D.I. 930-E at 4–5, ¶ 6.
[25] D.I. 930-F at 2.
[26] See D.I. 930-B at 2–3.
[27] D.I. 930-H.
[28] D.I. 930-B at 3; D.I. 930-I at 1.

alleged fraud under CPLR § 5105(a)(3).[29] On February 13, 2026, the Dutchess County Court denied the Fifth Motion because: (1) although CPLR § 5105(a)(3) carries no specific statute of limitations, the Barnetts' nearly five-year delay in filing the Motion was unreasonable as a matter of law; (2) the allegations of fraud contained therein were presented during arbitration as well as in the First Motion; and (3), under CPLR § 5105(a), the Barnetts should have presented the Fifth Motion as a proposed order to show cause.[30] Even so, on March 17, 2026, the Barnetts again moved by ordinary notice of motion to vacate the February 2021 Judgment, which was accordingly denied for lack of jurisdiction.[31]

Finally, on August 14, 2026, the Barnetts moved anew—this time by proposed order to show cause—seeking vacatur of the January 2026 Order and no less than $450,000.00 in damages (the "Seventh Motion").[32] In their supporting memorandum the Barnetts acknowledged the Debtors' bankruptcies and stated that the Seventh Motion rested on two principal grounds: (1) the February 2021 Judgment is void *ab initio* under CPLR § 5105(a)(4) because the arbitrator lacked jurisdiction to enter the Award since the Agreement, along with its associated arbitration clause, was induced by fraud (i.e., Hudson Valley's false promise to perform services that went unrendered—like the promise to wire the Barnetts' boilers); and (2) the Award is susceptible to vacatur under CPLR §§ 5105(a)(3)

[29] Id.
[30] Id. at 1–2.
[31] D.I. 930-J.
[32] D.I. 930-K at 7.

and 7511(b)(1)(i) because Hudson Valley committed a fraud on the arbitration proceeding when its Vice President falsely testified that a certain kind of electrical panel was installed at the Barnetts' residence.[33] On August 24, 2026, these arguments were rejected by the Dutchess County Court, which reasoned that: (1) the fraud allegations remained untimely; (2) the Barnetts waived any jurisdictional objection by appearing through counsel at the arbitration hearing; and (3) that Court lacked authority to vacate the Award anyway given the Debtors' ongoing bankruptcies.[34]

On August 18, 2026, the Barnetts filed the Motion.[35]

## IV. ANALYSIS

### A. Legal Standard

When a bankruptcy petition is filed, 11 U.S.C. § 362(a)(1) automatically stays the commencement or maintenance of all legal action against the debtor.[36] However, relief from the stay is available "for cause" shown under 11 U.S.C. § 362(d)(1). Apart from inadequate protection of the movant's interest in property, the Bankruptcy

---

[33] Id. at 1–2. See also Mot. at 1–2.
[34] D.I. 930-L.
[35] In his Notice of Appeal, Mr. Barnett disputes that Mrs. Barnett was a movant. However, the Motion is titled "Andre Barnett and Kimberly Barnett, Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)." The first paragraph begins "Andre Barnett and Kimberly Barnett . . . hereby move this Court . . . for relief from the automatic stay . . . ." The Motion contains a "Relief Requested" paragraph that recites that "Movants Andre Barnett and Kimberly Barnett respectfully request that this Court enter an Order" granting certain relief.
[36] Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 259 (3d Cir. 2006) ("The scope of the automatic stay is broad and covers all proceedings against a debtor, including arbitration.").

Code does not define "cause" within the meaning of section 362(d)(1). Therefore, the "cause" inquiry is generally understood to encompass "a fact intensive, case-by-case balancing test," whereby courts typically "examin[e] the totality of the circumstances to determine whether sufficient cause exists to lift the stay."[37]

Accordingly, when determining if cause exists to lift the automatic stay so that the movant may litigate against the debtor in a non-bankruptcy forum, courts in this District consider whether: (1) any great prejudice to the bankruptcy estate or debtor will result from commencement or continuation of the action; (2) the hardship to the movant by maintenance of the stay considerably outweighs the hardship to the debtor by maintenance of the action; and (3) the creditor is likely to prevail in the action on the merits.[38] The initial burden of going forward with this test is borne by the party seeking stay relief.[39]

B. Application

1. Prejudice to the Estates

The Barnetts argue that lifting the automatic stay will not prejudice the Debtors' bankruptcy estates because the Barnetts seek only to litigate the validity

[37] In re Trump Ent. Resorts, Inc., 526 B.R. 116, 120 (Bankr. D. Del. 2015) (quoting In re The SCO Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007)).
[38] In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992). Accord In re: Leisure Invs. Holdings LLC, et al., No. 25-10606 (LSS), 2026 WL 2247604, at *9 (Bankr. D. Del. Aug. 4, 2026).
[39] In re DBSI, Inc., 407 B.R. 159, 166 (Bankr. D. Del. 2009) ("The movant bears the initial burden to produce evidence that cause exists to grant relief from the automatic stay; if the movant meets its burden, then the burden shifts to [the] opposing party.").

of the Award.[40] This argument fails for at least two reasons. First, in support of the Seventh Motion, the Barnetts represented to the Dutchess County Court that they sought no less than $450,000 in damages for the very fraud they claimed invalidated the Award.[41] The Barnetts sought $99,000 for similar counterclaims they advanced during the arbitration.[42] And Mr. Barnett clarifies in his Reply brief that he still seeks at least $150,000 from the Debtors.[43] Thus, the Barnetts have made it abundantly clear that they intend to make the Debtors pay. Any such award would drain the Debtors' liquid assets, and, by extension, their estates.[44]

Second, given the nature of the Barnetts' claims, the Trustee would have no choice but to defend against them. This, too, would burden the Debtors' estates, especially as the Barnetts telegraph their intention to appeal from another adverse judgment in the Dutchess County Court.[45] Even assuming the Debtors' ultimate success on the merits, there can be no assurance that they would recoup their litigation costs. Yet "[t]he automatic stay was designed [in part] 'to . . . forestall the depletion of the debtor's assets due to legal costs in defending proceedings against

---

[40] Mot. at 5.
[41] E.g., D.I. 930-K at 7.
[42] D.I. 930-A-2.
[43] See Reply at 22.
[44] Mr. Barnett also argues for the first time in his Reply that the Barnetts' claims are not prejudicial because they arise from pre-petition conduct and therefore do not implicate property of the Debtors' estates. Reply at 8. Yet, as just discussed, the Barnetts' claims for damages obviously implicate whatever cash the Debtors could generate to satisfy an award; this constitutes quintessential estate property.
[45] Mot. at 7, 9.

it[.]"[46] Consequently, the Barnetts have failed to meet their burden of going forward on the first Rexene factor.

2. Balance of Hardships

The Barnetts contend that the balance of hardships tips entirely in their favor. In support, the Barnetts argue that they could be permanently deprived of their claims against the Debtors if these bankruptcies close before the claims can be prosecuted. This is unpersuasive. The Barnetts have been prosecuting these causes of action in one form or another since lodging their counterclaims in the arbitration proceedings. And the Barnetts have taken—by this Court's count[47]—seven further bites at that apple in the Dutchess County Court, which has consistently ruled against them.[48] The Barnetts have had their days in court—many of them in fact. So, the Barnetts will not be prejudiced by an order denying them a further opportunity to challenge the Award or pursue the Debtors for damages—especially when they filed the Seventh Motion *before* moving for relief from the automatic stay. Meanwhile, as discussed above, the Debtors estates will be prejudiced if the Trustee is required to defend against such a motion.

---

[46] Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446 (3d Cir.1982)).

[47] See D.I. 930-B.

[48] Mr. Barnett also requested, for the first time in his Reply brief, stay relief for the purpose of prosecuting an action against the Debtors in the United States District Court for the Southern District of New York. Reply at 9. But "[t]he party filing the opening brief may not reserve material for the reply brief that should have been included in a full and fair opening brief." Del. Bankr. L.R. 7007-2(b)(ii). Therefore, Mr. Barnett's request is not properly before the Court.

The Barnetts offer another argument on this ground. Namely, that the February 2021 Judgement is causing "direct collateral harm" to Mrs. Barnett, whose financial consultancy license may by imperiled thereby.[49] But the Barnetts offer no evidence in support of this claim, which the Court is accordingly unwilling to credit. Therefore, the Barnetts have failed to meet their burden of going forward on the second Rexene factor.

3. Success on the Merits

"The required showing" under the third Rexene factor "is very slight."[50] The Barnetts submit that they clear this low bar. More specifically, the Barnetts contend that the Seventh Motion presents three statutory bases for vacating the Award: (1) under CPLR § 5015(a)(3), the Award rests on fraudulent and/or fabricated evidence; (2) under CPLR § 5105(a)(4), the arbitrator lacked subject matter jurisdiction because the Agreement was procured by fraud; and (3) the arbitrator erred in allowing the false testimony of Hudson Valley's Vice President.

This submission fails for three reasons. First, the Dutchess County Court has repeatedly dismissed these arguments, in one form or another, on the merits. Indeed, it did so most recently in disposing of the Seventh Motion. Second, the Barnetts failed to timely invoke any of these statutory predicates. For example, in denying the Fifth Motion, the Dutchess County Court held that it was unreasonable

---

[49] Mot. at 6.

[50] Rexene, 141 B.R. at 578 (Bankr. D. Del. 1992). Accord In re Cont'l Airlines, Inc., 152 B.R. 420, 426 (D. Del. 1993) ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").

as a matter of law for the Barnetts to wait nearly five years before moving under CPLR § 5015(a); and the Dutchess County Court cited binding precedent in support of that holding.[51]

Furthermore, the Barnetts claim, without evidence, that they "filed a timely demand to vacate [the Award] with the AAA on August 13, 2020."[52] Yet they cite no authority for the proposition that filing such a demand on an arbitrator tolls the statute of limitations under CPLR § 7511(a), which provides that "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him." Meanwhile, the CPLR further provides that "[a] special proceeding shall be used to bring before *a court*" located in the county specified in the arbitration agreement, "the first application arising out of an arbitrable controversy which is not made by motion in a pending action."[53] Here, the venue specified in the Agreement was Dutchess County. But the Barnetts did not seek to vacate the Award in the Dutchess County Court until (at the earliest) November 23, 2020, when they moved to dismiss the CPLR Petition. This happened 108 days after the Award was transmitted to the Barnetts' counsel on August 7, 2020. Thus, it appears that the Barnetts failed to comply with the statute of limitations under CPLR § 7511(a).

---

[51] D.I. 930-I (citing In re Perrenod, 243 A.D.3d 794, 795–96, 247 N.Y.S.3d 92 (2025), leave to appeal dismissed in part, denied in part sub nom. Matter Perrenod, No. 2026-14, 2026 WL 2834548 (N.Y. Sept. 22, 2026)).
[52] Mot. at 3.
[53] See CPLR § 7502(a)(i) (emphasis added).

Third, and most importantly, because the Dutchess County Court has already denied the Seventh Motion, there are no live claims for the Barnetts to pursue unless they can somehow appeal from said denial. In some cases, stay relief is appropriate to allow a party to litigate an appeal in state court.[54] But this is not such a case. The Barnetts filed the Seventh Motion well after the automatic stay went into effect. Indeed, they filed that Motion after they became aware of these bankruptcies, which they acknowledged in their supporting memorandum. Thus, the Seventh Motion was itself void *ab initio*.[55] It follows that the Seventh Motion cannot be appealed from, any more than it could ever have been maintained in the first place. Accordingly, the Barnetts have failed to meet their burden of going forward on the third Rexene factor.

## V. CONCLUSION

For the reasons set forth in this Opinion and on the record at the Hearing conducted on the Motion on September 29, 2026, the Motion is denied.

Dated: October 15, 2026
Wilmington, Delaware

Thomas M. Horan
United States Bankruptcy Judge

[54] In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).
[55] E.g., Harrison v. Soroof Int'l, Inc., 320 F. Supp. 3d 602, 628 (D. Del. 2018) ("In the Third Circuit, actions taken in violation of an automatic stay are generally void *ab initio* and thus, should be dismissed." (citing In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994))).